IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LOU GARDEN PRICE, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 07-380-SLR |
| v. ) | |
| ) | |
| TOM CARROLL, ELIZABETH BURRIS, ) | |
| D. PIERCE, DAVID K. HOLMAN, ) | Jury Trial Requested |
| JOSEPH RICHARDSON, A. PROFACI, ) | |
| D. FIELDS, C.O. BASSINGER, ) | |
| 3 UNK. KITCHEN C.O.'S, QUANI NEAL, ) | |
| DR. LOUISE DESROSIERS, ) | |
| DIETICIAN/NUTRITIONIST CMS, and ) | |
| M. KNIGHT, ) | |
| ) | |
| Defendants. ) | |

**STATE DEFENDANTS TOM CARROLL, ELIZABETH BURRIS,
DAVID PIERCE, JOSEPH RICHARDSON, ALISA PROFACI,
DORENE FIELDS, CHRISTINE BAYSINGER, AND MICHAEL KNIGHT'S
RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [RE: D.I. 17]**

COMES NOW, State Defendants Tom Carroll, Elizabeth Burris, David Pierce, Joseph Richardson, Alisa Profaci, Dorene Fields, Christine Baysinger and Michael Knight (the "State Defendants")[1], by and through their undersigned counsel, and hereby respond in opposition (the "Response") to Plaintiff's Motion for Preliminary Injunction (the "Motion") (D.I. 17). In support of the Response, State Defendants state as follows:

---

[1] It appears from the docket that defendants Quani Neal and David Holman have not been served with the Complaint. Therefore they are not a party to the State Defendants' Response.

1.      Plaintiff Lou G. Price, Sr. ("Price" or "Plaintiff") is an inmate presently incarcerated at the Delaware Correctional Center ("DCC"). Price is appearing *pro se* in this matter with leave to proceed *in forma pauperis*.

2.      On June 12, 2007, Price filed a Complaint instituting the above-captioned matter. In the Complaint Price alleges, *inter alia*, that the defendants are denying him his special medical diet in violation of his constitutional rights. (D.I. 2).

3.      Shortly thereafter, on August 31, 2007, Price filed the Motion for Preliminary Injunction requesting that the Court grant him an injunction and order the defendants to provide him a special diet. (D.I. 17). The Court ordered the State Defendants to respond to the Motion by October 17, 2007. (D.I. 23). This is State Defendants' Response in opposition to Price's request for injunctive relief.

4.      Inmates needing a therapeutic diet at the Delaware Correctional Center ("DCC") must receive an order from their medical doctor prescribing the diet. (Exhibit A – Klein Affidavit at ¶ 2). DCC employees do not have the ability to prescribe or request a medical diet for an inmate. (*Id.*).

5.      After a doctor orders a special diet for an inmate, that order is placed into the computer system by the medical provider. (*Id.* at ¶ 3). Through the computer system, the Food Service staff receives notification that the inmate is to receive a special diet. (*Id.*). Thereafter the inmate must show his identification card at the window at Food Service during meal times. (*Id.* at ¶ 4). Once Food Service receives the inmate's identification, the Food Service staff members verify that the inmate is on a special diet. The staff members then check off that the inmate is picking up his diet tray and pass the correct diet to the inmate. (*Id.*). If an inmate fails to pick up his special diet

tray for an extended period of time, Food Service will notify the medical provider that the inmate is not picking up his special diet. (*Id.* at ¶ 5). The medical provider may then choose to terminate the inmate's special diet. (*Id.*). Neither the Food Service staff nor any other DCC employee may terminate an inmate's special diet. Only the medical provider can terminate an inmate's special diet. (*Id.*).

6.   On or about April 4, 2006, Dale Rogers, a CMS employee, filled out a Therapeutic Diet Request Form requesting that Price receive a special diet. (Exhibit B). The special diet request was then entered by a CMS employee into the Special Diet Report form on the computer system. (*Id*). Price's medical records reflect that he continued to receive a special diet for many months. (Exhibit C).

7.   On April 23, 2007, CMS filled out a Therapeutic Diet Request Form so that Price could continue to receive his special diet. (Exhibit D). This request was then entered by the medical provider into the Special Diet Report form on the computer system. (*Id.*).

8.   Less than one month later, on May 15, 2007, Rebecca Vliet, a CMS employee, terminated Price's special diet. (*Id.*). Although Price's medical records do not indicate the reason why CMS terminated Price's special diet, it is likely CMS terminated the diet because Price was not picking up his special diet tray during meal times.

9.   On June 21, 2007, a doctor re-ordered Price's special diet. (Exhibit E). It appears, however, that the medical provider did not enter the order into the computer system. Thus the Food Service staff members were not aware that Price

should receive a special diet. Further, even if Price requested his special diet, the Food Service staff would have been unable to give him the diet without the order in the system.

10. On August 20, 2007, Nurse Adrian, a CMS employee, called a member of the Food Service staff and informed her that Price was to receive a special diet in accordance with the doctor's orders. (Klein Affidavit at ¶ 6; Exhibit F). The Food Service staff then provided Price with his special diet and waited for the order to be entered in the system. (*Id.*). The order, however, was not entered in the system so the Food Service staff could not continue to provide Price with the diet. (*Id.*).

11. Shortly thereafter, on September 4, 2007, Christopher Klein, the Food Service Director at DCC, spoke with the CMS dietician. (Klein Affidavit at ¶ 7). The dietician confirmed that Price's medical records indicated that a doctor had ordered a special diet for him. (*Id.*). He further stated that the information had never been entered into the computer system. (*Id.*). The dietician then corrected the problem and put the order into the computer system. (Exhibit G). Price has been receiving his special diet since September 4.

**I.    Price's Diet Has Been Reinstated.   Therefore His Request For Preliminary Injunction Is Moot.**

12. In the Motion Price asks the Court to order that the defendants provide him with a special diet. Price, however, has already received the relief he is requesting.

13. On September 4, 2007, CMS entered the special diet request into the computer system at DCC. (Exhibit G). The diet request began on September 4, 2007 and is scheduled to remain in effect until September 4, 2008. (*Id.*). Price is currently receiving his special diet and, so long as he continues to pick up his diet tray, will

continue to receive his diet until September 4, 2008. At that time he will have to speak with his doctor about obtaining another order.

14.     Price has begun receiving his special diet and will likely continue to receive it until September 4, 2008. Therefore, his Motion for Preliminary Injunction asking to receive the diet should be denied as moot.

**II.     Price Cannot Satisfy The Requirements For Injunctive Relief, Therefore The Court Should Deny The Motion.**

15.     Assuming, *arguendo*, that the Motion is not moot, this Court should deny Price's Motion because he cannot meet the burden for injunctive relief.

16.     A grant of injunctive relief is an extraordinary remedy. Thus a request for injunctive relief should only be granted in limited circumstances. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989).

17.     The Third Circuit holds that a district court should grant a request for preliminary injunction only if "(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998). An injunction should only issue if all four factors favor relief. *See S & R Corporation v. Jiffy Lube International, Inc.*, 968 F.2d 371, 374 (3d Cir. 1992).

18.     To obtain a preliminary injunction Price must satisfy all four factors. If he cannot prove that he has a likelihood of success on the merits of his claim or that he is likely to suffer irreparable injury, the request for preliminary injunction should be denied. *See Instant Air*, 882 F.2d at 800.

Case 1:07-cv-00380-SLR   Document 25   Filed 10/17/2007   Page 6 of 10

### A.  Price Is Not Likely To Succeed On The Merits Of His Deliberate Indifference Claim.

19.  To demonstrate a likelihood of success on the merits of a claim for deliberate indifference pursuant to 42 *U.S.C.* § 1983, a plaintiff must prove that the defendant had personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A plaintiff must show that the accused official "played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981). Further, "Grievances are not enough to impute knowledge to [a] defendant." *Brookins v. Williams*, 402 F.Supp.2d 508, 512 (D. Del. 2005) (quoting *Rode*, 845 F.2d at 1208)).

20.  As the record demonstrates the State Defendants have no personal involvement in ordering a special diet for Price. The diet is ordered and entered in the system by the medical provider. Further, the State Defendants cannot give Price a special diet without the request being ordered and entered into the system by the medical provider.

21.  Although Price alleges to the contrary, only a medical provider can terminate a special diet. (Klein Affidavit at ¶ 5). In accordance with that policy, Price's diet was not terminated by the State Defendants but was terminated by a CMS employee. (*See* Exhibit D).

22.  To the extent Price alleges that he grieved the issue and informed the State Defendants about his medical diet, medical grievances are not enough to impute knowledge or personal involvement to the State Defendants. *See Brookins*, 402 F.Supp.2d at 512 (quoting *Rode*, 845 F.2d at 1208)).

23. The State Defendants were not personally involved in the decision to order or terminate Price's special diet. Therefore Price is not likely to succeed on the merits of his § 1983 action against the State Defendants and the Motion should be denied.

> **B. Price is receiving his special diet and will continue to receive it for one year, therefore he will not suffer irreparable injury if the Court denies his request for preliminary injunction.**

24. To demonstrate irreparable injury a plaintiff must prove "more than a *risk* of irreparable harm …." *Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (emphasis added). Injunctions are not issued to eliminate a possibility of a remote future injury. *Id.* Rather, an injunction is used where the movant has shown that he "is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued." *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985). Moreover, injunctive relief is used to prevent definite future harms, not to remedy past violations. *See SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980).

25. Price is not in danger of suffering irreparable harm. As has already been demonstrated Price is receiving his special diet. Further, Price will continue to receive his special diet so long as he continues to pick up the special diet tray. Therefore Price will not suffer irreparable injury if the Court denies the Motion.

WHEREFORE, State Defendants respectfully request that this Honorable Court deny Plaintiff's Motion for Preliminary Injunction.

        **DEPARTMENT OF JUSTICE**
        **STATE OF DELAWARE**

        */s/ Erika Y. Tross*
        Erika Y. Tross (#4506)
        Deputy Attorney General
        Carvel State Office Building, 6th Floor
        820 N. French Street
        Wilmington, DE  19801
        (302) 577-8400
        Attorney for State Defendants

Dated: October 17, 2007

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LOU GARDEN PRICE, SR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TOM CARROLL, ELIZABETH BURRIS, )<br>D. PIERCE, DAVID K. HOLMAN, )<br>JOSEPH RICHARDSON, A. PROFACI, )<br>D. FIELDS, C.O. BASSINGER, )<br>3 UNK. KITCHEN C.O.'S, QUANI NEAL, )<br>DR. LOUISE DESROSIERS, )<br>DIETICIAN/NUTRITIONIST CMS, and )<br>M. KNIGHT, )<br>)<br>Defendants. ) | C.A. No. 07-380-SLR<br><br>Jury Trial Requested |

## ORDER

Upon the Plaintiff's Motion for Preliminary Injunction (D.I. 17), and State Defendants Tom Carroll, Elizabeth Burris, David Pierce, Joseph Richardson, Alisa Profaci, Dorene Fields, Christine Baysinger, and Michael Knight's Response in Opposition to Plaintiff's Motion for Preliminary Injunction; and it appearing that good and sufficient notice of Plaintiff's Motion and State Defendants' Response has been given; and after due deliberation thereon:

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction is **DENIED**.

SO ORDERED this _____ day of _____, 2007.

_____
The Honorable Sue L. Robinson
United States District Court Judge

# **CERTIFICATE OF SERVICE**

I, Erika Y. Tross, Esq., hereby certify that on October 17, 2007, I caused a true and correct copy of the attached ***State Defendants Tom Carroll, Elizabeth Burris, David Pierce, Joseph Richardson, Alisa Profaci, Dorene Fields, Christine Baysinger, and Michael Knight's Response in Opposition to Plaintiff's Motion for Preliminary Injunction [Re: D.I. 17]*** to be served on the following individual in the form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT(S):**

Inmate Lou G. Price, Sr.
SBI #454309
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

**MANNER OF DELIVERY:**

__ One true copy by facsimile transmission to each recipient

✓ Two true copies by first class mail, postage prepaid, to each recipient

__ Two true copies by Federal Express

__ Two true copies by hand delivery to each recipient

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
Delaware Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LOU GARDEN PRICE, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 07-380-SLR |
| v. | ) | |
| | ) | Jury Trial Requested |
| TOM CARROLL, et al, | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF CHRISTOPHER KLEIN

I, Christopher Klein, having been duly sworn by law, do hereby depose and state as follows:

1. I am employed by the State of Delaware Department of Correction ("DOC") as a Food Service Director II. I have been employed by the DOC since April 1997 and as a Food Service Director II since May 2004.

2. Inmates incarcerated at the Delaware Correctional Center ("DCC") are sometimes prescribed special therapeutic diets by their doctor. Only the medical provider can order a special diet for an inmate.

3. After a doctor orders a special diet for an inmate, the medical provider must enter the order into the Special Diet Report in the computer system. This Special Diet Report can only be changed by the medical provider. Once the medical provider enters the order, the Food Service staff are able to provide the inmate with his special diet.

4. An inmate receiving a special diet must present his identification to the Food Service staff during meal times. The Food Service staff then note that the

1

inmate is picking up his diet and pass the inmate the proper diet. If an inmate fails to pick up his diet tray the Food Service staff note that information and relay it to the medical provider.

5. If an inmate fails to pick up his diet for an extended period of time, the medical provider may choose to terminate the inmate's special diet. DCC employees do not have the ability to terminate an inmate's special diet. Only the medical provider can terminate the special diet.

6. On or about August 20, 2007, one of the Food Service staff members notified me that Nurse Adrian called and informed her that Lou G. Price was to be on a special diet per doctor's orders as of June 21, 2007 but the order had never been entered in the system. The Food Service staff member then told me that she provided the diet to Mr. Price and waited for the medical provider to enter the order in the system. The order was never entered.

7. Approximately two weeks later, on September 4, 2007, I spoke with the CMS dietician about Mr. Price's special diet. He informed me that the medical chart for Mr. Price indicated that the doctor had ordered a special diet on June 21, 2007. The dietician then stated that for "whatever reason" the order was never entered into the computer system. I was then told that the order would be entered into the system on that day and the inmate would receive his special diet during the dinner meal.

Christopher Klein

2

**SWORN AND SUBSCRIBED** before me this 17th day of _October_, 2007.

_Timothy J. Mast_
Notary

Commission expires: June 14, 2008

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LOU GARDEN PRICE, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 07-380-SLR |
| v. | ) |
| | ) |
| TOM CARROLL, ELIZABETH BURRIS, | ) |
| D. PIERCE, DAVID K. HOLMAN, | ) Jury Trial Requested |
| JOSEPH RICHARDSON, A. PROFACI, | ) |
| D. FIELDS, C.O. BASSINGER, | ) |
| 3 UNK. KITCHEN C.O.'S, QUANI NEAL, | ) |
| DR. LOUISE DESROSIERS, | ) |
| DIETICIAN/NUTRITIONIST CMS, and | ) |
| M. KNIGHT, | ) |
| | ) |
| Defendants. | ) |

# SEALED EXHIBITS