In The United States District Court In And
For The District of Delaware

Lou G. Price, Sr.
      Plaintiff,

      V.

Carl Danberg - Commissioner;
Stan Taylor - Former Commissioner;
Thomas Carroll - Warden DCC;
Elizabeth Betty Burris - Deputy Warden;
David Pierce - Deputy Warden II; David K.
Holman - Major; Joseph Richardson -
Investigator/I.A.; Alisa Profaci, MHU/
SHU Staff Lieutenant; Dorene Fields -
MHU Lieutenant; C.O. Bassinger - Kitchen
C.O.; C.O. Harmon - Kitchen C.O.;
Mr. Klein - Food Service Director II;
Michael Knight - Food Service Director I;
"Dan"/CMS Dietician; Louise Desrosiers -
Doctor; Quani Neal - CMS Nurse;
CMS, Inc.; Stacy Shane - Support
Services Secretary; Mike Little - Legal
Services Admin.; Maria Lyons - MHU Law
Library; Timothy Martin - Law Library; Mike
McCreanor - Captain IGC Chairperson; Lisa Merson -
IGC Assistant; DCC and DOC,
                  Defendants.

C.A. No. 07-380-SLR

Jury Trial Requested

RECEIVED
OCT 24 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE
BD scanned

Amended Memorandum of Law In Support of Plaintiff's
1983 And 1985 Civil Rights Complaint (Pro Se)

(1)

# Jurisdiction

Pursuant to Federal Rules of Civil Procedure Title 42, Sections 1983 and 1985 authority is hereby predicated. The instant complaint is based solely and primarily on an assemblage of civil rights violations due to the ongoing and/or past deliberate indifference, negligence, actions or inactions of the Defendants named herein... having harmed and causing future harm to the Plaintiff.

Defendant Carl Danberg is the current commissioner of the Department of Corrections for Del. (assigned to the Post February 1, 2007) and as commissioner he's incumbent to direct and oversee all operations and staff throughout each Delaware prison.

Defendant Stan Taylor was the commissioner until the appointment of Defendant Carl Danberg. Prior to Defendant Danberg's appointment as DOC commissioner, Danberg served as Chief of Staff for Defendant Taylor.

Defendant Thomas Carroll is the Warden

(2)

at Delaware Correctional Center and has been for some relevant portions of this Complaint.

Defendant Elizabeth Betty Burris is Deputy Warden at DCC and serves as Chief Operational Manager. She substantially contributed to the violations asserted in this Complaint.

Defendant David Pierce is Deputy Warden II at DCC - Smyrna. He oversees the exclusive operations of the SHU and MHU which are designated higher security areas at DCC.

Defendant David K. Holman is Major at DCC-Smyrna. He is supervisor of the Security Staff in the MHU and SHU areas of DCC respectively.

Defendant Joseph Richardson is the Internal Affairs/Departmental Investigator at DCC for both staff and prisoner-related matters that threaten the safety and security of DCC.

Defendant Alisa Profaci is the MHU Staff Lieutenant. She is the immediate supervisor of/over all staff in the MHU/SHU areas. She substantially contributed to the violations asserted in this Complaint.

(3)

Defendant <u>Dorene Fields</u> is the 4 p.m. to 12 a.m. lieutenant designated to the MHU on a regular basis. She is supervisor to all security staff including but not limited to sargeants, corporals, and inferior correction officers in general.

Defendant <u>C.O. Bassinger</u> is a corrections officer designated as a food services officer. She oversees inmate food service workers in the MHU Messhall.

Defendant <u>C.O. Harmon</u> is a corrections officer designated as a food services officer. She oversees inmate food service workers in the MHU Messhall and she's in charge of dispensing the regular meals and that includes the special diet meals.

Defendant <u>Michael Knight</u> is Food Service Director of <u>Kitchen 1</u>. The kitchen C.O.'s are inferior employees ranked under him.

Defendant <u>Mr. Klein</u> is Food Service Director of <u>Kitchen II</u>. The kitchen C.O.'s are inferior employees ranked under him.

Defendant <u>Quani Neal</u> is a nurse who's an employee for CMS, Inc., the contracted medical provider for Del. DOC. Quani Neal is designated to the MHU areas where her duties include medical care and medication dispersing, sick-call care, etc.

Defendant <u>Correctional Medical Services, Inc.</u> is the corporate medical provider for Del. DOC., the employer for the medical personnel at DCC. They make and/or enforce medical and/or DCC policy regarding medical treatment of inmates at DCC and their personnel follows company departmental procedures.

(4)

Defendant Dr. Louise Desrosiers is a medical doctor employed by CMS, Inc., here at DCC who works between the MHU and SHU areas. Her duties, in part, are providing medical care, writing prescriptions/orders for meds, x-rays, consults, special diets, and as a physician she's superior to other medical staff/nurses she works with.

Defendant Dan is the Dietician for CMS, Inc. He's responsible for the dietary needs/restrictions of DCC inmates, including special medical diets or allerginic restrictions.

Def. Stacy Shane is assigned as the Secretary of Support Services at DCC.

Defendant Timothy Martin is assigned as a paralegal in the Main Law Library at DCC.

Defendant Maria Lyons is assigned as a paralegal in the MHU Law Library at DCC.

Defendant Mike Little is the Legal Services Administrator at DCC. He's the supervisor over all paralegal/law library employees at DCC. That includes, but is not limited to supervisory duty of

(5)

the Main Law Library in general population, the SHu Law Library and the SMItu Law Library.

Michael McCreanor is a DOC—DCC Captain who is assigned as the Grievance Chairperson.

Lisa Merson is corporal assigned to assist the chairperson in the Facilitation of the grievance board's operations.


The Plaintiff Lou Garden Price, Sr. hereby submits and asserts that the above named Defendants are being sued in their official and individual capacities. Plaintiff Further asserts that the above named Defendants acted in complicity with each other, DOC Policy/Customs, and or at the behest of the administrative body of State Defendants above, or on their own, which, in effect, contributed to the gross civil rights violations of the Plaintiff.

Thus, the Plaintiff humbly prays that this Honorable Court grant a Preliminary injunction against the Defendants pursuant to Federal Rule 64 of the Civil Procedure until disposition of these proceedings are Final.

(6)

## Statement of Claims

#1) Defendant, Stan Taylor while acting as Commissioner of DDOC deliberately in violation of the Delaware bidding laws signed with a medical provider that has consistently demonstrated a reckless disregard for DDOC residents' health. This same medical provider has had—at the time of Commissioner's signing—a long history in the State of Delaware (and the nation) as having failed to render adequate/ effective health care to prisoners. The injuries suffered from the medical incompetence by CMS, Inc. and their employees, Plaintiff contends, is directly attributed to the ex-commissioner's indifference to the laws that govern bidding and that of residents' health. This negligence is what led to the endless array of Eighth Amendment violations to the United States Constitution by CMS and DDOC/DCC.

#2). Defendants Taylor, Carroll, Burris; Pierce set up a system of inmate grievances which impedes the right of due process of law by deliberately appointing staff which Defendants knew did

(7)

not qualify for the position and who dozens of residents of DCC — including Plaintiff — and the public, have alleged in the past and present, may have destroyed grievances. In order to hinder prisoners who wish fair and civil resolutions of their issues through IGC procedures, the Defendants set up a corrupt system for which resolutions sought could never be obtained by prisoners within DCC. Therefore the entire IGC system is futile for the plaintiff or anyone else to use. Marvin v. Goord, 255 F.3d 40, 43 (2d Cir. 2001); Rahim v. Sheahay, 2001 WL 1263493 at 6-7 17.3; (N.D. Ill.; Oct. 19, 2001); Riley v. Brown, 2006 WL 1722622 at 9 * D.N.J. (June 21, 2006). Section 1985 violations.

#3). Defendants Lieutenant Dorene Fields, C.O. Bassinger, C.O. Harmon working in an arbitrary and capricious conspiracy with CMS Nurse Quani Neal and Doctor Desrosiers, deprived plaintiff and several others of their doctor-prescribed medical diets. A move that was clearly initiated by Lt. Fields (who's supervisor is Staff Lt. Alisa Profaci) due to her deliberate indifference to the serious medical needs of prisoners,

violative of the protections provided by the 8th Amendment as well as the deprivation of civil rights — equal protection of the laws. <u>See Title 42 Section 1985, Conspiracy To Interfere With Civil Rights.</u> By the action (and inaction) of those individuals mentioned above — Fields, Bassinger, Harmon, Holman, Profaci, et al. — For purposes of depriving the plaintiff of substantial civil rights, they entered into a conspiracy that placed plaintiff's health and welfare at serious risk <u>now</u> as well as in the <u>future</u>. See <u>Helling v. McKinney, 113 S. Ct. 2475</u> (re: future health problems).

#4). Defendant <u>Shane</u>, the Support Services Secretary entered into a conspiracy with DCC Administration that impeded upon Plaintiff's right to access of the Federal Court in case # 05-871-SLR. Stacy Shane deliberately attempted to sabotage Plaintiff's case by confiscating Plaintiff's "evidence" — news articles collection from <u>The News Journal's</u> (Del), six-month investigation into DCC and CMS' deadly practices. Daily articles entitled "<u>Delaware's Deadly Prisons</u>". Plaintiff charges that Shane deprived Plaintiff his civil rights' equal protections of the law by her actions and she also committed the criminal offense of obstruction of justice and, under instruction by <u>DCC Admin.</u>,

(9)

intimidated him through their retaliation efforts and destroyed/illegally confiscated his property with no due process (no Form #537-A... Confiscated Property Form). Plaintiff has established a record of these acts in letters, grievance and in his complaint before this Honorable Court. These are also violations of <u>Title 42 U.S.C.A. § 1985 (2) Obstructing justice and intimidating party</u> and; <u>(3) Depriving persons of rights or privileges</u>. (Note: Further, more detailed, retaliation and §1985 conspiracy claims against the above Defendants and captioned Defendants will be explained below).

#5). Defendant(s) Mike (or Michael) Little and those previously captioned have been dostructing Plaintiff's access to the courts by not providing access to the law library, or to those trained in the law and meaningful time needed to obtain assistance in the preparation of important documents, research, the policies/procedures of court rules and filing requirements. <u>See Bounds v. Smith</u>, 430 U.S. 817, 828; (1977). As a result

(10)

the Plaintiff has been Forced to File ineffectual motions which led to actual injury. See State v. Price Not Reported in A.2d, 2006 WL 3411430 (Del. Super.); and attachments.

#6). Defendants Carroll, Burris, Pierce, Profaci, and inferior corrections employees/officers beneath them violated Plaintiff's rights under the constitution when they exposed his life to serious injury on April 28, 2007, when his cell block (tier) and his cell was Filled with smoke/fumes from an apparent fire. By DCC's LACK OF FIRE SAFETY (smoke inhalation hazard in a building w/ no open windows anywhere, no known warning to prisoners in the case of Fire/smoke detection, no visible Fire exit map or protocol, etc.) and evacuation procedure failure of/on 4/28/07, Plaintiff's life was exposed to an unreasonable risk of damage, injury and death. Plaintiff along with 46 other men's lives were in danger and many suffered unnecessarily on 4/28/07 and if not for the deliberate indifference

of the Defendants and their inferiors
A Tier in Building 23 would not have had
to be _evacuated_ _twice_. Not only was plaintiff
injured by smoke inhalation but due to further
deliberate indifference by the above defendants
the Plaintiff remains at grave risk and
what is surely a dangerous prison condition.

#7). On January 16th, 2007 Plaintiff alerted several
Building 23 C.O.'s to the presence of bad indoor
air, poor ventilation and then he pointed upward
to the dayroom ceilings, and cell vents where
they are literally caked and clogged with thick
layers upon layers of a "carpet like" growth of
a black dirt/dust-like substance. In March of 2007
Plaintiff filed a grievance explaining the above
and he also alerted Staff Lt. Alisa Profaci via
letter that he was coughing up phlegm more
regularly than normal and he attributed it to
the dirty/poor air inside of his living areas.
Plaintiff's grievance went ignored as well as
his letters to Lt. Profaci and absolutely no
action was taken to investigate or resolve
this dangerous prison condition that poses

(12)

an unreasonable risk of serious damage to the health of officers as well as the Plaintiff's future health. Defendants Carroll, Pierce, Burris, Profaci and Mike McCreanor (IGC), with deliberate indifference, and in violation of the 8th Amendment have exposed and are continuing to expose Plaintiff to this dangerous prison condition. Mr. McCreanor just disregarded Plaintiff's grievance and dismissed it.

8), On March 22, 2007 the Plaintiff filed a grievance after his many complaints to Building staff regarding his toilet flooding and constant spillage of human waste. Sgt. Carter, C.O. Swing. C.O. White, and Sgt. Montgomery were asked by Plaintiff to put in work orders in February 2007 and early March but Plaintiff realized that many of the sewage problems he had were shared by everyone else's toilets except staff's toilets. Whenever the cell next door flushes or the two cells underneath Plaintiff's cell, that human waste comes up in his toilet and there are frequent times when that waste spills out into Plaintiff's cell. When that occurs there exists no immediate resolution by the Block C.O. because they are deliberately indifferent to that type of event.

Exposure to sewage was deemed unconstitutional because it's cruel and unusual punishment to force a human to stay or live in that type of condition, (De Spain v Uphoff, 264 F.3d 965, 977) (10th Cir. 2001). Additionally, when Plaintiff and others have to mop up the waste/flood, there's only one mop on the unit for (49) men to use — on 25 cells— and it is the across-the-board policy/custom for Block C.O.'s to disallow anyone the use of disinfectants. Disallowing use of disinfectants during the clean-up of human waste, and allowing everyone to continue to use a severely contaminated mophead is a recipe for disaster to say the least (the spread of waste, deliberately, is irreprehensible). The action and inaction here is a clear claim under the 8th Amendment.

9). On January 15, 2007 Plaintiff filed a grievance regarding messhall cups that were caked inside with a bathtub-like scum. He recognized that every cup — when filled with juice (artificial) or water — had an oily film of some kind floating on top. Plaintiff took a water cup, emptied it and wiped it out with

tissue. Plaintiff immediately knew that the cups had dark decay growing and sticking inside of them. Price (Plaintiff) wrote to Staff Lt. Profaci and told her that there was rot literally growing in the cups and as usual she did nothing so Plaintiff grieved the issue. When Plaintiff grieved the issue he mailed to the IGC the tissues he had used to wipe out some of the decay (to illustrate to chairperson McCreanor what the issue was). Plaintiff even dated each tissue before submitting them. Plaintiff vigorously pursued a resolution to this situation because this is just plain disgusting. Plaintiff has addressed like issues regarding dirty food trays, old or spoiled food, greasy "sporks", spoon-shaking during meals, and the decay/rot/scum in cups/trays — to supervisors and their inferiors but their response is the usual deliberate indifference attitude, answer, or no answer. Many Federal Circuit courts and district courts throughout the United States have held that Inadequate Food and Unsanitary Food Service violate the 8th

Amendment especially when correction officials act or respond with deliberate indifference. Phelps v. Kanoplas, 308 F.3d 180 (2nd Cr 2002); Ramos v. Lamm, 639 F.2d 559, 570-71 (10th Cr. 1980); Wilson v. Van Natta, 291 F.Supp. 2d 811, 817 (N.D. Ind. 2003); Drake v. Velasco, 207 F.Supp. 2d 809 (N.D. Ill. 2002).

#10). In violation of Plaintiff's Rights under Section 1985 and pursuant to the constitutional prohibitions under the 8th Amendment, Plaintiff has been experiencing retaliation, and deprivation of medical treatment from a number of Correctional Medical Services (CMS, Inc.) personnel. Plaintiff contends that he has made several complaints to CMS. and DOC superiors regarding the misconduct, actions, inactions, and denial of medical treatment by Nurse Quani Neal over the past year. Neal has clearly — verbally — stated on numerous occasions why she yells at the Plaintiff, denies him the treatment he's sought, and more specifically she has even indignantly said "You call yourself Suing me. If it was up to me I wouldn't give you anything you ask for!" Apparently Nurse Neal backed her statement up because over the

(16)

last year or so there has been some very
"bad air" between her and the Plaintiff beginning
with the ultimate reason why Plaintiff commenced
this Action, (the abrupt deprivation of Plaintiff's
doctor-prescribed Medical Diet and the realization
that both DCC and CMS are not independently
retaliating against Plaintiff but they have conspired
together to do so). More recently, the Plaintiff has
attached a handwritten copy of a grievance
he submitted (medical grievance) which explaining
how Dr. Louise Desrosiers put him on a medication
that was discontinued before (back in 2005) due
to his bad reaction from it. Well, he suffered
another bad reaction from it so he submitted
a sick call slip which alerted medical nurses
(Quani, etc.) that Plaintiff was "nausea, unable to
eat, weary and weak with a severe migraine."
Plaintiff submitted that sick call 9/26/07 and
was not seen until two (2) weeks later, (that
sick call is also attached). This is Quani's threat
backing up her threat. The Plaintiff will give
more details of this cruel and unusual
punishment below in his summary of
argument to the claims he has hereby
stated, (including Delay of Medical Treatment).

(17)

# Summary of Argument
## Claim #1 :

— The Illegal CMS, Inc. Medical Contract Entered Into By Defendant Taylor And Danberg.

In Helling v. McKinney, 509 U.S. 25, 34-35 (1993) the Supreme Court stated that an inmate need not show an injury to state a claim. id. 509 at 33. But in the Plaintiff's previous claim before this Honorable Court — C.A. # 05-871-SLR — he successfully stated a claim and withstood summary dismissal. Even though that case has not yet gone to trial... here comes the Plaintiff again, out of grave concern for his life, bringing more claims... In this instant case the Plaintiff claims that Defendant Taylor and Danberg deliberately exposed him to CMS, Inc., a medical provider with a deadly history of harming prisoners due to their ongoing morbidly deficient medical

care. See Estelle v. Gamble, 429 U.S. 97, 105-106 (1976).

In the case at bar, the Plaintiff claims that Defendant Taylor and Danberg have entered into an illegal medical contract with CMS, Inc. and under the State of Delaware's bidding procedures CMS, Inc. wouldn't even be allowed to bid on any contract which explains why Defendant Taylor subverted the bidding procedure by awarding a no-bid contract to CMS, Inc. (State's Good Standing Clause).

The Plaintiff strongly desired to establish a litany of exhibits which depicts the sordid history of CMS, Inc. but as Plaintiff established in his Statement of Claims Defendants Shane           sabotaged that attempt. Still, Plaintiff contends this: given the "dark history" CMS has for prisoners' health care and all of their past and present violations of prison contracts in DDOC, Defendants Taylor and Danberg should have never entered into a new contract with them, knowing that CMS, Inc. has

(19)

not and will not honor the terms of the contract. NOTE . . . :

\* In response to Joshua W. Martin III's July 2007 report (he's the State's First independent prison monitor), Danberg was quoted in the News Journal saying: "As long as CMS continues to make strides, I will postpone my decision as to whether we want to bring medical care in-house."

The Plaintiff has a bevy of problems with Danberg's current decision to keep CMS, Inc. because of their current actions, inactions, and their heavily-ladened history of poor medical care and contemptuous mind state toward the humans they have contracted themselves to treat. The Plaintiff submits for the Court that CMS, Inc. is just another money-hungry corporation who wants to always sacrifice patient health care for profits.

In any event, CMS and their contemptuous-minded personnel have breached not only their contract terms but they've

also breached the memorandum agreement the Defendants entered into with the Department of Justice which states, in part, that medical will screen all written requests within 72 hours. Case in point: the Plaintiff Filed a sick-call request on June 2nd, 2007 and was not seen until Thursday July 19th, 2007 by Nurse R. Hyler. Another example is a sick-call request Plaintiff submitted on June 25th, 2007 regarding his HBP related headaches and a newly developed pattern of headache pains — plus the fact that his medications are very harsh to take without his diet → (Dr. prescribed "snack bag"). That sick call request has been totally ignored to date.

CMS, Inc. and their personnel will never honor the terms of their current contract nor will they respect any terms of the current agreement with DOJ (U.S.) because they (CMS) have gotten away with being dishonorable and crooked for so long — nationwide. Their gross pattern

of deliberate indifference to serious medical needs of prisoners is well-known to the Defendants Taylor, Danberg, et al.. Plaintiff emphatically asserts that it is the duty and certainly within the jurisdictional boundaries of this Court to use every pound of its power to do what these morally deficient and money-motivated politicians (Defendants) are blatantly refusing to do ("I will postpone my decision as to whether we want to bring medical care in-house," Danberg said)... Prisoners — male and female — are dying now. These are human rights issues and civil rights issues, (violations). (END NOTE). ★

Aside from CMS' refusal to administer adequate medical care, Plaintiff claims that he along with every other man who is seen by medical staff in the SMHU and the SHU is refused medical privacy. The C.O.'S/Officers/Sgt. stand inside the room during medical visits — even when a nurse or doctor requests that the Plaintiff expose the "private areas" for inspection. The dehumanizing feelings/effects

(22)

of that is depressing, and awfully humiliating, and certainly unconstitutional. The door is open, prisoners even stand outside or walk by and the windows are not even translucent, they're transparent and crystal clear for everyone to see and hear. There's no confidentiality. That's unconstitutional and unethical and totally against doctor-patient privilege. This even goes for when inmates are being interviewed by the psychological staff. See Woods v. White, 689 F.Supp. at 877 and Casey v. Lewis, 834 F. Supp. 1477, 1546 (D. Ariz. 1993). Nolley v. County of Erie, 776 F.Supp at 735-34. This Honorable Court is abundantly aware that the disclosure of medical information may constitute the "public disclosure of private facts" which is just one variety of the tort of invasion of privacy in many states. Hillman v. Columbia County 164 Wis. 2d 376, 474 N.W. 2d 913, 919-20 (Wis. App. 1991). Damages have been awarded as a tort of doctor-patient breach in many states too. See Vassiliades v. Garfinckel's Brooks Bros., 492 A.2d 580, 592 (D.C. 1985).

(23).

As a general — and acceptable — and encouraged practice, this goes on every time medical staff visits patients. Even if they're not known to be violent or sexual predators. This is the Medium High Unit; Plaintiff asserts that no one here is hand-cuffed/shackled while seeing medical staff (as is the case in SHU).

→ The Agreement Defendants Taylor And Danberg Signed That Waived Plaintiff's And Others Constitutional Rights to recover for pain and suffering inflicted on them by the Defendants' failure to oversee the prison health care system and make sure the prisoners' health care was being taken care of by CMS, Inc. Moreover, by not providing the Plaintiff and others with a copy of the Department of Justice Findings clearly constitutes an attempt to obstruct justice by limiting the Plaintiff's input of constitutional violations found at

(24)

DCC — DDOC at the hands of CMS, Inc. as well as the DOC Defendants. The Plaintiff emphatically contends that he has a right to those <u>Findings</u> because they not only affect him as a resident but as a person who is actively litigating pro-se against the same Defendants who the <u>Findings</u> were based upon.

Wherefore, the Plaintiff humbly requests that this Honorable Court grant a preliminary injunction be entered against Defendants Danberg, Taylor, et al. which would release for review to the Plaintiff the constitutional rights violations found by the U.S. Department of Justice Findings of December 29 2006, pursuant to 42 U.S.C. Section 1997 (a)(1), And found at page three (3) of the memorandum agreement... where Taylor and Danberg violated 42 U.S.C.A. § 1985 by confidentially entering into an agreement with the U.S. Attorney General's Office waiving constitutional rights of Delaware inmates without notice or consent by Plaintiff, et. al.

## Claim # 2

— The Inmate Grievance Procedure (IGC Policy 4.4) Is A Miasma of Corruption And A Conspiracy Utilized By DDOC—DCC Officials To Deny Prisoner's Rights To Due Process of Law And Boldly Circumventing Access To The Courts.

The Inmate Grievance Committee is another blackhearted move by the Defendants to cover up their dirty, corrupt, ways. It's a system constructed to obstruct justice, deprive prisoners of their civil rights and a system that has led to prisoners' death, pain, and suffering. An outright Section 1985 Conspiracy to interfere with civil rights by its enforcers — the Defendants Taylor, Danberg, Burris, Pierce, Carroll, and CMS, Inc. employees, et. al.

Defendants Taylor, Carroll, Burris and Pierce have orchestrated a system that under-mines the grievance procedure, rendering it

problematic at best. The clear language of the established 4.4 Grievance Policy outlines the manner in which grievances are to be handled. Grievances are frequently lost and the grievant told his grievance was never received. Grievances are returned and said to be non-grievable, despite the grievance policy stating that any issue affecting a resident is grievable while so confined. Grievance hearings are rarely held and never are grievances responded to in the designated time frame required by policy and procedure. Some grievances have taken up to eighteen (18) months before any response from the IGC hearing board. Plaintiff has been denied due process and he has presented before this Honorable Court documentation (C.A. # 05-871-SLR) relating to this claim. See attachments which further support these claims. The Defendants, Plaintiff asserts, have continuously undermined the grievance procedure via the haphazard appointment of correctional officers

27 of

June 21, 2006); Marvin v. Goord 255 F.3d
40.43 (2nd Cir. 2001); Rahim v. Sheahay, 2001
WL 1263493 at 6-7 A.3; N.D. ILL. (Oct. 9,
2001).


## Claim # 3

—    The Above Captioned Defendants Deprived
Plaintiff Of His Doctor-Prescribed Diet
Meals As Punishment For Other Prisoners'
Not Picking Up Their Diet Meals In
Messhall, Violative Of The Protections
In The Eighth Amendment Regarding The
Deliberate Indifference Standard Of
A Prisoner With Serious Medical Needs.


★ PLEASE NOTE that the Plaintiff Filed
with the District Court Clerk Of Delaware
the Following 42 U.S.C. § 1983 Complaint
given C.A. No. 07-380-SLR. Plaintiff — For
the record has attached a copy of that complaint

by virtue of their official and subservant positions to the named [Administrative] Defendants and thus cannot be impartial while trying to serve two masters — one justice, the other co-workers (Administrative co-workers). The entire practice is one that amounts to the deliberate indifference to prisoners with serious medical needs (Note: Medical Grievances are also done under IGC Policy 4.4). There's an unwritten across-the-board policy of denying all grievances that have the potential or likelihood of giving "weight" or credence to any and all possible lawsuits in local, state, or Federal Courts. This, Plaintiff contends, is the Title 42 U.S.C.A. Section 1985 conspiracy to interfere with his (et al.) Civil rights to obtain justice.

The below listed cases shed some light on the prejudice and violations that such circumstances can produce. See Thomas v. Woolem, 337 F.3d 720, 733 (6th Cir. 2003); Riley v. Brown, 2006 WL 1722622 at 9 (D. N.J.

and this is an expansion of it. Also, Plaintiff has attached a copy of the request for TRO and Preliminary injunction for the record.

## Facts As To Claim #3:

Due to several serious high-risk factors for heart attack and stroke, the Plaintiff has been on a special diet to prevent the worst from happening (heart attack/stroke). In May of 2007 Plaintiff's special diet was terminated due to Lieutenant Dorene Fields coming around to SMHU Tiers with CMS, Inc's "refusal (treatment) slips" for For several people on special diet meals stating that: "if you don't sign I'll sign 'refuse to sign'". (Which to me makes it appear that I agreed or refused treatment/my meal which was doctor-prescribed). Lieutenant Fields knew exactly what she was doing. Herself and CMS medical staff conspired to jeopardize my health by terminating my special diet to suit their own depraved purpose which was to punish the men who were taking advantage of the special diet program (if you will).

(39)

<u>Facts</u>

1). On or about May 15th, 2007 I was informed by a SMtu B-Side Kitchen worker that my diet meal has been terminated per CMS-Medical, and DOC Kitchen C.O.'s.

2). Attached is a letter Plaintiff wrote to Investigator Joe Richardson (addressed also to Tom Carroll – Warden –; Depoty Warden Pierce and Depoty Warden Burris). Major Holman was the only one who responded, reprimanding Plaintiff for sending his "medication punch cards" to the administration (which was only meant to demonstrate the type of meds I took and ~~so they could see the "Take with Food" warning~~ labels... I had multiple cards of the same meds so I did not send out <u>all</u> of my meds). None of these individuals Plaintiff complained to took any action to have my diet meals reinstated.

3). Attached to the original complaint is a May 22nd letter Major Holman sent Plaintiff in the mail, via official memo.

(30)

4). Also attached to the original complaint is the letter Plaintiff sent with the meds in which he sent (Holman) back to Price scrawled with the reprimand. It was Lt. Profaci (Staff Lt. Profaci) who gave Plaintiff the meds back. Plaintiff saw the letter attached and appealed to her to reinstate his diet meals — she refused to take any actions on that day (May 18th, 2007.

5). Plaintiff's medications make him nausea which is normal for these type of pain meds (all of which are marked "Take With Food" warnings) They're harsh on the stomach. Inderal (for HBP & migraine prevention); Motrin (carpal tunnel/cervical joint pain); Excedrin (migraine). Plaintiff keeps those in his cell. The nurse — administered meds are Seroquel and Elavil which are also harsh on the stomach. This is why Plaintiff was prescribed the AM-PM snacks; that way he can safely/comfortably take his meds, plus giving him a 2400 calorie diet.

(31)

<u>Statement of Claim Cont.</u>

7). It is well-documented that I can not tolerate medications well without experiencing stomach pain, nausea, and other side effects. My medical chart <u>clearly</u> reflects this fact because I've been taking the following meds for <u>years</u>:

Zantac (GERD, Acid Reflux Disease/Disorder all my life);

Mintox/Maalox Tabs (to coat my stomach to thwart med pain); (Dc'd.)

and Tums —          "          "          "

8). <u>Eighth Amendment Claim</u> — <u>Cruel Unusual Punishment.</u>

Because Lieutenant Fields and other CO's have failed to control a number of individuals in the messhall regarding diet meals I am being penalized. That penalization has caused me several weeks of pain, suffering and it has placed me in future risk of

(32)

heart attack, stroke, and other bad health risks. My Father, his Father, my grandmother, and both of my mother's brothers all died of problems arising out of HBP/Heart Attack/Stroke. (Verify by calling Shirley Price in Bessemer Al. P.O. Box 232, Bessemer Al. 35142 for health history – 205-428-6501). I have High Blood Pressure and I take Inderal to treat it. It causes migraines.

    A). I suffer from frequent migraines so I have to take Excedrin/Motrin without food; esp. at night (and I am over $225 in the hole so I don't ever have canteen/food items to eat). See Financial statements. So I'm forced to endure painful side effects of pain meds.

    B). Lieutenant Fields, Lt. Profaci, C.O. Bassinger, Major Holman, Betty Burris, D. Pierce, Tom Carroll, Joseph Richardson, Nurse Quani Neal, M. Knight, Dr. Desrosiers

    are all directly involved with my having to suffer from this pain because I either wrote to them, or complained directly to them and they refused to take action regarding

(33)

these issues which constitutes deliberate indifference to Plaintiff's serious medical needs. By refusing (in fact denying) Plaintiff's doctor-prescribed special diet, both CMS, Inc. staff and DOC staff have both entered into an agreement to deny Plaintiff medical treatment sure to lead to a serious health hazard. That's cruel & unusual punishment.

Furthermore, on August 28th, 2007 Plaintiff Filed with the Court A Motion For Temporary Restraining Order AND Also A Motion For Preliminary Injunction based on "new Facts" directly related to this special diet issue. That MOTION is attached.

## Claim #4

DCC's Support Services Secretary Ms. Stacy Shane Illegally Confiscated Plaintiff's "Evidence" Regarding Case # 05-871-SLR; Section 1985 Conspiracy To Interfere With Civil Rights

(34)

And A Clear Obstruction of Justice Claim.

Plaintiff Followed DCC's Policy on obtaining copies of material that is deemed non-legal (see attached exhibit on copy policy) by sending approximately two dozen "Delaware's Deadly Prisons" news articles to the Business Office with Stacy Shane's name on the package (she had told Plaintiff on another occasion that she would handle copies sent). Plaintiff had sent to Ms. Shane a "pay to" (disbursement of Funds) slip along with his specific request For copies of the news articles which Plaintiff had planned to use against CMS and DCC as evidence in his case C.A. No. 05-871-SLR, in July of 2006/mid-summer. Plaintiff never received his copies nor his articles back From Ms. Shane. Plaintiff wrote to Ms. Shane, her supervisor—Tonya Smith—Counselor Cindy Atallian and Finally a Grievance. Ms. Shane Failed to reply to

(35)

several letters sent to her but she did reply to "other" kinds of letters (i.e. Financial Statement requests, to be specific...) so I knew she was deliberately evading my inquiries. Tonya Smith evaded my letters of appeal to her. My grievance disappeared like so many others. This is when I knew there was a conspiracy going on and that meant I was not getting the news articles back (e.g. Capt. McCreanor runs IGC and Tom Carroll, Betty Burris and Dep Warden Pierce are all connected in one way or another to the IGC Process). Plaintiff's Counselor, Cindy Atallian, had wrote a letter explaining the possibility of why Ms. Stacy Shane had not replied which was "Ms. Shane may be taking her vacation time before Summer's end." Plaintiff did not believe that but there was really little he could do. Plaintiff

(36)

has, however, made mention to the Court that he has been retaliated against by DCC officials in several ways, this only being one; his classification to high security without proper due process being another.

Plaintiff hereby contends that Stacy Shane's actions as well as her co-conspirators' actions has dealt a destructive blow to his case (C.A. No. 05-871-SLR) since he has been unable to retrieve those illegally confiscated news articles from The News Journal which he has a right to have. The articles were important to his case in the manner that their content gave clear depictions directly related to his claims in #05-871-SLR of denial of medical treatment and delay in medical treatment and the sick-call policy that violates his 8th Amendment Rights.

(37)

# Claim #5

Defendants Mike Little, Maria Lyons and Timothy Martin (along with their administrative superiors) are guilty of blocking Plaintiff's access to the Courts, reading his legal papers and divulging his confidential legal details to The Department of Justice in Delaware. Also, Plaintiff contends that the above defendants have been working in cahoots with the Delaware Department of Justice and in effect directly and deliberately interfering with his civil rights... the right to have unblocked access to the Courts, which is a violation of the Constitution.

Plaintiff's legal walk has been a journey for lack of a better phrase. Arrested in April 2001 and sentenced to a state term in Pennsylvania, he was later brought to Delaware on <u>Executive Agreement</u> between Governors (arrived in Delaware January 2002 to Face murder charges). After his conviction in May 2003 Plaintiff was under the impression that he'd be automatically returned to Pennsylvania but he learned that the Executive Agreement by Pa. & De. Governors was not totally legitimate so Plaintiff Filed a State Habeas Corpus in Superior Court of

Delaware. The Court, finding it meritable, granted the Motion to return to Pennsylvania one Lou G. Price, Sr. ASAP. Five months later Plaintiff was back in Pennsylvania (July 2004). September 2004 the State of Delaware's Supreme Court rendered a ruling on Plaintiff's Direct Appeal — "Affirmed". Being Pro Se, Price wrote several letters (dozens) to his former attorney, De. Superior Court and the Mcco prothonotary/De. to attempt to procure discovery and transcripts related to his case but to no avail (obtaining De. Law/R-61, etc., in Pennsylvania DOC proved to be nearly impossible). Price received letters back from De. Superior Court saying that they could not assist him and Price received no noteworthy responses back from his former attorneys either and Price knew that his time on collateral was running and would expire September 2005, a year from Sept. 2004 (when the direct appeal decision came out), which would endanger his Federal Habe (if needed).

Fortunately, Plaintiff Price was brought back to Delaware after making Parole in Pa. DOC because August 2005 he had hastefully filed a Rule 61 Motion approximately (12) days before the carpal tunnel surgery (Price knew if he did not file it, any chance of later filing a Federal Habeas would be barred by this Court). Needless to say

(39)

the Rule 61 Price Filed was a complete disaster so when he came to Delaware he petitioned the Superior Court to extend his time to Amend it. Plaintiff was granted time to Amend on (3) different occasions. During that time, Price was still trying to procure his case File/discovery From Former counsel. In May of 2006, while in the Dcc Infirmary For a dislocated Finger and evaluation, Joseph M. Bernstein, Esq. Fed Ex'd an 16 pound box to Plaintiff just a couple of weeks before Price's Rule 61 was due in Superior Court, (the Court had specifically declined any more extensions). Keeping the suspicions silent Price was Forced to once again File a Frivolous Rule 61 Motion which of course was <u>denied</u> by Superior Court, and even though the court never even reached the merits of Price's claims he was told that he was procedurally barred.

The Facts are, Price was housed in Building 21/Maximum Housing as a result of him "Forcing" the State via State Habeas to send him back to Pa. DOC. Before he left Delaware in 2004 Price had been housed in general population in D-Building. Then the situation on September 21, 2005 with the transferring officers (05-871-SLR)

(40)

and CMS/Nurse Kozak, the administration decided
to place Plaintiff in Maximum Housing. In doing
so DCC Officials violated Plaintiff's rights to have
access to the Courts because all there was
was a mailing system in place which Plaintiff
knew nothing about because DCC has no orientation
custom here which would have told him so. Also,
Plaintiff contends that the actions of DCC officials
(defendants above) were retaliatory in nature." Because
the Constitution protects an inmates access to the
Courts, prison officials may not retaliate against
those who seek or obtain such access — whether
the retaliation takes the form of withholding
property or privileges does not matter." Please see
De Tomaso v Mc Ginnis, 970 F.2d 211, 214 (7th Cir. 1992); accord,
Williams v. Meese, 926 F.2d 994, 998 (10th Cir. 1991)(job denials
and transfers); also see Madewell v. Roberts, 909 F.2d
1203, 1206 (8th Cir. 1990)( blocking reclassification opportunities,
worsening living, and working conditions). Plaintiff did
nothing to justify placement in maximum housing
on 9/21/05. Plaintiff contends that since he was
classified to general population before his out-
of-state transfer to Pa.-DOC then he should
have been classified back to general population
once he'd returned to Delaware. Stopping in mid-
stream and changing Plaintiffs classification

(41)

status with virtually no justification is an
abuse of discretion and if it's because of the
unfortunate rape of that counselor in 2004
('July) where DCC got exposed to the public
for their internal "flaws" — Plaintiff had nothing
to do with that. That was DCC's neglect but
even if they alluded to the fact that Plaintiff
Price was convicted in a murder case — so
were dozens and dozens of other prisoners
at DCC who have never even seen the
SHU or SMHU. Plus, Price has no violent disciplinary
history (no fights, no violence against staff, no
escapes, etc.). So, DCC's only reason for placing
Price in SMHU since 9/21/05 is to retaliate
against him for the reasons stated herein.
Thus, providing DCC had justifiable reasons to
place Price in high security, the due process
clause mandates that Price is given reasons
why — in writing — that he was denied because
of this reason or that reason. Not one reason was given.

Further, Plaintiff has brought it to the attention
of this Court that Maria Lyons (DCC Staff Paralegal)
is guilty of divulging confidential information to
Mike Little who provided them to the Department
of Justice DAG Erika Y. Tross, Esq. (see attached

(42)

"Law Library Usage: Lou G. Price #454309"). The law provides that prisoners are entitled to unobstructed and confidential communication with courts, and with attorneys, and their assistants. And this right "is not limited to those already represented by an attorney, but extends equally to prisoners seeking any form of legal advice or assistance." See Procunier v. Martinez, 416 U.S. 396, 419, 94 S.ct 1800 (1974); see Foster v. Basham, 932 F.2d 732, 734-35 (8th Cir. 1991). Procunier v. Martinez 416 U.S. at 419-22; Ex parte Hull, 312 U.S. 546, 549 61 S.ct. 640 (1941) where prison officials were outlawed from screening prisoners submissions to court. Also see Ruiz v. Estelle 503 F.Supp. 1265, 1372 (S.D. Tex 1980) . . . 679 F.2d 1115, 1153-55 (5th Cir 1982). Defendant Lyons apparently is exempt from the screening ban.

Further, "regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." Procunier v. Martinez. AND, [remember] "Because the Constitution protects an inmates access to the Courts, prison officials may not retaliate against those who seek or obtain such access..." (as Plaintiff quoted before above). The point to be nailed here is that the defendants

(43)

are doing and have done just that. This is why Plaintiff has emphatically noted that he has been retaliated against and by practice [and otherwise mentioned] he has been denied access to the courts. And even though he's been in the SMHU (Shed High Unit) he was allowed to "physically attend" law library but that was stopped in December 2006 due to a personnel change and/or decision of some sort. But even then, Plaintiff was not allowed to meet with nor discuss how to file meaningful motions or court papers as outlined in Bounds v. Smith and its progenys (NOTE: in general populations Main Law Library, prisoners have consistent access to inmate paralegals for meaningful legal assistance in how to proceed in the courts but here in the SMHU inmates are not allowed to meet with inmate paralegals).

This court has jurisdiction over this type of matter...The law holds that such actions may be remedied by an injunction even if the practices are not formally part of official policy—see Ruiz v. Estelle, 679 F.2d 1115, 1154 (5th Cir. 1982), cert. denied, 460 U.S. 1042 (1983); Pratt v. Rowland, 770 F. Supp. 1399, 1406 (N.D. Cal. 1991), — OR these sort of actions may be remedied by an award of damages,

(44)

see Coleman v. Turner 838 F.2d 1004, 1005 (8th Cir 1988); Lamar v. Steele, 693 F.2d 559, 562 (5th Cir. 1982); Cruz v. Beto 603 F.2d at 1181.

Plaintiff accuses the defendants of reading his legal papers, letters to lawyers/judges/etc. and divulging confidential matters to the Delaware Department of Justice DAG Erika Y. Tross and everyone(incl. CMS) associated with her/department. Plaintiff is alarmed that all the Dept. of Justice has to do is make one phone call to DCC and they know everything I'm doing legally. This is not a simple or frivolous claim that a state court would handle. The accusation is so profound in nature because Plaintiff is involved in a crucially essential pending appeals process. Specifically, defendant (paralegal) Maria Lyons gave Mike Little a detailed computer printout of everything Plaintiff Price has been doing in the law library. Everything — even the exact number of copies, page by page. (Attachment).

Price does not have to inform the Court that this is an "adversarial process." The integrity of that process is protected by the Courts but it has been breached. The law is that prison staff may not read prisoners legal papers. Plaintiff contends that the law affords him this protection for reasons such as this. Even if legal papers are

(45)

read in circumstances such as during or after cell searches is also unlawful. Bayron v. Trudeau, 702 F.2d 43,45 (2d Cir. 1983)(allegation that guards read legal papers during a search stated a constitutional claim); also see Franklin v. State of Oregon, 662 F.2d 1337, 1345 (9th Cir. 1981)(same situation). This system (DC's) cannot be okay. Plaintiff alleges misconduct by the Dept. of Justice too.

Plaintiff has alleged retaliation for his legal activities and he understands that the burden of proof is on him. "Some courts have suggested that you must prove not only that your litigation played a part in the action that was taken against you, but that it would not have happened at all except for your litigation." Ponchik v. Bogan 929 F.2d 419, 420 (8th Cir. 1991). Further "he must have concrete evidence to support the claim". Jackson v. Fair 846 F.2d 811, 820 (1st Cir. 1988), Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir 1987). What is more concrete than the computer printout itself? (which was attached as an exhibit to a Motion To Deny Counsel filed in the District Court of Delaware by Mrs. Erika Tross, Esq. in the Civil Division?) As for the other claims of retaliation the law affords to the Plaintiff that this burden of proof may be met by circumstantial evidence such as the time sequence of his legal action and the alleged retaliation. See Smith v. Maschner

(46)

899 F.2d 940, 947-49 (10th Cir. 1990); Harris v. Fleming, 839 F.2d 1232, 1236-38 (7th Cir. 1988).

All of the above retaliation claims have in fact occured during and as a result of Plaintiff filing actions in the courts (Superior Court Habeas; District Court 1983; C.A. #05-871-SLR and #07-380-SLR). The time sequence is in exact step with the retaliation claims.

## Claim #6

As noted in his statement of claims, Plaintiff alleges that Defendants Carroll, Burris, Pierce, Profaci and their inferior corrections employees violated Plaintiff's rights under the Constitution when they exposed his life to serious injury on April 28, 2007 when his cell block and cell was filled with noxious smoke and fumes from an apparent fire. From the moment prisoners on the cellblock began to bang on their cell doors, begging to get out, yelling "Fire! Fire!" there was a lapse in fire safety as demonstrated by the C.O.'s. But they did alert Lieutenant Dorene Fields who ordered the (49) prisoners to be led into the small attached recreation area outside the block (A Tier 23 Bldg). Plaintiff does not name the block C.O.'s as defendants because not only were they new to the job but they were unwilling

(47)

participants to the "shots Lt. Dorene Fields" was calling. When the C.O.'s failed to locate the source of the smoke/fumes Lt. Fields ordered that everyone be strip searched in the (4) showers which face the windows/control booth and dozens of C.O.'s (male/female) who milled about. Also, prisoners could see each other get <u>stripped</u> <u>naked</u> because the yard windows were just yards away from the downstairs shower stalls. Plaintiff felt humiliated and dehumanized by this emotionally <u>abusive</u> experience. Especially when he was made to stand barefoot on the wet, slimey shower floor as he was strip searched. Lieutenant Fields and another lieutenant (Unk.) were upset that someone had started a fire and to punish the prisoners this is what they did. Then, when nothing was found on anybody, all (49) men were ordered back into their cells which still had the pungent fumes inside of them.

<u>Deliberate Indifference</u>.

The entire block and every cell still had the noxious smoke/fumes in them and Plaintiff (everyone) was locked in. Lieutenant Fields could have left everyone in the yard but to punish everyone for one person's "foul up" all were

(48)

Forced to inhale the carbon monoxide/Fumes that were circulating in the ventilation system to each cell. Mercifully the C.O.'s apparently complained and/or suggested that the doors needed to stay open to "air the block out" so 45 minutes after we were locked in we were _evacuated once more_ to the messhall where dinner was served. Plaintiff and many others were so nauseous that we didn't eat. _Couldn't eat._ After we sat in the messhall the official order came down to keep us in the messhall because the Fumes were so strong that it would take time to air the window-less block out (e.g. the side door is never opened in the presence of inmates and the windows do not open).

After ~~that~~ took too long we were ordered into the gym. While in the gym (Finally) a list was taken to see who needed to be seen by medical staff. Plaintiff saw that the men who were asthmatic were noted to be seen First. In all we were away From the block for more than or apprx. (2) hours. The Fact is we had to be evacuated twice and this was not mere negligence

(49)

it was deliberate indifference (review the key facts). The Constitution requires prison officials to provide "reasonable safety" for prisoners. Helling v. McKinney U.S. 113 S.Ct. 2475, 2480 (1993). Lt. Fields failed to do that because if there was/is a fire safety procedure in place she not only failed to use the knowledge, skill, and care expected of her profession but she chose to deliberately disobey it. Plaintiff has established the prerequisite showing that a supervising prison official displayed "deliberate indifference" and "reckless disregard" for safety by failing to "act reasonably" in response to danger. Farmer v. Brennan U.S. 114 S.Ct. 1970, 1978-84 (1994); accord, Goka v. Bobbitt, 862 F.2d 646, 651 (7th Cir. 1988) (the Constitution is violated "where defendants know of the danger or where the threat of violence is so substantial or pervasive that their knowledge could be inferred, and yet defendants fail to enforce a policy or take other reasonable steps which may have prevented the harm."). And in 8th Amendment cases, Plaintiff's must show that prison personnel "knew of and disregarded an excessive risk to inmate health or safety..." Farmer v. Brennan 114 S.Ct. at 1979. Plaintiff has shown this requirement. The actions of Lieutenant Fields, after the strip search, fully establishes an 8th Amendment case when she locked or ordered that (49) inmates be locked back into cells that

(50)

still reeked badly of noxious smoke/fumes for approximately (45) minutes. In fact, so bad that all (44) inmates were made to evacuate for the second time. And even though many men, including Plaintiff, complained of headaches, nausea, burning eyes and dizziness, no one was seen by the medical nurse until several hours later, (night time). Not even the asthmatics. The fire was at appx. 3p.m. and no one seen the nurse until about 9 p.m. (Note: it was C.O. Darden and a Sgt. Dymoski who alerted the other officers of fire. I may have misspelled "Dymoski"). Plaintiff Filed grievances which were shot down and the policy provides no steps for appeals when the IGC chairperson (Cpt. McCreanor) does not allow it to go through so once again the IGC process is Futile. See Complaint #2. Also see Hadix v. Johnson, 367 F.3d 513, 525 (6th Cir. 2004); Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985); Gates v. Collier, 501 F.2d 1291, 1300, 1305 (5th Cir. 1974). See attached affidavit(s), and grievance.

(51)

## Claim #7

On January 16th, 2007 the Plaintiff wrote a letter to Lt. Profaci regarding the bad air/poor ventilation inside of the SMHU. She ignored that complaint so Plaintiff spoke to the Block C.O.'s (Sgt. Carter & C.O. Passley). Plaintiff decided to write a grievance on March 21st, 2007 after Profaci ignored his complaint (Plaintiff's). (The grievance is attached).

Plaintiff complained that the ceilings, cell vents, and dayroom vents are literally caked with a thick growth of black substance that could only arrive from the air. Plaintiff requested simple action from Lt. Profaci and the IGC who simply ignored/shot down his grievance. Plaintiff has been in the SMHU areas for (2) years now and he told Profaci and the IGC that he coughs up phlegm more than normal and they did nothing still. The Plaintiff began thinking that these conditions would harm his future health such as cause cancer in his and others lungs. Plaintiff

(52)

realized that for DCC Administrators/officials to see the problem and do nothing to fix it constitutes cruel and unusual punishment which the 8th Amendment prohibits. They see what Plaintiff sees plus the Plaintiff has put the Complaints in writing and they chose to ignore it. And, <u>like</u> in <u>Claim #6</u>, it should be abundantly clear that there's inadequate ventilation in Building 23 - A Tier. See <u>Board v. Farnham 394 F.3d 469</u> (7th Cir 2005); <u>Keenan v. Hall, 83 F.3d 1083, 1090</u> (9th Cir. 1996); <u>Ramos v. Lamm, 639 F.2d 559, 569-70</u> (10th Cir 1980). Plaintiff emphasizes the point that there's poor ventilation inside of Bldg. 23/MHU and the Indoor Air is horrible which is evident by looking at the vents on the ceiling outside of the cell, in the showers, and in the cells. There's no telling what types of pathogens have damaged Plaintiff's, prisoners, and staff's lungs. This is everybody's problem.

(53)

# Claim #8

Over the course of the past (7) months, the Plaintiff has had to clean up raw sewage in his cell approximately (30) times due to his toilet either leaking out or being stopped up (where nothing will go down and one flush causes a flood). Plaintiff filed grievances that were never answered but he filed one that he made (2) hand written copies of (attached). Plaintiff alerted Sgt. Carter, C.O. Swing, C.O. White, and Sgt. Montgomery to put in work orders in February 2007 and at other times but many of the sewage problems he had were shared by everyone elses toilets except staffs toilets. Sadly, Plaintiff learned, inmates are so exasperated by the deliberate indifference at DCC that complacency is <u>urged</u>... Whenever the cell next door flushes or the two cells below/above flushes, human waste rises up in Plaintiff's toilet and there are frequent times when that <u>waste</u> floods

(54)

out into Plaintiff's cell. There is no immediate resolution by the block C.O. other than putting in a work order if they don't have the toilet "Snake". Frankly, they don't care and because the C.O.'s know they aren't supposed to leave inmates in a cell with a broken toilet they threaten to have the inmate(s) moved which is not an ideal experience because they might (inmates) be sent to the "SHU" (max) and property is lost so most men "suck it up" and "tough it out". Sometimes an old towel or T-Shirt being stuffed down in the toilet may unblock/unclog the pipe but that's extremely nasty. In such a situation (and during cell cleanup) inmates don't have gloves or disinfectants so we're forced to stick our hands in urine/feces, etc. Per order of Lt. Profaci and enforced by building C.O.'s, we don't get to use disinfectants which are supplied weekly but the "E-Crew" worker gets to use them on the C.O. bathroom, the floors, the control room ("bubble") windows, walls, etc. DeSpain v. Uphoff 264 F.3d 965, 977 (10th Cir. 2001) and like

(55)

Court decisions have long prohibited acts or situations that force prisoners to be exposed to human waste/exposure to sewage. Additionally, Plaintiff has witnessed or been a part of having to use a contaminated mop (human waste or even blood) which is passed between 25 cells (or 49 men). The same mop is used in the showers, the dayroom and each cell which one can say "cells are actually bathrooms used by two men." So, in effect, a mophead with feces, urine, blood, and shower grime on it is being used by (25) cells / 49 men, spreading lord knows what types of diseases. Plaintiff has seen C.O.'s and Sgt.'s physically put what they call a "soap ball" into a mop bucket and allow everyone to use that same bucket/mop and say "no" to requests of more "soap balls" (disinfectants). These acts are irreprehensible claims under the 8th Amendment.

(56)

## Claim #9

On January 15, 2007 the Plaintiff filed a grievance regarding messhall cups that were caked inside with this "bathtub-like" scum. He realized that every cup—when filled with artificial juice or water—had an oily film of some kind floating on top. Plaintiff took a water cup, emptied it and wiped it out with tissue. Plaintiff immediately knew that the cups had dark decay growing and sticking inside of them (like the inside of a fish tank has that greenish gook). Price has taken numerous steps to eradicate this problem. He wrote Lt. Profaci, he wrote a grievance which IGC Chairperson once again dismissed by saying "Kitchen is inspected regularly by the board of health." Plaintiff has addressed like issues regarding dirty food trays, old or spoiled food, greasy spoons/sporks, the "spoon-shaking" of food during meals (giving "short" food) and the decay/rot/scum in the cups and trays. The response is the usual deliberate indifference

(57)

attitude answer or no answer. Many Circuit courts have held that Inadequate Food and Unsanitary Food Service violates the 8th Amendment, especially when correction officials act or respond with deliberate indifference. No good can come out of placing peoples health in or at risk of developing Food poisoning or something worse. See Phelps v. Kanoplas, 308 F.3d 180 (2nd Cir. 2002); Ramos v. Lamm, 639 F.2d 559, 570-71 (10th Cir 1980); Wilson v. Van Slatta, 291 F.Supp. 2d 811, 817 (N.D. Ind. 2003;) Drake v. Velasco, 207 F.Supp. 2d 809 (N.D. Ill 2002), Plaintiff states that the unsanitary Food practices by Dcc have been and are currently placing him at serious health risks — now and For the Future. (See attachments).

## Claim #10

In violation of Plaintiff's rights under Section 1985 and pursuant to the constitutional prohibitions under the 8th Amendment, Plaintiff

(58)

has been experiencing retaliation and deprivation of medical treatment from a number of Correctional Medical Services (CMS, Inc.) personnel as a result of his grievances and outside court actions. Plaintiff contends that he has made several complaints to CMS and DOC superiors regarding the misconduct, negligence, actions, inactions, and denial of medical treatment by Nurse Quani Neal over this past year. Nurse Neal has clearly and verbally stated on several occasions why she denies the Plaintiff the treatment he's sought. Plaintiff specifically noted her indignantly saying: "You call yourself suing me, if it was up to me I wouldn't give you anything you ask for!" (She's even witheld doctor-prescribed meds, accusing Plaintiff of exaggerating his need of them). Nurse Neal has backed up her above statement because over the last year or so there has been negative temperatures between her and the Plaintiff. Especially for the commencement of this action which stemmed from the Plaintiff being deprived his doctor-prescribed Medical Diet and the realization that both DOC and CMS are not independently retaliating

(59)

against Plaintiff but they have conspired together to do so (due to his past internal and external complaints).

More recently (and more alarmingly), the Plaintiff has attached a handwritten copy of a grievance he submitted which explains how Dr. Louise Desrosiers put him on a medication that was discontinued nearly (2) years ago due to his bad reaction from it. Plaintiff told Dr. Desrosiers that AP Sherel Ott had given him the med Cafergot already and discontinued it due to it sickening him. Dr. Desrosiers gave it to Plaintiff in spite of his warning, but since she discontinued Plaintiff's pain meds once Plaintiff got one of his migraines, he had no other choice but to obey the doctor's orders. He was in pain.

The Cafergot once again caused Plaintiff to become very ill and bed-ridden.

Plaintiff submitted a sick-call slip which alerted nurses (Quani who usually handles the sick-calls) that Plaintiff was nausea, unable to eat, weary and weak with a severe migraine, (I wrote that I took the Cafergot as prescribed and ever since then I was sickened). Plaintiff

(60)

submitted the sick-call on 9/26/07 and was not seen until (2) weeks later (the handwritten copy of that sick-call is attached). Quani Sheal at that point referred Plaintiff to the doctor and that's when Plaintiff was instructed by a "Dr. Lisa" to cease taking the Cafergot and informed Plaintiff of a new medicine she would give him for migraines and related illnesses. (10/9/07 Plaintiff saw "Dr. Lisa"). That very same early eve/late noon Quani gave a card of Cafergot to Plaintiff anyway.

    Plaintiff is attaching a "Medication Administration" Record from November 2005, pointing out to the Court where it says "Cafergot" 2 tabs by mouth for 30 days. Start: 11/4/05. Stop: 12/4/05. Due to Plaintiff having adverse reactions from it it was marked "D/C" on the 6th day. D/C means discontinued. Because Dr. Desrosiers knew Plaintiff's past experience with Cafergot (Plaintiff told her also) he has no choice but to believe she deliberately took away his pain meds and gave him Cafergot to make him suffer. Plaintiff is seeking preliminary injunctive

(61)

relief based on the facts in this claim, as well as his other claims — especially those related to retaliation / Section 1985 claims.

## Relief Sought

As to claims 1 thru 10, Plaintiff is seeking compensatory and punitive damages in amounts to be determined by the jury and/or Judge after trial.

Respectfully Submitted,

Dated: 10/18/07

Lou G. Price, Sr.

SBI # 454309

Dcc -Smyrna, De

19977

(63)

## Certificate of Service

I, Lou G. Price, Sr. , hereby certify that I have served a true

and correct cop(ies) of the attached: Amended Memorandum of Law In Support

of Plaintiffs 1983 and 1985 Civ Rights Complaint upon the following

parties/person (s):


TO: U.S. Dist Court of Del.
07-380-SLR
844 N. King St./ Box 18
Wilmington De.
19801

TO: Mrs. Lorenza Wolhar, Esq.
1220 N. Market
P.O. Box 8888
Wilmington, De.
19899-8888


TO: Ms. Erika Y. Tross, Esq.
Dept. of Justice/De.
820 N. French St.
Wilmington, De.
19801
Civil Division

TO: Ralph K. Durstein, Esq.
Dept. of Justice/De.
820 N. French St
Wilm, De
19801
Civil Division

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

On this 22 day of October , 2007

Lou Price, Sr.

— A —

Exhibits As To Claim #2    07-380

A)(1) The IGC 4.4 Procedure says all grievances shall be resolved within 160 days. Mine was filed 5/26/06 and was not resolved until April 16th, 2007 — 11 months later.

⭐ This is only one of a litany of examples why the IGC Procedure is Futile.

A)(2) Grievance/Case# 90095 was a medical issue filed on 12/24/06. A hearing was held on 1/24/07. I appealed its denial on 1/24/07. Today is October 17th, 2007, and the appeal has went totally unanswered. I'm still experiencing knee pain/swelling. This example chronicles how ineffective and meaningless the IGC Procedure at DCC is. It has been (10) months since I filed this grievance, (way past the 160 day limit),

FILED

OCT 2 4 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

PO scanned

# Exhibits As To Claim #2    Cont'd

(A).(3)— Example of "Processed" Grievance the IGC Chairperson "Feels" an inmate won't pursue in Court (so it's processed).

(A)(4)— Copy of a grievance that is dismissed or unprocessed (which has no chance of appeal or further review). The process stops here but legal counsel, knowing this, moves the Court for Dismissal of the complaint based upon "inmate's failure to exhaust," under the PLRA of 1996 or Section 1997(e). This grievance has a case # (107466) but it's returned to inmate unprocessed. (I hope I've educated the Court some).

* The IGC Procedure at DCC is a Fluke and a conspiracy by Defendants to circumvent the Courts and Interfere With The Civil Rights of Prisoners who are attempting to seek redress in the Courts.*

Exhibit A (1)

**DEPARTMENT OF CORRECTION**
**Bureau of Prisons**
**245 McKee Road**
**Dover, Delaware 19904**

Final Disposition 4/16/07

~~March 16, 2007~~
23, A.U-4

Inmate PRICE LOU G
SBI # 00454309
DCC  Delaware Correctional Center
SMYRNA DE, 19977

Dear LOU PRICE:

Filed

We have reviewed your Grievance Case # 45444 dated 05/26/2006.

Based upon the documentation presented for our review, we deny your appeal request.

Accordingly, there is no further issue to mediate nor Outside Review necessary as provided by BOP Procedure 4.4 entitled "Inmate Grievance Procedure", Level III appeals.

Sincerely,

Richard Kearney
Bureau Chief

Exhibit. A(2)

## GRIEVANCE INFORMATION - MGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name** : PRICE, LOU G | **SBI#** : 00454309 | **Institution** : DCC |
| **Grievance #** : 90095 | **Grievance Date** : 12/24/2006 | **Category** : Individual |
| **Status** : Unresolved | **Resolution Status:** | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 12/19/2006 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg 23, Upper, Tier A, Cell 4, Bottom | |

### MGC

**Date Received** : 01/18/2007          **Date of Recommendation:** 01/24/2007

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| Staff | | Eller, Gail | Deny |
| Staff | | Gordon, Oshenka | Deny |
| Staff | | Branch, Adriene | Deny |
| Staff | | McCreanor, Michael | Abstain |

### VOTE COUNT

| | | |
|---|---|---|
| **Uphold : 0** | **Deny : 3** | **Abstain :1** |

### TIE BREAKER

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| | | | |

### RECOMMENDATION

Hearing held 24 January 2007.
Deny: put in sick call request to discuss knee problem with MD.
12/20/06 exchange for a smaller knee sleeve in exchange for his old larger one.
Appeal provided. Appeal due 31 January 2007.

Exhibit A(2)

## Grievance Appeal Form

This must be completed and returned to the IGC within 3 days of receipt of the
Warden/Designee/MGC Decision. This form is to be returned via the Grievance Box.
This form is to be used Only in the event of a decision appeal. Please specify the reason for the appeal in the space below.

Grievant: Lou G. Price, Sr.          SBI#: 454309

Housing Unit: 23  Au4          Case#: 70075

Date: 1-24-07          Due Date: 1-31-07

On 1/24/07 this issue went before a
medical grievance hearing (Head Nurse Gail). It
concerns a right knee injury which I requested
pain meds for and an MRI after an Xray
failed to show the source of the pain/swelling.
I also requested to be seen by a doctor/specialist
which is still being refused. Gail said "I can't
do anything." And while I was given 30 days
of Motrin & Excedrin for pain those orders are now
expired and they fail to work for the injuries
I have.
         I stand on my original grievance and
the simple remedy I requested.
                              Thank You.

Lou G. Price, Sr.
INMATE SIGNATURE

If you need additional space, attach 8.5" X 11" size sheets of paper.

**DCC  Delaware Correctional Center**
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - Appeal

| OFFENDER GRIEVANCE INFORMATION | | | |
|---|---|---|---|
| **Offender Name :** PRICE, LOU G | **SBI#** : 00454309 | **Institution** : DCC | |
| **Grievance #** : 90095 | **Grievance Date** : 12/24/2006 | **Category** : Individual | |
| **Status** : Unresolved | **Resolution Status :** | **Inmate Status :** | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 12/19/2006 | **Incident Time :** | |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg 23, Upper, Tier A, Cell 4, Bottom | | |

| APPEAL REQUEST |
|---|

Appeal received 1 February 2007
On 1/24/07 this issue went before  a medical grievance hearing , head nurse Gail. It concerns a right knee injury which I requested pain meds for and an MRI after an x-ray failed to show the source of the pain/swelling. I also requested to be seen by a doctor/ specialist which is still  being refused. Gail  said "I can't do anything " And while  I was given 30 day of Motrin & Excedrin for pain those orders  are now expired  and they fail to work for the injuries I have.  I stand on my original grievance and the simple remedy I requested.  Thank you.

| REMEDY REQUEST |
|---|

Page 4 of 7

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

**Offender Name : PRICE, LOU G**

**Grievance #** : 90095

**Status** : Unresolved

**Grievance Type:** Health Issue (Medical)

**IGC** : Merson, Lise M

**SBI#** : 00454309

**Grievance Date** : 12/24/2006

**Resolution Status :**

**Incident Date** : 12/19/2006

**Institution** : DCC

**Category** : Individual

**Resol. Date** :

**Incident Time :**

**Housing Location :** Bldg 23, Upper, Tier A, Cell 4, Bottom

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate claims: I had a x-ray mid-October for an October 4th injury to my right knee which didn't show a broken bone nor separation but I've complained of great pain, swelling, fluid and my inability to bend my knee closed and on 12/19/06 (Tuesday) I was seen by NP Ott who refused to further investigate the injury by ordering an MRI. I was prescribed pain meds and another knee sleeve but that's not correcting the injury - it's just covering it up. the pain I'm having is more than a minor injury and I know the injury is serious - it's just not being taken seriously. I've been in profound pain for 10 weeks now and counting.

**Remedy Requested** : That I be scheduled for an MRI and kept on effective pain meds; and that I be seen by Doctor Rogers or a qualified specialist ASAP.

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|------|-------|------|

## ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance :** YES

**Investigation Sent :** 01/02/2007

**Grievance Amount :**

**Date Received by Medical Unit :** 01/02/2007

**Investigation Sent To** :

**Page 1 of 4**



Exhibit (A)(4)

**FORM #584**

**GRIEVANCE FORM**

FACILITY: __DCC__                          DATE: __3/22/07__

GRIEVANT'S NAME: __Lou G. Price, Sr__      SBI#: __454309__

CASE#: __107466__                          TIME OF INCIDENT: __3/22/07__

HOUSING UNIT: __23    (Aug)__

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

At lunchtime today I was searched by C.O. Gavin while still inside the
messhall. As you know from all of the inmate deaths reported in
the news over the past several years, and now there's the growing
fear about Hepatitis C, and contagious skin diseases, bugs, etc., this
grievance addresses a health risk. C.O. Gavin was instructed to search me
with no gloves on and the situation wasn't urgent. This is a bad habit
and constant practice among C.O.'s. They don't know if they're touching
a man with Hep, who may have infected body fluid on him, open
sores, etc., yet they search the next man, giving no thought to protecting themselves
or the prisoner. Most C.O.'s search with the same filthy black gloves that touch
mens boxers, socks, garbage, etc. That's a health hazard. Even inmates wear rubber gloves
when folding "clean" sheets but C.O.'s (most) don't wear gloves when performing searches
ACTION REQUESTED BY GRIEVANT: of the person. Or they wear dirty leather gloves
to perform searches and it's not right/health conscious.
     ACTION Requested: Enforce the rule that all staff must wear
rubber gloves during any/all searches to prevent the spread of viruses,
germs and disease to others (prisoners → staff → families, etc). Thank You

GRIEVANT'S SIGNATURE: __Lou G. Price, Sr.__    DATE: __3/22/07__

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____(YES)    _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

**RECEIVED**

April '97 REV

**MAR 29 2007**

**Inmate Grievance Office**

— "B" —

## Exhibits As To Claim #3

(B)(1) Original Complaint #07-380-SLR with TRO/Injunctive Relief Attached.

(B)(2) — Affidavit signed by Plaintiff and others who were terminated from Diet 4Meals at the same time Plaintiff was.

4th. (B)(1)

# FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
# UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. 1983

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

Lou Garden Price, Sr.
(Enter above the full name of the plaintiff in this action)

V.

Tom Carroll, Elizabeth "Betty" Burris, D. Pierce, David K. Holman,
Joseph Richardson, A. Profaci, D. Fields, C.O. Bassinger (B-Kit)
3-Unk. Kitchen C.O.'S, Quani deal; Dr.Louise Desrosiers; Dietician/Nutritionist CMS;
(Enter above the full name of the defendant(s) in this action)  M. Knight

I.    Previous lawsuits

    A.  Have you begun other lawsuits in state of federal courts dealing with the same
        facts involved in this action or otherwise relating to your imprisonment?

        YES [✓]        NO [ ]

    B.  If your answer to A is yes, describe the lawsuit in the space below. (If there is more than
        one lawsuit, describe the additional lawsuits on another piece of paper, using the same
        outline).

        1.    Parties to this previous lawsuit

        Plaintiffs ( Lou G. Price, Sr.

        Defendants T.Carroll, Betty Burris; Lt. Taylor, Nurse Carol; Kera;
        CMS Inc.; Dept Justice State Detectives #1 and #2

Exh. (B)(1)

2. Court (if federal court, name the district, if state court, name the county)

Dist. Court of Delaware

3. Docket Number 05-871-CV    Sue L Robinson

4. Name of judge to whom case was assigned

Judge Sue L. Robinson

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)

Still Pending

6. Approximate date of filing lawsuit  December 2005

7. Approximate date of disposition _____

II.   A.   Is there a prisoner grievance procedure in this institution? YES [✓] NO [ ]

B.   Did you present the facts relating to your complaint in the state prisoner Grievance procedure:  YES [✓]  NO [ ]

C.   If your answer is YES,

1. What steps did you take? Wrote grievances and appeals;

2. What was the result? Ignored (IGC Procedures here are so terribly flawed that it's futile but I still followed Procedures 4.4 fully).

D.   If your answer is NO, explain why not _____

_____

E.   If there is no prison grievance procedure in the institution, did you complain to prison authorities? YES [✓]  NO [ ]

F.   If your answer is YES,

1. What steps did you take? I wrote a letter to Investigator Joe Richardson; I wrote sick call slips; I wrote Mr. Knight; I spoke to Kitchen Supervisors; Lieutenants

2. What was the result? Major Holman wrote back only reprimanding me for sending "some" of my meds out (to demonstrate my point) — not all. Quani Deal shifted blame² to DOC but said "You'll have to be counselled by a CMS professional before your diet is reinstated." — Everyone else ignored me.

Exh. (B)(C)

III.     Parties

(In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A.     Name of Plaintiff   Lou G. Price, Sr.

Address   1181 Paddock Rd. Smyrna De 19977

(In item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the names, positions and place of employment of any additional defendants.)

B.     Defendant C.O. Bassinger, Kit   is employed as   Kitchen Officer, MHU-B-side Messhall; DCC

C.     Additional Defendants UnK. Kitchen C.O.'s, Tom Carroll, Betty Burris; D. Pierce (Warden, Dep. Warden, Dep. Warden); David Holman (Major) Joseph Richardson (Investigator- I.A.); Staff Lt. Alisa Profaci; Dorene Fields (MHU Lt.); Dr. Louise Desrosiers (Dr.- CMS); Quani Neal (Nurse, CMS); Dietician-Nutritionist CMS; Michael Knight (Kitchen Admin).

IV.     Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons, dates and places. Do not give any legal arguments Or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheet if necessary.)

1). Due to several hi-risk factors for heart attack; stroke Lou Price has been on a special diet (low sodium, low cholesterol, low fat, 1800-2400 cal diet w/ AM-PM snack). Latter April, early May Lt. Dorene Fields came around to A Tier/23 with CMS "refusal" slips for several people on diet meals stating "if you don't sign I'll sign 'refuse to sign'." (That concedes my refusal for the med or service provided). Lt. Fields Knew this and she had a handful (stack) of CMS Medical/Treatment Refusal Slips (so CMS/Medical cannot say "the Kitchen did it" as Nurse Quani told me... Security/Fields/Quani/Kitchen DOC staff Conspired to do it and then "ducked" blame).

-3-

28th (5)(a)

Statement of Claim Cont.                                    6/4/07

2). May 15th I was told by the MHU B-side Kitchen worker that my diet meal has been cancelled, "per CMS/Medical" (Which is a <u>lie</u>).

3). Attached is a letter I wrote to Investigator Joe Richardson (but I addressed it to Tom Carroll, Dep. Warden Pierce; Dep. Warden Burris,). Only Major Holman responded, reprimanding me for sending my "medication cards" out where I was only demonstrating what I took (meds) and the warning label "<u>Take With Food</u>" — I always have multiple cards so I would never send out all of my meds. In any event none of the above individuals took any action to have my diet meals reinstated. The diet meal is <u>doctor prescribed</u>.

4). Attached is a May 22nd letter I received from Major Holman in the mail.

5). Staff Lt. Profaci handed me my meds back along with a copy of the letter I sent to Mr. Richardson. She refused to take action reinstating my meals on May 18th, 2007.

Statement of Claims Cont.

6). My medications make me nausea and they cause me to curl up in serious pain, clutching my stomach. My "keep on Person" (KOP) meds are:

Inderal (High Blood Pressure);
Motrin (Cervical ¦ Carpal Tunnel, Knee pain);
Excedrin (Migraine)

Each of these medications are marked "Take with Food" due to them being harsh on the stomach.

— My "Nurse Administered" Meds are:

Elavil and
Seroquel

These afternoon (3 p.m.) meds are also harsh on my stomach.

This is why I am given AM/PM snacks with my meal — so when I take these meds I can have something on my stomach.

Exh. (B)(9)

these issues which constitutes deliberate indifference to my medical needs, refusal to give me my diet meal/snacks (which is a doctor prescribed treatment) and their deliberate indifference put me back in the path of an undoubtedly serious heart/health hazard. That is Cruel & Unusual punishment by all of the above defendants.

Last, Kitchen Personnel, CMS Staff (Neal and Desrosiers) and DCC Staff are still trying to retaliate against me because of my current lawsuit before this Court #05-cv-871 SLR. Therefore I am pleading with this Court to give profound consideration to the immediate Injunctive Relief I am seeking.

V.    Relief

(State briefly exactly what you want the courts to do for you. Make no legal arguments.
Cite no cases or statutes.)

1). Relief: Immediate order to DCC to reinstate
L.Price's heart health diets w/ AM-PM snack
for pain meds until this case is concluded.
Whatever relief, including monetary,
the Court deems necessary.

Signed this 4th day of June , 2007.

(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

6/4/07
Date

(Signature of Plaintiff)

-4-

Exh. (B)(1)

# Exhibit "A"

1). The following is my letter to Mr. Richardson, Betty Burris, D. Pierce, Lt. Profaci and Tom Carroll, which Major Holman made a scolding message on the bottom of the 1st Page and signed it, 5/17/07.

2). Major Holman's official memo with the same above message.

Exh. (15)(c)

Dear Mr Joseph Richardson,                    5/16/07

A couple of weeks ago Lt. D. Fields came to my block/bldg with a bunch of CMS refusal forms saying that the messhall said I refused my meal and if I refused to sign she would sign "refused". That's equivalent to me refusing/conceding that I'm saying I don't want my meal. That's not true. I want my meals.

The truth is there are C.O.'s who stand and watch I/M's take regular trays and their diet tray, or they don't take a diet tray, and choose the reg. tray. Lt. Fields/Kitchen supervisors are generalizing about who to penalize for this. They're both wrong. I need my tray due to my risk for heart attack. I have my med file in my cell and I have hi cholesterol and hi-triglycerides and hi blood pressure. I don't play games with my health — that's why I'm on diet-diabetic-heart health-low sodium diet.
Not only is Lt. Fields/Kitchen staff placing me at risk by penalizing me by taking

In the future, do not send out all of your medications if you don't want to play games with your health.
Mj. Holm

my meals from me but I take pain meds
that are really hard on my stomach. So hard
I cannot take them without my AM/PM
snacks. I am more than $220 in the red
so I don't go to commissary. With that
much said it's cruel punishment to take
away my diet meal / AM-PM snack due to
the insolent actions of others and the
apparent inability of kitchen and MHU supervisors
to regulate meal dispensement. And it's bordering on
immature for security to manipulate medical/CMS by sending
"refusal" paperwork in when it's not me refusing.
Thank You For Your Time.
And Action.

Lou G. Price, Sr. #454309

23
Au4

cc
:

P.S. I've enclosed the harshest
of my pain meds just to
show you that it says to
"take with food". I also
have Motrin for my cervical
that is also harsh and I
take nurse delivered meds as
well. I alerted medical but it's
not them who manipulated or
orchestrated this, it's security. So



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE OF THE SECURITY SUPERINTENDENT**
**MAXIMUM & MEDIUM-HIGH SECURITY**
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977
TELEPHONE: (302) 653-9261
FAX: (302) 659-6663

<u>MEMORANDUM</u>

TO:        I/M Lou G. Price Sr. #454309
           MHU 23

FROM:      Major David K. Holman

DATE:      May 22, 2007

RE:        Your Letter to Joseph Richardson of 5/16/07

---

In the future, do not send out all of your medications if you don't want to play
games with your health.

DKH/cf

xc:    Investigator Richardson
       File

Exh (B)(1)

# Exhibit "B"

1). The following is a CMS refusal form I signed (refusing Paxil on 4/21/2006...

2). Next is a refusal form I was not there to sign (but it clearly concedes my refusal to a sick call visit on 7/10/06 because they have the slip).

3). CMS has it well-documented that my pain meds make me sick/nausea/hurt stomach, etc.

4).

CMS *(handwritten: Sur (B)(1))*

CORRECTIONAL MEDICAL SERVICES

RELEASE OF RESPONSIBILITY

*Price Lou*

*4-22-06*

Name of Inmate

Date/Time

*457309*

Inmate ID Number / Date of Birth

I hereby refuse to accept the following treatment/recommendations:

*I/M does Not WANT Paxil no mg. States, "it makes me Sick."*

I acknowledge I have been fully informed of and understand the above treatments or recommendations and the risk(s) involved in refusing. I hereby release and agree to hold harmless Correctional Medical Services, its employees and agents from all responsibility and ill effect, which may result from this action.

*Lou Price*

*4/21/06*

Inmate Signature

Date/Time

Witness

The aforementioned inmate has refused the listed medical treatment/recommendations ·
sign this form.

*(signature)*

Witness

Witness

Date/Time

7120 Rev 09/01/2004

D00018



$Ex. (B)(b)$

**CORRECTIONAL MEDICAL SERVICES**

**RELEASE OF RESPONSIBILITY**

Price Lou

**Name of Inmate**

# 454309

**Inmate ID Number / Date of Birth**

7-10-06; 1415

**Date/Time**

I hereby refuse to accept the following treatment/recommendations:

NDC visit

I acknowledge I have been fully informed of and understand the above treatments or recommendations and the risk(s) involved in refusing. I hereby release and agree to hold harmless Correctional Medical Services, its employees and agents from all responsibility and ill effect, which may result from this action.

Refuse to sign

**Inmate Signature**

Pamela McKenzie RN

**Witness**

**Date/Time**

The aforementioned inmate has refused the listed medical treatment/recommendations and sign this form.

Pamela McKenzie RN

**Witness**

**Witness**

7-10-06, 8-4p

**Date/Time**

7120 Rev 09/01/2004

D00012

Exh (B)(4)

## CORRECTIONAL MEDICAL SERVICES
## CHRONIC CARE CLINIC DOCUMENTATION

| Name Price Lou | ID Number 454309 | Age | CM □ |
|---|---|---|---|

Clinic (check applicable) □Endocrine □Cardiovascular/hypertension □Pulmonary □Infectious Disease □Neurology/seizure ☑Gen. Me
□Other: GCRD, Migraine, HTN, CD

**SUBJECTIVE**

C/o increase Rt Hand Pain
Migraine medication making him
sick - Motrin helped better

| Medication Compliance % 100% | Compliant with Exercise ☑Yes □No □NA | Inhaler use □Yes □No ☑NA |
|---|---|---|
| Medication side effects ☑Yes □No □NA | Exercise Intolerance □Yes ☑No □NA | Increased □Yes □No  Ave. Use/Day |
| Last seizure ☑NA | Weight Loss □Yes □No ☑NA | Diet Compliance □Yes □No □NA |
| LMP ☑NA | Other: | |

**OBJECTIVE**

| BP 120/80 | P 76 | R 16 | T 97.3 | WT | HT 6'7" | SaO₂ □NA 99% | Peak Flow □ NA | Cap BS □ NA |
|---|---|---|---|---|---|---|---|---|

HEENT: ☑WNL □Document Other
normal fundoscopy

Heart: □Regular no murmur, gallop, rub □Document Other
3 canned band  Peripheral eden

Lungs: ☑CTA bilaterally □Document Other

Abd: ☑BS normal, no bruits, soft, non-tender, no masses □Document Other

Genital/Rectal: □WNL ☑Deferred □Document Other

Neuro: ☑WNL □Document Other

Skin: ☑WNL □Document Other

Current Labs ☑None □Current Labs Reviewed □WNL □Abnormal(s) noted Describe:

**ASSESSMENT** Stable

Diagnosis: as above

Patient Response □ Good  ☑ Fair  □ Poor
Overall Assessment of Patient's Condition □ Improved  ☑ Unchanged  □ Worsened

CMS 1/05 Form # 7655

D00070

Exh(b)(1)

# Exhibit "C"

The Following are dates From 5-16-07 thru 6-3-07 of when I took prescribed pain meds as a result of pain (esp. migraines which lasted longest), and approximately how long the pain(s) lasted (i.e. headache and side effects pain).

4th (8)(C)

The following is a list of dates I suffered from painful side effects due to my having to take my medication without doctor prescribed dietary AM/PM snacks which have been deprived by Doc Kitchen Staff/Defendants, Doc Security Personnel Defendants and others.

---

W.    May 16th, 2007 — For apprx. 8 hours.

Fr.   May 18th, 2007 — For apprx. 7 hours

M.    May 21st, 2007 — For apprx. 5 hours

W.    May 23rd, 2007 — For apprx. 8 hours

Th.   May 24th, 2007 — For apprx. 3 or 4 hours

Su.   May 27th, 2007 — For apprx. 6 hours

Tu.   May 29th, 2007 — For apprx. 10 hours

W.    May 30th, 2007 ⇐ For apprx 3 hours

Fr.   June 1st, 2007 — For apprx 3 hours

Su.   June 3rd, 2007 — For apprx. 3 hours

Exh (B)D

# Exhibit "D"

1). Handwritten copy of grievance I Filed on 5/15/07 but it has gone ignored once again, (like others in the past).

2). May 25th, handwritten copy of appeal which has also gone ignored so bcc is in violation of the IGC Procedures as is regular Practice. The (4.4 Procedure is a Fluke and a conspiracy by the Administration to circumvent criteria in the PLRA and local state & Federal Court regarding Prisoners rights).

*Handwritten copy kept for my records* Ⓑ  Exh (B)(6)

**FORM #584**

**GRIEVANCE FORM**

FACILITY: _Dcc_                         DATE: _May 15th, 2007_

GRIEVANT'S NAME: _Lou G. Price, Sr_      SBI#: _454309_

CASE#: _____              TIME OF INCIDENT: _May 15th, 2007_

HOUSING UNIT: _23 - Aug_

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED IN THE INCIDENT OR ANY WITNESSES.

On the above date I was officially told that I was taken off my doctor prescribed diet meal. I addressed my concerns to the Dcc Administrators Burris, Carroll, Pierce and Investigator Richardson. Apparently Lt. Fields took it upon herself to sign CMS refusal slips for I/M who haven't been eating their meals or abusing the pick up process. I never did either. As a result of being taken off of my meals I am being re-placed in the dangerous position I was in before - eating unhealthy meals due to my high risk of heart attack and stroke.

ACTION REQUESTED BY GRIEVANT: _____

1). Reinstate my meal Immediately in accordance with doctor's orders. 2). Show C.O.'s / Lieutenants how to control meal dispensement (diets especially) 3) stop practice of making rash decisions that place my/others lives in jeopardy such as forcing salt-filled meals onto my tray and I have HBP.

GRIEVANT'S SIGNATURE: _Lou G. Price, Sr._    DATE: _5/15/07_

WAS AN INFORMAL RESOLUTION ACCEPTED?        _____(YES)    _____(NO)

**(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)**

GRIEVANT'S SIGNATURE: _____    DATE: _____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

**April '97 REV**

prescribed my specific diet because I'm at high risk for heart attack and stroke. This refusal by you (and the Kitchen and Lt. Fields, etc) and the action of your staff to act is an 8th Amendment violation to my rights because by placing my health in danger by taking my heart healthy meals is cruel and unusual punishment. I can die because my conditions are in need of a proper diet. If I don't hear back from you in ten more days, I'm taking this matter to Federal Court for their determination. Action requested is on my grievance of 5/15/07.

Thank You.

Jon G. Price, Sr.

454305

CC: To BGO in Dover.

Exh (E)(E)

Exhibit "E"

1). Attached letter to Mr. M. Knight
Kitchen CO- Supervisor. My letter to
administration at DCC to Mr. Knight
For his determination.
Unanswered.

Exh(B)(1)

Dear Mr. M. Knight, Kit. Supv.          5/17/07

   Dear Mr. Knight, please read the
attached and make your decision,
sir. This is wrong For your people
to do. I'm taking medication that's
hurting my stomach and I'm
again being Forced to eat meals
that are not heart healthy. The
letters explains the problem clearly.
So does the copy oF the grievance.

          Thank You,

          Lou G. Price, Sr.
          454309
          Dcc - Smyrna

Handwritten
copy For my                  5/17/07
records -

Exh. (B)(1)

Exhibit "B"

Health Services Fee Sheet Form 4 (Copay).
Signed/initialed by Nurse Kim on 8/7/07
(present w/ Dr. L. Desrosiers 8/7/07)

Also attached with it are 3
Sick Call Requests dated ~~June 25, 2007~~
Aug 13, 2007
and Aug 14, 2007.

All are in direct relation with
my asking the doctor about my
reinstatement to my diet meals, (she
had informed me she would but
suddenly I'm taken back off again
after being back on for a week).

## Delaware Department of Correction
## Health Care Services Fee Sheet

Inmate Name _Price Los_     SBI # _454309_

(Last, First MI)

Facility _DCC_     Date _8/7/07_

| | | |
|---|---|---|
| ___ | **Chargeable Visit** | **$4.00** |
| ✓ | **Non Chargeable Visit** | **-0-** |
| ✓ | **Medication Handling Fee ($2.00 X _2_ )** | $___ |

### Total Amount Charged To Inmate Account     $4.00

Health Care Staff Signature: _____ KC _____

=========================================================

## I CERTIFY BY MY SIGNATURE THAT I HAVE RECEIVED THE SERVICES DESCRIBED ABOVE.

Inmate Signature: _M H Price_     Date: _8/7/07_

1) *Witness Signature: _____     Date: _____

2) *Witness Signature: _____     Date: _____

The fee for services rendered will be deducted from your inmate account even if the amount deducted generates a negative balance. Any funds received by you will first be applied to any negative balance. Any negative balance remaining on your account when you are released will remain active for three (3) years after the date of release. Should you return to Delaware Department of Correction as an inmate within that three (3) year period, the negative balance will be applied to your inmate account on your new commitment.

Distribution:
Original: Facility Business Office     Posted/Entered by_____ Date_____
Copy:    Inmate Medical Record (yellow)
            Inmate (pink)

*Only needed if inmate refuses or is unable to sign.
**FORM #: 621**

3 part NCR

(C:Copay.96:Form.4)

*Handwritten Copy Made 4th (B)(1)*

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
## FACILITY: DELAWARE CORRECTIONAL CENTER
This request is for (circle one): **MEDICAL** DENTAL MENTAL HEALTH

Low Price _____ 23 Aug
Name (Print)                Housing Location

11/12/68 _____ 454309 _____ 8/13/07
Date of Birth            SBI Number            Date Submitted

Complaint (What type of problem are you having)? Dr. Desrosiers, ① I'm still having sharp piercing pains in my head that should be taken more serious. ② I was told by you that you were "looking into my 2400 cal diet but you didn't get back to me. ③ 8/7/07 I was charged $4 for (2) meds but all I received was (1) — A & D ointment. ④ I'm having stomach pain still

Jou B. Price, Jr _____ 8/13/07
Inmate Signature            Date

**The below area is for medical use only.  Please do not write any further.**

S:

O:   Temp:_____   Pulse: _____   Resp: _____   B/P: _____   WT: _____

A:

P:

E:

_____           _____
Provider Signature & Title                        Date & Time

3/1/99 DE01
FORM#:
MED

Note: Not seen until 8/17/07

(Rh-10-5) **Sick Call Request**

Nurse Q. Neal                                              8/14/07

Can you please check on my diet/snack (2400 Cal.) meal?

I saw Dr. Desrosiers on 8/7/07 and I was charged $4.00 for (2) meds which I have not received. (She also spoke to me about my diet on 8/7/07).

Thank You.

Lou G. Price, Sr. #454309

Bldg #23
A44

Double Copy Made
Placed In Sick Call Box Last Chow 8/14/07

Exh. (B)(1)

# Exhibit "C"

DCC reg. Menu. Dr. Cannuli, Psy
said: "high in sodium and fat."
which has led to a rise in
my blood triglycerides.

Exh. (B)(1)

The Honorable Sue L. Robinson
United States District Court
    District of Delaware
J. Caleb Boggs Federal Court Building
844 N. King Street
Wilmington, De. 19801


August 28th, 2007


Re: Price v. Taylor et al.,
    D. Del., C.A. No. 07-380-SLR


Dear Judge Robinson:

    On June 4th, 2007 Plaintiff Lou G. Price,
Sr. Filed with this Court a Section 1983
Action which was later docketed C.A. No.
07-380-SLR. (I have attached it For the
Courts convenience). Please consider this

1

Exh. Cont'd

letter:

A Motion For Temporary Restraining Order And Also A Motion For Preliminary Injunction Due To Serious Health Risks For Heart Attack/Stroke.

Facts:

On August 7, 2007 I was Finally seen by Dr. Louise Desrosiers For my quarterly "Chronic care check-up" I had submitted sick-call slips preceding this 8/7/07 visit due to my being denied my doctor-prescribed diet meals, but she did not see me until then. (Exhibit "B" Attached: Health Care Services Fee Sheet).

On August 24th, 2007 I was let out of my cell and a nurse/phlebotomist drew my blood (an order that was made by Dr. Cannuli over 90 days ago due to my taking the "risky" drug Seroquel - which can lead to heart attack/strokes).

On August 28, 2007 I was seen

2

by the psychiatric/MD Dr. Cannuli for my quarterly exam regarding my mental health meds and well-being. I discussed with him I'll say ad nauseam about my _physical health_/psychotropic meds versus my _risk factors for heart attack and/or stroke._ Esp. when it comes to the _Seroquel_ which he said the "_powers that be_" are trying to ban from DDOC due to health risks. To my knowledge I am not or have not exhibited any signs of serious risks from _Seroquel_ which I have a substantial history of taking. _But_... as I've relayed to the Court in 07-380-SLR I have several high risk factors for heart attack and stroke including but not limited to the following:

A long history of high cholesteral;
High Blood Pressure;
Overweight;

3

High Triglycerides;

I smoked for 25 years;

I abused alcohol and drugs before my arrest 6½ years ago.

I lived an unhealthy lifestyle;

I was diagnosed with PTSD and I was under high stress;

My several family members who died over the years died from heart attack/strokes.

Last, I'm a Black male, 38 year old.

Plainly put, Dr. Cannuli showed me my blood test results and said, I quote: "Your blood triglycerides have increased from 154 to 209."

I told him that's because I am forced to eat the regular inmate diet—"which is high in sodium and fat" (he said). (Exhibit "C"—Dcc Menu).

4

Exh (J3)(L)

On August 28, 2007, I went to the messhall and gave my ID card to the prisoner at the serving window because I have been receiving my <u>diet meal</u> for approximately a week now (since seeing Dr. Desrosiers on August 7th, 2007; she had said "I'll check into it and make sure you'll get it."). Unfortunately I was told that I was taken off the list <u>AGAIN</u>.

C.O. Lindsey (my block C.O.) immediately summoned Kitchen C.O. J. Colligan to the window to straighten out this problem and he said: "<u>I checked the computer / master list and you are on it until June next year but there's a termination date there I'll check into. See me last chow.</u>" I said okay. He told me that "medical terminated you in May 2007." That was it. But on 8/7/07 Ms. Desrosiers (doctor) said she would straighten that out and for this past week I've been given my diet meals until today. They stopped — AGAIN.

5

5th (5)(1)

The Plaintiff, for the reasons set forth above, has met the criteria necessary for this Court to GRANT a Temporary Restraining Order and/or a Preliminary injunction on the same grounds. The Plaintiff has established the prerequisites in Rule 65(a) of the Federal Rules of Civil Procedure AND:

1). He is likely to suffer irreparable harm if the preliminary injunction is denied and

2). That he is likely to succeed on the merits of his claims, AND —

3). That his claims raises sufficiently serious questions to justify litigation AND that he will suffer more if the injunction is denied than the Defendant will suffer if it is granted.

6

Exh (B)(4)

Furthermore, the Plaintiff believes that because Federal Rules requires that the defendant is afforded a hearing for a preliminary injunction, it is not unreasonable for him to pray for a TRO to be granted if the defendant DOES NOT waive the hearing.

Plaintiff knows Fed. R. Civ. P. 65(b) requires that he must show that he will suffer "immediate and irreparable injury, loss, or damage" if he must wait for a hearing. The Plaintiff <u>stated</u> the injury, loss and damage earlier regarding his blood test results shown to him by Dr. Cannuli (Blood Triglyceride levels have risen from from 154 to 209). Blood triglycerides are a well known (high) risk factor for heart attack. Price takes Inderal for high blood pressure. He has shown this Court several other

7

risk factors he's subject to. Now, this matter is up to this Honorable Court. There exists no greater danger than unnecessary loss of life and because death is so permanent this Court has no greater priority than altering its course.

Preliminary Injunction / TRO Requested:

Lou G. Price, Sr. is immediately reinstated to his doctor-prescribed dietary regimen by Correctional Medical Services and Delaware Correctional Center Food Services:

★ 2400 Calorie low fat / low sodium / low chol. diet w/ AM-PM Snacks ★

Respectfully Submitted,

Lou G. Price, Sr.

Lou Price — Pro Se — Dcc
Smyrna, De. 19977

Dated: 8/28/07

8

Exh (B)(C)

# Certificate of Service

I Lou G. Price, Sr. hereby certify that I have served a true and correct copy of the attached <u>Motion For TRO</u> and <u>a Motion For Preliminary Injunction Due To Serious Health Risks For Heart Attack And Stroke</u>, upon the Following:

US District Court Clerk
844 N. King St.
Wilmington, De 19801

Erika Y. Tross
Dept. of Justice
820 N. French St
Wilmington De
    19801-3509

8/28/07

Lou G. Price, Sr.

Exhibit (B)(2)

# Sworn Affidavit

1). On or about May 15, 2007, your affiant along with an untold number of other prisoners at DCC, were informed by the SMTU Kitchen Staff that they're diet meals were "terminated".

2). Weeks prior to the termination, Lt. D. Fields came around with a "Stack" of CMS, Inc. Treatment Refusal Forms, ordering those who received doctor-prescribed diet meals to sign. Those who declined to sign Lt. Fields signed "refused to sign."

3). Lou G. Price, Sr., your affiant Filed a claim under Title 42 § 1983 on June 4th, 2007 alleging deliberate indifference and violations under the 8th Amendment of the U.S. Constitution.

4). Affiant is making this sworn affidavit and signing it along with those who are still on his housing unit who were terminated from receiving their diet meals at the same time he did.

Whereas, your affiant swears to the above to be true and correct to the best of my knowledge.

10/18/07

Lou G. Price, Sr. #454309
Lou G. Price, Sr.
Dcc Smyrna, De.

Donald Bass #187042
Donald Bass          10-18-07

Sworn To Before Me This _____ Day
of _____ 2007

_____
Notary Public - Dcc

# Exhibits As To Claim #4

(C)(1) – Letter From Stacy Shane confirming that she has/does in Fact handle copying.

(C)(2) – Is actually a Law Library Request Form but it notes the policy For requesting "non-legal" copies.

(C)-(3)– Plaintiff, alleging classification retaliation, submits classification papers that have no explanation of why, appeals that answer no questions or gives any answers and –

(C)(4) Even though Plaintiff was approved for a job in February in SMHU area he's still been refused employment as part of this retaliation process against him.





**STATE OF DELAWARE**
**DEPARTMENT OF CORRECTION**
**DELAWARE CORRECTIONAL CENTER**
**1811 PADDOCK ROAD**
**SMYRNA, DELAWARE 19977**
**SUPPORT SERVICES DEPARTMENT**


TO:        *Lou Price*
           *SBI#: 454309*


FROM:      *Stacy Shane*
           *Support Services Secretary*

DATE:      *December 6, 2005*

RE:        *letter*


*I am in receipt of your kind letter, thank you. It's nice to be appreciated.*

*As far as the copying, it depends. I can copy things yes, but you need to write me first to see what I have on my desk as far as my daily work to complete. Copying ofcoarse would have to be something that I did when all of my other work was done. As long as it is not an all-the-time thing, I can fit it in. I'd rather have it sent in sections and not 400 pages at once if possible.*

*Please write me first though to make sure I'm here and not on vacation and be sure to send it attention to me. Not everyone does this kind of stuff. Mr. Hudson use to permit me to do this, but he is no longer here and there is now a new Support Services Manager, which is my boss.*


/ss

CC:    File

Exh. (c)(2)

**GENERAL REQUEST FORM**

BLD. # _____

Cell # _____

This request should be used to request general information, case law and/or photocopies from the Law Library. Case Law is issued from the Law Library on a 5 for 5 basis. Photocopy requests will be honored for Legal items only. Any items deemed non-legal will need to be forwarded to the Business Office along with a Pay-To for .25 per page.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Name_____ S.B.I._____ Date:_____

Date Received:_____   Pay-to Log # _____

Date Sent_____   Staff Initials:_____

Staff Notes:_____

Exh (C)(3)

April 20, 2006

Lou Price, 454309
22
AL11

I received your letter and will try to answer your questions.

The IBCC denied the recommendation that Lt. Seacord and I made. They approved for you to stay in med/high. You do have a right to appeal, and you can do so by writing a letter with appeal across the top to Mrs. Jackson in Classification. List all the reasons why you want to appeal including the issue about the write-up.

I am not permitted to copy anything from the classification form.

If you have any other concerns, let me know.

Thank you,

Cindy Atallian
Counselor – 22

Dear Ms. Cindy Attalian,            7/11/06

Exhibit (3)

Hello. The form I received from the IBCC
says APPROVE: Med HC, MH
NOT Approve: Med AVP Thresholds.

- No reason was given why I am
being made to stay in the MHU
(if this is the case — it looks like
it).

- Can you please tell me why I'm not
being placed in Medium Security since
you found nothing predatory in that
April 2002 write up, and I was out
in Medium Security before? I left
out of State to Pennsylvania?

- Please send me the names of the
IBCC Director and all of those who
made these determinations in my
case?

- Please send me a copy of that "point
sheet" where you made your recommendation
and everything/anything else I may need
for my files. I really need all of the
above for my appeal of this classification.

- Who do I appeal to?

- Where is the Classification Policy & Procedure
Manual or Rules (you know, like the Grievance

· Policy in the Law Library... or Prison Rules, etc. All that is necessary for the United States Constitutional requirements that are supposed to be adhered to, to protect our due process rights of the 14th Amendment). I've asked for this info and the Law Library says they don't have one.

$Exh(C)(3)$

Jon Glrice, Sr.

cc: File
    orig sent to SMs. Attalian 4/14/06

· Ms. Jamie Jackson,

§ *K (C)(3)

1). Please send me the DOC Policy on Classification and Appeals?

2). Please send me an explanation of why I was not approved for Medium when my counselor recommended me for it, (deeming my April 2002 write up non predatory). So if I have the points for Medium and I'm not a danger of anyone's safety, or the order of the jail, then why am I being held in MHU —

— And before I went to Pa DOCS I was on the Medium Compound?

Thank You.

Lou G. Price, Sr.
454309
#22
A-L-11

CC: File

April 28th, 2006

Dear Miss Jackson,

§2m(C)(3)   Re:   <u>Classification   Appeal</u>

Lou  G. Price, Sr.  #454309

I was informed by my Counselor Ms. C. Atallian on April 20, 2006 (by letter) that my recommendation by her and Lt. Seacord was denied by IBCC, who stated that I must be kept in the SMHU. Reasons For this Appeal are as Follows:

1). I was in the regular inmate population From 2/04 until I was moved to Pennsylvania custody 7/13/04 due to my sentence there. I had to put in a State Habeas Corpus to be returned to Pa. DOC because I was being kept here illegally. The Superior Court granted the Habeas Corpus.

2). Once I returned back to Delaware I was wrongfully placed in the SHU due to Classification errors and kept there (Bldg #21) until From 9/21/05 to 1/10/06. Counselor Forbes had scored my points wrong thus subjecting me to "higher security punishment."

3). While in Gander Hill Prison I had obtained (4/02) a write-up and Counselor Forbes said that it reflected a "Predatory nature" but she never reviewed it. Once I came to the SMHU/#22 Counselor Atallian reviewed the April 2002 write up and found it to be "<u>non</u>-Predatory," which brought my points down to Medium

level — which is what led Ms. Atallian and Lieutenant Seacord to recommend me for Medium Security/regular general population.

4). The IBCC failed to state any reason(s) whatsoever for why they denied my being placed in general population which is arbitrary and capricious. There is no justification why I'm being kept in a high security section of the prison. I have no detainers out of state, I was never an escape risk, I've never been in a violent altercation w/ other staff or inmates and that April 2002 write up was "non predatory"(disorderly, yet non-threatening).

5). I have reason to believe that I am being retaliated against for the Habeas Corpus (which had been granted in 2004), and a current civil action I have pending in Delaware District Court pursuant to medical neglect and misuse of force against certain state officials and a D.C.C. Lieutenant... plus other grievances that I have written or have pending for related subjects and unconstitutional conditions) practices by D.C.C./Smyrna DE.

   In summary, before I was returned to Pa.)DOC custody I was in general population Building D-West from February 2004 thru July 2004. When I was brought back to D.C.C., on 9/21/05, I should have been returned to general population but instead I've been wrongly and unconstitutionally subjected to punishment with no justifiable purpose in writing due to the unfortunate incident July 2004 where an inmate had sexually assaulted a staff member so D.C.C. is making me (and many others) pay for their mistake and

is unfair, arbitrary and capricious.

Thus Counselor Atallian and Lt. Seacord said I had the points and that that 4/2002 writeup was non-predatory. And aside from a January 2006 write up which was a reduced to a "minor offense" on Appeal (for a pillowcase and correction tape) I have no disciplinary record in Five years of incarceration. There just is no justifiable reason to keep me out of general population and not have the same privileges of general population inmates (such as more Law Library days/time; more visit time; school/college opportunity; programs; jobs; vocational opportunities; AVP, Thresholds, Drug, etc... I'm being heavily medicated by the Psych Dept and refused needful Mental Health Groups for PTSD and Depression). In short, I am being warehoused with no hope for better days (and I'm sentenced for Life) here with no justifiable cause or reason and told that I have to be kept from general population until September of 2007 — 2 years from the time I was returned from Pa./DOC custody.

I ask that I am placed ~~in~~ back in general population, immediately, and given specific reasons why I've been placed in the SHU and the MHU when there has never been any ~~threat~~ of danger to staff, myself or fellow prisoners. Thank You.

Sincerely,

Lou G Luce, Sr.

CC: File

Attached: Notification of IBCC Decision from Counselor

Note:(2nd
copy was
printed on
same date).

9/24/05

Dear Mr. Warden Carroll of D.C.C. Smyrna

(Exh C 3)

My name is Jou G. Price #454309. I was returned here from Camp Hill Prison in Pennsylvania last week on 9/21/05 and placed in Building #21/ Max Housing Unit or "Flow Down" from the Secure Housing Unit. Before my departure from D.C.C. on July 13 of 2004 I was housed in population on D-West. I was gone for 14 months on Habeas Corpus with a detainer on me from the State of Delaware because I have a life term here. I come back and I'm being disciplined due to a change in DOCS classification policy that was apparently made retroactive, and I feel I'm being treated unfairly. My property has been taken, I've had no hearing, no write up, no misbehavior whatsoever but I'm basically in the hole being punished with no Due Process and no rights. This is wrong. I didn't do anything to deserve this. I have 17 points, but I left D.C.C. from population so I should be returned to population. This is my request. Thank You.

Jou Price Sr. #454309
Bldg # 21 C-69

Appendix E

**DELAWARE CORRECTIONAL CENTER ---- MEMORANDUM**

TO: Inmate _Price, Lou_____, SBI# _454309_, Housing Unit _22_

VIA: Counselor _____ _Atellian_____

FROM: I.B.C.C.

DATE: _03/27/06_ .

RE: Classification Results .

Your M.D.T. has recommended you for the following: _____
_____ _Medium , AVP , MH Groups,_
_____ _Thresholds_

The I.B.C.C.'s decision is to:

✓ Approve _Med HC, MH_

✓ Not Approve _Med AVP Thresholds_

_____ Defer _____

_____ Recommend _____

_____ Not Recommend _____

**BECAUSE:**

_____ Lack of program participation          _____ Time remaining on sentence
_____ Pending disciplinary action            _____ Prior failure under supervision
_____ Gradual phasing indicated              _____ Poor institutional adjustment
_____ Open charges                           _____ Serious nature of offense
_____ Prior criminal history
_____ Failure to follow your treatment plan in that you _____

_____

_____ You present a current and continuous danger to the safety of staff, other inmates, or the good
order of the Institution. Explanation: _____

**OTHER:** _____ _Rev! 9/07_ _____

**ADDITIONAL COMMENTS:**

_____ Develop/continue treatment plan with counselor

You will be expected to address the following: _____

_____

_____

Copy to: Classification
         Inmate                                    Form #456
         Institution File                          Revised 11/97

RECEIVED
APR 1 0 REC'D
Treatment Services

TO: _Lou Price_____  SBI: _454309_____

DATE: _9/22/05_____

Exh (b)(3)

**From:**    **CLASSIFICATION OFFICE**

**RE:**    **INITIAL CLASSIFICATION**

This is to inform you that the Multi-Disciplinary Team (MDT) has classified you to **MAXIMUM** security. You will be required to complete your treatment plan and follow Institutional rules. Negative behavior, excessive write-ups, or failure to complete your treatment plan may lengthen your stay in a higher security level. You will be assigned a Quality of Life Level (QLL) and an individual treatment plan by your assigned building counselor, who will monitor your progress. Direct questions to your counselor.

**NOTE:   This classification is subject to a higher review.**

Inmate Signature: _Lou B. Price Sr._____

Date: _9/22/05_____

Next Review: _9/06_____

RA Score: _____

**Three Part Form**
**Original: Records**
**Pink: File**
**Yellow: Inmate**
FORM# 960 (3 pt)





# Office of Treatment Services
## Maximum Housing Unit - Medium High Unit
**Delaware Correctional Center**
**Smyrna, Delaware 19977**

To:    Lou Price 454309
       MHU 23 AU4

From:  Todd Kramer
       MHU 23 Counselor

Date:  January 10, 2007

_____

I have received your application through in-house mail. You met the criteria in order for
you to be considered for a job. I submitted your application to the IBCC for their review
and decision.

Thank you for your patience.

Cc:    File

Exh (E)(4)

Appendix E

## DELAWARE CORRECTIONAL CENTER ---- MEMORANDUM

TO:      Inmate Low Price , SBI# 154 309 , Housing Unit 23
VIA:     Counselor _____ Kramer _____
FROM:    I.B.C.C.
DATE:    1/30/07
RE:      Classification Results

Your M.D.T. has recommended you for the following: _____ Mew Employment _____

_____

_____

The I.B.C.C.'s decision is to:

X____ Approve _____

_____ Not Approve _____

_____ Defer _____

_____ Recommend _____

_____ Not Recommend _____

## BECAUSE:

_____ Lack of program participation          _____ Time remaining on sentence
_____ Pending disciplinary action            _____ Prior failure under supervision
_____ Gradual phasing indicated              _____ Poor institutional adjustment
_____ Open charges                           _____ Serious nature of offense
_____ Prior criminal history
_____ Failure to follow your treatment plan in that you _____

_____

_____ You present a current and continuous danger to the safety of staff, other inmates, or the good
order of the Institution. Explanation: _____

OTHER: Review 04/07 _____

_____

## ADDITIONAL COMMENTS:

_____ Develop/continue treatment plan with counselor

You will be expected to address the following: _____

_____

_____

Copy to: Classification
         Inmate                                    Form #456
         Institution File                          Revised 11/97

— "D" —

Exhibits As To Claim #5

(D)(1) — Law Library Usage: Lou G. Price (computer printout of Plaintiff's law library use where a record of everything I do is retained by Dcc Staff and shared w/ Dept. of Justice upon request).

(D)(2) — Grievance that was shot down and no appeal possible re: law library problems 4/17/06. (See 3rd page rear please).

(D)(3) — 3/19/07 grievance which was shot down re: injury from Law Library (no appeal possible) #10524

(D)(4) — Same 3/19/07 grievance for this Court's convenience regarding how Plaintiff has consistently stated how he always writes two copies of grievances and Sick-call slips, etc. because of missing grievances.

Ex (b)(1)



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
DELAWARE CORRECTIONAL CENTER
Legal Services Administrator
Smyrna Landing Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6687

TO:        Michael Little
           Legal Services Administer

FROM:      Maria Lyons
           Staff Paralegal
           MHU Law Library

DATE:      January 22, 2007

REF:       Law Library Usage: Lou Price  # 454309

From September 27, 2005 until January 10, 2006 Lou Price #454309 was housed in
MHU Bldg. 21 which is Security Lockdown. His requests for Legal Services were
handled by mail due to the status of this building. The following is a breakdown of the
services he received by mail during this period of time:

Number of Requests to MHU Law Library:        24

TABLE OF LAW LIBRARY REQUEST: 2005

| Call Number | Date Requested | Date Items Sent | Description |
|---|---|---|---|
| C-L-9 | 9/27/05 | 9/27/05 | Response from I/M Paralegal |
| C-L-9 | 9/29/05 | 9/29/05 | Photocopies (Legal Letter) |
| C-L-9 | 10/6/05 | 10/6/05 | Photocopies (Letter to Judge), Cases (+5) |
| C-L-9 | 10/11/05 | 10/11/05 | Inmate Grievance Procedure, Addresses, Court Forms (1983, Writ Mand.) |
| C-L-9 | 10/14/05 | 10/20/05 | Photocopies, Court Forms (Power of Attorney), Addresses, Staff P/L Response, |
| C-L-9 | 10/24/05 | 10/24/05 | Response from I/M Paralegal, Court Forms (1983) |
| C-L-9 | 11/1/05 | 11/1/05 | Photocopies, Court Forms (Writ Man.) |
| C-L-9 | 11/4/05 | 11/4/05 | Photocopies |
| C-L-9 | 11/4/05 | 11/4/05 | Cases (+2) |
| C-L-9 | 11/9/05 | 11/9/05 | Photocopies |
| C-L-9 | 11/14/05 | 11/14/05 | Staff Paralegal Response, Addresses |
| C-L-9 | 11/15/05 | 11/15/05 | Staff Paralegal Response |
| C-L-9 | 12/1/05 | 12/1/05 | Staff Paralegal Response (Copying of items as exhibits) |
| C-L-9 | 12/7/05 | 12/7/05 | Photocopies, Court Forms |
| C-L-9 | 12/08/05 | 12/12/05 | Cases (+5), Inmate Paralegal Response, Search List |
| C-L-9 | 12/15/05 | 12/15/05 | ABA Standards |
| C-L-9 | 12/19/05 | 12/19/05 | I/M Paralegal & Staff Paralegal Response |
| C-L-9 | 12/27/05 | 12/27/05 | Cases (+2), I/M Paralegal Resp., GTLJ, Court Forms |
| C-L-9 | 12/28/05 | 12/28/05 | Cases (+4), photocopies (transcript) |
| C-L-9 | 1/3/06 | 1/3/06 | Cases (+4), I/M Paralegal Response, Result List |
| C-L-9 | 1/5/06 | 1/5/06 | Photocopies (Letter to Judge), Cases (+5), Staff P/L Response, T 11 s. 271 |
| C-L-9 | 1/6/06 | 1/6/06 | Cases (+3) |
| C-L-9 | 1/9/06 | 1/9/06 | Photocopies, I/M Paralegal Response, Cases (+5) |
| C-L-9 | 1/10/06 | 1/10/06 | Title 11 s. 232, 301, 306, 307, 421,632, 635 |

Photocopy Requests:          **2005**

>            Number of Requests  =    10
>            Number of Pages     = 1056

| MONTH | REQUESTS | PAGES |
|-----------|----------|-------|
| September | 1 | 4 |
| October | 1 | 83 |
| November | 3 | 650 |
| December | 5 | 319 |

Notary Service:                              **3**

>            October 12, 2005
>            November 21, 2005 – Notary Service Refused
>            December 22, 2005

**\*\*\*\* January 11, 2006 – MHU Law Library is notified; in writing, by Inmate Price # 454309 that he has been transferred from MHU Bldg. 21 C-L-9 to MHU Bldg. 22 A-L-11 and requests to be scheduled for Law Library Appointments.  Inmate Price scheduled to attend his first law library appointment on January 16, 2006.**

Ex (D)(1)

The following is a breakdown of legal activities for Inmate Lou Price # 454309 for the time period of Jan 16, 2006 – December 18, 2006

Scheduled Law Library Appointment = 74
Did not show for Scheduled Appointments = 10

| Month | # of Appts | # of No Shows |
|-------|------------|---------------|
| January | 4 | 0 |
| February | 7 | 3 |
| March | 6 | 0 |
| April | 6 | 1* |
| May | 5 | 2* |
| June | 7 | 0 |
| July | 7 | 1 |
| August | 9 | 1 |
| September | 7 | 4* |
| October | 7 | 3* |
| November | 5 | 0 |
| December | 4 | 1* |

- Psychologist Appointment
- Infirmary
- On 9/26/06 Transferred to Bldg. 23 A-U-4. Unable to attend to 2 appt's due to building move.
- On 10/23/06 Bldg. 23 did not send A Tier Inmates for Law Library.
- On 12/18/06 MHU Complex went to by mail only legal services due to Staff Shortages.

$R^n$ $(b)(c)$

Number of Photocopy Requests = 37
Number of pages copied = 7,448

| Month | # of Requests | # of Pages |
|-----------|---------------|------------|
| January | 3 | 922 |
| February | 2 | 48 |
| March | 1 | 6 |
| April | 2 | 292 |
| May | 4 | 2736 |
| June | 6 | 873 |
| July | 6 | 1217 |
| August | 6 | 669 |
| September | 1 | 75 |
| October | 1 | 68 |
| November | 4 | 522 |
| December | 1 | 20 |

He also requested and received Notary Service on the following dates:

March 22, 2006

The following is a breakdown of legal services received by mail from the 12/18/06 change to legal services by mail to present:

| Cell | Date Rec'd | Date Mailed | Description |
|----------|----------|----------|----------------------------------------|
| 23 A-U-4 | 12/18/06 | 12/18/06 | Cases (+5) |
| 23 A-U-4 | 12/19/06 | 12/19/06 | Cases (+5), Search List |
| 23 A-U-4 | 12/20/06 | 12/20/06 | Cases (+3) |
| 23 A-U-4 | 12/29/06 | 12/29/06 | PSHLM pgs 1-201, Addresses |
| 23 A-U-4 | 1/3/07 | 1/5/07 | Guide to Rules of Litigation (TOC) |
| 23 A-U-4 | 1/4/07 | 1/8/07 | Cases (+1), Shepard Cites (+1) |
| 23 A-U-4 | 1/8/07 | 1/9/07 | Cases (+6), 42 USCA 1997e |
| 23 A-U-4 | 1/18/07 | 1/19/07 | Photocopies (Interrogatories) (55 pgs) |

Exh. (D)(2)

Page 1 of 3

**FORM  #584**

**GRIEVANCE FORM**

FACILITY: __D.C.C.__                          DATE: __4/18/06__

GRIEVANT'S NAME: __Lou G. Price, Sr__    SBI#: __454309__

CASE#: __38743__          TIME OF INCIDENT: __4/17/06 (A.M.)__

HOUSING UNIT: __22 (A-L-14)__

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

1). For the 2nd time in apprx 3 weeks my name has been deleted from
the Law Library schedule. This after I showed Mr. Martin/Ms. Lyons copies of
2 deadlines (1 in District Court, 1 in Superior Court) which I/M Desmond
made copies of. I was denied additional time upon requesting it.
2). Law Library Personnel (Mr. Martin/Ms. Lyons) are reading my private
legal materials (whether going to my lawyer, the State Courts or
federal courts, etc.). Everyone's material is being read under the
ruse of being copied. We are powerless to this invasion of privacy
because we need copies. 3). Prisoners in SMHU (and SHU) are being denied
access to the courts due to a very unreasonable scheduling system which
only affords 45 min. twice weekly but we are always let out late by C.O.'s
and sergeants who are indifferent. Once SMHU prisoners are inside of Law

ACTION REQUESTED BY GRIEVANT:

— See Page 2 Please —

GRIEVANT'S SIGNATURE __Lou G. Price, Sr.__      DATE: __4/18/06__

WAS AN INFORMAL RESOLUTION ACCEPTED?        ____(YES)    ____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____      DATE: _____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

**RECEIVED**

APR 24 2006

Inmate Grievance Office

Ex. (D)(2)

**FORM #584**

**GRIEVANCE FORM**

FACILITY: D.C.C.                      DATE: 4/18/06

GRIEVANT'S NAME: Lou G. Price, Jr    SBI#: 454309

CASE#:                               TIME OF INCIDENT: 4/17/06 (A.M.)

HOUSING UNIT: 22

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

Library we do not receive the assistance needed (one reason is that
there's not enough help there; not enough time to research reference
material and we are barred from being afforded important legal copies
from books). As for Bldg #21 (where I was last housed — SHU Flowdown) there
is no direct access to Law Library at all —; by mail request only and that
is absolutely unfair due to deadlines and the fact that many prisoners
are not trained in the law and have difficulty reading and writing.
We're entitled to receive assistance from a person trained in the law and
having to request things thru the mail is unfair and it quickly burns
out deadline time. This is an extreme limitation that is injurious to
me and others who are using our rights to appeal but D.C.C. is violating
our constitutional rights by their current procedures.

ACTION REQUESTED BY GRIEVANT: 1). Investigate all of the above claims asap so
that these problems can be cured. When I sign up my name should not be deleted
from for any reason that's unjustified. With 392 people in 22 & 23 law library should open at
evening times as needed. They know 5 days ahead of time that
how many people are asking to come. 2). It is wrong
and a 100% violation of privacy to force me to trust DOC

over
on next
page.

GRIEVANT'S SIGNATURE: Lou G. Price, Jr.    DATE: 4/18/06

WAS AN INFORMAL RESOLUTION ACCEPTED?        (YES)    (NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:                       DATE:

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

RECEIVED

APR 24 2006

Inmate Grievance Office

April '97 REV

Page 3 of 3

14th (D)(2)

**FORM #584**

**GRIEVANCE FORM**

FACILITY: D.C.C.                    DATE: 4/18/06

GRIEVANT'S NAME: Lou G. Price, Sr   SBI#: 454309

CASE#: _____   TIME OF INCIDENT: 4/17/06 (A.M.)

HOUSING UNIT: 22

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

cont from
pg 2 ACTION REQUESTED BY GRIEVANT: Staff to read and see my legal materials
and discover my Appeal strategies and secrets. They are not my lawyer
and should not be permitted to view anyone's law work - It's improper.
3) Law Library scheduling should be revised, more time alotted,
(like in population) to 3 times per week - 2 hours a day; that we get
copies of all legal materials (borrow) not only caselaw; Bldg 21 and STU
prisoners be given direct Law Library Access (such as a "Mini Law Library" on a
GRIEVANT'S SIGNATURE: Lou Price        DATE: 4/18/06
computer in pod interview room).

WAS AN INFORMAL RESOLUTION ACCEPTED?  _____(YES)  _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____   DATE: _____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

RECEIVED

cc: INSTITUTION FILE
    GRIEVANT

APR 24 2006

April '97 REV

Inmate Grievance Office

*Two copies handwritten simultaneously. 3/19/07*

*Law 110*   *Ex. (D)(3)*

**FORM #584**

**GRIEVANCE FORM**

FACILITY: DCC                          DATE: 3/19/07

GRIEVANT'S NAME: Lou Price, Sr       SBI#: 454309

CASE#: 105426                         TIME OF INCIDENT: (Present) — Ongoing   *3/19/07*

HOUSING UNIT: 23 — A44

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

This grievance addresses the inadequate law library service in place in the MHU at DCC. For one the "mailing system" is not prompt and it only works/benefits DCC staff, not the litigant. I have asked for paralegal assistance numerous times but went ignored by Mike Little and SMHU Law Library staff. U.S. Supreme Ct states that I be provided help from a person trained in the law to assist me in the filing/preparation of motions and meaningful papers. This SMHU Law Library has denied me this right and as a result I've suffered injury from it. DCC allows inmates in population paralegal assistance but not SMHU inmates. That's unfair discriminatory treatment.

ACTION REQUESTED BY GRIEVANT: That DCC SMHU Law Library falls in compliance with U.S. Supreme Court Law; provide an adequate law library service; provide me with paralegal assistance like compound inmates; stop discriminatory policy; provide me the room I need for studying; implement a lawyer for a legal assistance program as an alternative.

GRIEVANT'S SIGNATURE: Lou Price, Sr.        DATE: 3/19/07

WAS AN INFORMAL RESOLUTION ACCEPTED? _____ (YES) _____ (NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____   DATE: _____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

RECEIVED

MAR 22 2007

Inmate Grievance Office

*Two copies handwritten simultaneously 3/19/07*

*Law IV.*  *Exh. (D)(4)*

## FORM #584

## GRIEVANCE FORM

FACILITY: __DCC__   DATE: __3|19|07__

GRIEVANT'S NAME: __Lou Price, Sr__   SBI#: __454309__

CASE#:_____   TIME OF INCIDENT (Present) 3|19|07 — Ongoing

HOUSING UNIT: __23 — Au4__

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED IN THE INCIDENT OR ANY WITNESSES.

This grievance addresses the inadequate law library services in place in the MHU at DCC. For one the "mailing system" is not prompt and it only works for DCC staff, not the litigant. I have asked for paralegal assistance numerous times but went ignored by Mike Little and MHU Law Library Staff. U.S. Supreme Ct. states that I be provided help from a person trained in the law to assist me in the filing/preparation of motions and meaningful papers. This MHU Law Library has denied me this and as a result I've suffered injury from it. DCC allows inmates on the compound paralegal assistance but not MHU inmates. That's unfair discriminatory treatment.

ACTION REQUESTED BY GRIEVANT: That DCC MHU Law Library falls in compliance with U.S. Supreme Court Law; provide an adequate law library service; provide me with paralegal assistance like compound inmates; stop discrimination policy; provide me the room I need for studying; implement a lawyer for a legal assistance program as an alternative.

GRIEVANT'S SIGNATURE: __Lou G. Price, Sr.__   DATE: __3|19|07__

WAS AN INFORMAL RESOLUTION ACCEPTED?   _____(YES)   _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____   DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

— "E" —

## Exhibits As To Claim # 6

(E)(1) — Grievance #1139183  re: Fire/smoke Fumes incident on 4/28/07, shot down unappealable (see rear of First page).

(E)-(2) — handwritten copy (1st page of above).

Fire Safety

Exh. (E)(2)

**FORM #584**

**GRIEVANCE FORM**

FACILITY: DCC Smyrna     DATE: 4/28/07

GRIEVANT'S NAME: Lou G. Price     SBI#: 454309

CASE#: _____     TIME OF INCIDENT: 3 p.m. / 4/28/07

HOUSING UNIT: 23 - Au4

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

At apprx 3pm my cellie and I noticed a light cloud of smoke
in our cell; all the other prisoners were banging on their
doors hysterically, hollering at "Sgt. Dymoski", telling him that
there's a fire somewhere and we couldn't breathe. Sgt. Dymoski
yelled out "hold on, hold on!" and ran off the tier w/
the nurse and C.O. Darden. Ten min. later I saw Lt. Fields
and Lt. _____ run into this Bldg. and a few minutes later each
cell opened and we were ordered to the yard in a disorderly
fashion while C.O.'s searched for the source of the smoke which
was coming from the poor ventilation system/vents because
each cell was invaded by smoke (everyone was yelling to get out).

ACTION REQUESTED BY GRIEVANT: 1) Provisions enacted within the
institution to prepare both prisoners and staff for
fire and fire drills/rapid emergency response for fire/flood
training/drills. 2) To be compensated for pain and
suffering.

GRIEVANT'S SIGNATURE: Lou Price Sr.     DATE: 4/28/07

WAS AN INFORMAL RESOLUTION ACCEPTED?     _____(YES)    _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____     DATE: _____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

Exh. E (1)

Page 2 of 3 Cont'd                                          4/28/07

coming from the poor ventilation system vents
because each cell was permeated by smoke
(I know because everyone was banging to get
out).

   I'd long ago alerted Staff Lt Profaci via a 1/16/07
letter, and then the IGC via a 3/2/07
grievance (#105485), that there was "visible
debris/bad indoor air" in the SMtU) this unit
but my complaint went unheard and the IGC
dismissed it wrongfully, as they've been doing
to all of my complaints.

   Anyway, we were all taken from the
yard, strip searched barefooted in the filth
and grimey water in the shower (floors) and all
those walking by could see us nude which was
humiliating and done out of anger since the
source of the fire/smoke was undiscovered. We were
ordered back into our cells which still had
smoke in them. We stayed locked in for appx.
35-45 min/until dinner (4:35 p). The building
was reevacuated at that time due to smoke
in our cells so we were sent to the gym
until 6:21 p.m. (while all cells were open, doors,
etc to "air out"). At appx 6 p.m. Sgt. Montgomery
was ordered to see if any of us had asthma.
I was suffering from a headache/nausea-dizziness
coughing, eye irritation and shaky hands.

RECEIVED
MAY 09 2007
Inmate Grievance Office

Exh (E)(1)

Page 3of3 Cont'd                                        4/28/07

I was not seen until 9:30 p.m. by
Nurse Rachel.

Jon D. Price, Sr. #454309

4/28/07

Action Requested On Face of Grievance

RECEIVED

MAY 09 2007

Inmate Grievance Office

Exh (E)(1)

**FORM #584**

**GRIEVANCE FORM**

FACILITY: DCC

DATE: 4/28/07

GRIEVANT'S NAME: Lou G. Prices

SBI#: 454309

CASE#: 113983

TIME OF INCIDENT: 3pm   4/28/07

HOUSING UNIT: 23 — A-U4

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

At appx 3pm. my cellie and I noticed a light cloud of smoke in our cell; all the other prisoners were banging on their cell doors hysterically, hollering at "Sgt. Dymonski"(??) telling him that there's a fire somewhere and we couldn't breathe. Sgt. Dymonski yelled "hold on, hold on!" and ran off the tier with the nurse and C.O. Darden. Ten minutes later I saw Lt. Fields and Lt. _____ run into this unit ("A" Tier) and a few minutes later each cell opened and we were all ordered to the yard in a disorderly fashion while C.O.'s searched for the source of the smoke/fire which was apparently

ACTION REQUESTED BY GRIEVANT: 1) Provisions enacted within the institution to prepare both prisoners and staff for fire and fire drills; 2). To be compensated for my pain and suffering.

GRIEVANT'S SIGNATURE: Lou G. Price   DATE: 4/28/07

WAS AN INFORMAL RESOLUTION ACCEPTED?   _____(YES)   _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)   **RECEIVED**

GRIEVANT'S SIGNATURE:_____   DATE:_____   **MAY 09 2007**

**Inmate Grievance Office**

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
     GRIEVANT

April '97 REV

Page 1 of 3

— "F" —

## Exhibits As To Claim #7

(F)(1) — Letter to Lt. Alisa Profaci re: Bad Indoor Air dated 1/16/07. Ignored.

(F)(2) — Grievance Filed but shot down /dismissed so no appeal was possible. Dated 3/21/07.

(F)(3) — Handwritten Duplicate of (F)(2) — Plaintiff consistently writes (2) copies of everything.

Exh (F)(1)

Dear Staff Lieutenant Profaci,                                    1/16/07

From: Lou G. Price, Sr. #454309/Bldg 23-A44

Re: Visible Harmful Debris/Bad Indoor
     Air Inside of The SMHU/SHU.

    Anyone can look up at the ceilings in the SMHU and SHU Buildings and see the thickening growth of dark gray debris which has blended into the dayroom ceiling, and the intake (exhaust) vents in the cells.

    The above is indicative of unclean air which may be harmful to myself and all others around me including staff. You must take steps to insure my safety and future health (as well as your own staff).

                    Respectfully Submitted,

                    Lou G. Price, Sr.

cc: File (handwritten
        copy made)

*Extra handwritten.* Also,
*copy made of this. Also,
copy of my letter to Profaci
with ACLU and one for
my own records.*

**FORM #584**

$Exh (F)(2)$

**GRIEVANCE FORM**

FACILITY: DCC                    DATE: March 21st, 2007

GRIEVANT'S NAME: Lou Price        SBI#: 454309

CASE#: 105485              TIME OF INCIDENT: 3/21/07 – Ongoing

HOUSING UNIT: 23 - A4U

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE, GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

On January 16, 2007 I alerted Staff Lt. A. Profaci via letter
dated 1/16/07 regarding "Visible Harmful Debris/Bad Indoor Air
Inside of The MHU" Areas I've lived in since 9/22/05. She
never responded to me. One look up at the ceilings (esp
#23 - A Tier dayroom & cells) and you can see that there's
a thick growth of airborne debris stuck to it. Also
a look at the intake as well as outake vents in
the cells, there's awful build-up. All which is indicative of
harmful air which every inmate and staff member is
exposed to. Last, I'm not the only man who has noticed
himself coughing up phlegm regularly now and it's not a cold.

ACTION REQUESTED BY GRIEVANT: Action requested is the same I asked
of Profaci: take steps to insure my safety; others safety
by providing clean indoor air; clean up the caked up growth
on the ceilings and vents of each cell; and I request
that my lungs be examined for any harm done by these
airborne pathogens. Thank You.

GRIEVANT'S SIGNATURE: Lou G. Price      DATE: 3/21/07

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____(YES)    _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

RECEIVED
MAR 2 2 2007
Inmate Grievance Office

Extra handwritten
copy made of my
this. Also, copy of my ACLU
letter to Profaci with records.
and my own records.

**FORM #584**

**GRIEVANCE FORM**

Exh (F)(3)

FACILITY: DCC

DATE: March 21st 2007

GRIEVANT'S NAME: Lou Price, Sr

SBI#: 454309

CASE#:

TIME OF INCIDENT: 3/21/07 - Ongoing

HOUSING UNIT: 23 - A/Au

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED IN THE INCIDENT OR ANY WITNESSES.

On January 16th, 2007 I alerted Staff Lt. A Profaci via letter dated 1/16/07 Regarding "Visible Harmful Debris/ Bad Indoor Air Inside of The MHu" areas I have lived in since 9/22/05. She never responded. One look up at the ceilings (esp. #23 - A Tier) and you can see that there's a thick growth of airborne debris stuck to it. Also a look at the intake as well as outtake vents in the cells, there's awful build-up. All of which is indicative of unclean, harmful air which every Inmate and staff member is subject to. Last, I am not the only man who has noticed myself coughing up phlegm regularly now and it's not a cold; yes-

ACTION REQUESTED BY GRIEVANT:

The action requested is the same I asked of Profaci: take steps to insure my safety, others safety by providing clean indoor air; clean up the caked up growth on the ceilings and vents of each cell; and I request that my lungs be examined for any harm done by these airborne pathogens. Thank You.

GRIEVANT'S SIGNATURE: Lou G. Price          DATE: 3/21/07

WAS AN INFORMAL RESOLUTION ACCEPTED?          ____(YES)   ____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____   DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

Page 2    Cont'd.

I'd alerted Staff Lt. Profaci via 1/16/07 letter, and then the IGC via a 3/21/07 grievance (#105485), that there was visible debris/bad indoor air in this Unit but my complaint went unheard and the IGC dismissed it.

Anyway, we were all taken from the yard, strip searched/barefooted in the filth and grimey water in the showers for anyone and all walking by to see, which was humiliating, and done out of anger since the source of the fire was undiscovered. We were ordered back into our cells which still had smoke in them. We stayed locked in for apprx 35-45 minutes/until dinner (4:35p). Then (the building was re-evacuated because of the smoky cells) we were sent to the gym until 6:21 p.m.

At 6 p.m. Sgt. Montgomery was ordered to see if any of us had "asthma". I, personally, had a headache - nausea - dizziness, and coughing, and eye irritation, and shaky hands.

I was not seen until 9:30 p.m. by Nurse Rachel.

Jon G. Price, Sr. #454309
4/28/07

Action Requested On Face of Grievance

— "G" —

## Exhibits As To Claim #8

(G)(1) — Grievance #104740 re: Flooding/human waste in cell toilet(s). (Dismissed and so unappealable).

(G)(2) — hand printed duplicate of above (as Plaintiff usually writes (2) copies.

Two copies in
hand printed in
my hand. 30
Plumbing

Exh (6)(1)    30

FORM #584

AU4

**GRIEVANCE FORM**

FACILITY: DCC                          DATE: 3/22/07

GRIEVANT'S NAME: Lou Price, Sr        SBI#: 454309

CASE#: 1047940                        TIME OF INCIDENT: 3/22/07 — Ongoing

HOUSING UNIT: #23   (Au4)

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.    "Dangerous Prison Conditions":

the way this MHU complex is built connects the plumbing/toilets together
in a way that is exposing the inmates to flooding and human waste
because when the next cell(s) flush their toilet(s) I see feces and
other sewage rise up in my toilet. All of the cells are like that
and the 10th Circuit deemed that unconstitutional under the 8th Amendment
in DeSpain v. Uphoff. Exposure to raw sewage puts me at substantial
risk of injury or even death. I don't know about other inmates but
when I have to sit on the toilet my "member" hangs down into
the toilet water if I don't "hold it"... on top of that I'm being
denied disinfectant cleaners by Sgt. Carter, C.O. Gavin, C.O. Swing and
Sgt. Montgomery -- all of them are aware of the defective plumbing and
ACTION REQUESTED BY GRIEVANT: the life threatening exposure to sewage. This alone demonstrates a high degree
of deliberate indifference by these staff
members and those in power above them (namely Lt. Profaci & DCC Administration).
    ACTION Requested: Take immediate steps to reroute the human
sewage to where it belongs before more people get sick and die at
DCC...MHU. AND, establish cell clean up/sanitizing time where we're rapidly
provided daily with a way to disinfect our living quarters and toilets

GRIEVANT'S SIGNATURE: Lou G. Price, Sr.    DATE: 3/22/07

WAS AN INFORMAL RESOLUTION ACCEPTED?    ____(YES)    ____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

**IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.**

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

RECEIVED

MAR 29 2007

Inmate Grievance Office

*Two copies hand printed in my hand. &*

*Exh. (6)(2)*

**FORM #584**

**GRIEVANCE FORM**

FACILITY: DCC

DATE: 3/22/07

GRIEVANT'S NAME: Lou Price, Sr.

SBI#: 454309

CASE#:

TIME OF INCIDENT: 3/22/07 — Ongoing

HOUSING UNIT: #23 (Au4)

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED IN THE INCIDENT OR ANY WITNESSES. "Dangerous Prison Conditions":

The way this MHU Complex is built connects the plumbing/toilets together in a way that is exposing the inmates to flooding and human waste because whenever the nextdoor cell(s) flush their toilet(s) I see feces and other sewage rise up in my toilet every day. All of the cells are like that and the 10th Circuit Court deemed that unconstitutional under the 8th Amendment in DeSpain v. Uphoff. Exposure to raw sewage places me at substantial risk of injury or even death. I don't know about other inmates but when I have to sit on the toilet my "member" hangs down into the toilet water if I don't "hold it up"... On top of that I'm being denied disinfectant cleaners by Sgt. Carter, C.O. Gavin, C.O. Swing and Sgt. Montgomery -- all of them are aware of the defective plumbing and the life threatening exposure to sewage. This alone demonstrates a high degree

ACTION REQUESTED BY GRIEVANT: ~~of deliberate indifference by these staff members and those in power above them (namely Lt Profaci & Dcc Administration).~~

ACTION Requested: Take immediate steps to reroute the human waste to where it belongs before more people get sick and die at DCC MHU. And, establish cell clean up/sanitizing times where we're rapidly provided daily with a way to disinfect our living quarters and toilets.

GRIEVANT'S SIGNATURE: Lou G. Price, Sr.        DATE: 3/22/07

WAS AN INFORMAL RESOLUTION ACCEPTED?        _____(YES)    _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____        DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

—"H"—

# Exhibits As To Claim #9

(H)(1)- Grievance # 98253 filed as an everyday ongoing matter re: decay in cups (but dismissed as expired filing period... Time of Incident is everyday from 1st time of incident).

(H)(2)- duplicate hand written of (H)(1).

(H)(3)- Proof that Plaintiff has in fact on occasion tried to appeal this type of "dismissed" grievance but Dcc's grievance system is a complete plot set up to deprive inmates any recourse whatsoever and attorneys for lawsuit—filing prisoners use Section 1997(e)/PLRA's exhaustion requirement to cause Courts to dismiss legal actions.

decay in mess,

Exh (H)(1)

**FORM #584**

**GRIEVANCE FORM**

FACILITY: D.C.C. /De        DATE: 1/15/07

GRIEVANT'S NAME: Levi G. Price, Sr    SBI#: 454309

CASE#: 98853        TIME OF INCIDENT: 12/24/06 And Ongoing

HOUSING UNIT: A U 4/ Bldg #23        Every Day

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

The cups in B-side Messhall have some
type of decaying transpiring inside of them.
I noticed it because every drink served has
an oily film floating on top of the beverage
being served. This is in every cup. This decay
poses a bacterial food poisoning/infection if
not eradicated ASAP.

_____ Enclosed in the attached bag is tissue
I wiped cups out with on (3) different days

ACTION REQUESTED BY GRIEVANT: All cups used be removed from
the feed line immediately, discarded and replaced
with clean glasses that are not dark in
color but clear so this health threat can
be detected early next time.

GRIEVANT'S SIGNATURE: Levi S Price    DATE: 1/15/07

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____ (YES)    _____ (NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____    DATE: _____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

RECEIVED

JAN 1 8 2007

Inmate Grievance Office

Decay in Mess...

Exh. (H)(2)

**FORM #584**

**GRIEVANCE FORM**

FACILITY: D.C.C. / De.          DATE: 1/15/07

GRIEVANT'S NAME: Lou G. Price, Sr     SBI#: 454309

CASE#: _____                TIME OF INCIDENT: 12/24/06 And Ongoing

HOUSING UNIT: AU4 / Bldg #23              Every Day

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

The cups in B-side (Messhall have some
type of decaying transpiring inside of
them. I noticed it because every drink
served has a oily film floating on top
of the beverage being served. This is
in every cup. This decay can pose a bacterial
food poisoning/infection if not eradicated
ASAP.
        Enclosed in the attached bag is
tissue I wiped cups out with on (3) different days.

ACTION REQUESTED BY GRIEVANT: All cups used be removed
from the feed line immediately, discarded and
replaced with clean glasses that are not
dark in color but clear so this problem
can be caught early next time.

GRIEVANT'S SIGNATURE: Lou G. Price, Sr     DATE: 1/15/07

WAS AN INFORMAL RESOLUTION ACCEPTED?        _____(YES)   _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____     DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

§ in(A)(3)    Appeal For Grievance #98253

Lou G. Price, Sr. #454309              3/13/07

The above grievance was returned to me on Sunday March 11th. It is now Tuesday morning March 11th. This is my timely appeal.

1) Grievance officer wrongfully dismissed this grievance based on the filing period expired past (7) days. The grievance was written on 1/15/07 after Lou Price notified Lt Profaci about the decay in the messhall cups and nothing was done.

2). The grievance occurrence/incident has been _everyday_ since 12/24/06 so there is no violation of the filing period -- that's when I _noticed_ the decay. When I saw that same mess at the bottom of the cups on 1/15/07 I chose to file on that date.

Grievance Chairperson wrote on the unprocessed grievance "Kitchen is inspected regularly by the Board of Health." They must have missed these filthy cups which I'll be sending them swabs of.

The action I requested on Grievance #98253 still stands in this appeal.

Thank You.

Lou Price.

— "I" —

Exhibits As To Claim #10

(I)-(1) — Grievance Filed on 10/10/07 re: Nurse Neal's not answering my sick-call slip while I was bed ridden For several days after taking Cafergot, Ms. Neal's misconduct/retaliation against me.

(I)(2) — The Sick Call slip I submitted on 9/26/07 that went unanswered For approx (2) weeks.

(I) (3) — The November 2005 Medication record where the Cafergot was "DC'd" (discontinued) after 6 days because of my adverse reaction from it, proving that Dr. Desrosiers never should have given it to me.

(I)(4) — Verification that I was seen on 9/17/07 the day Dr. Desrosiers took my pain meds and gave me Cafergot after I told her I get sick from it (and my records documented that caution). Plus I was charged for this visit on the Health Care Svcs Fee Sheet.

Claim #10 Exh.    Cont'd.

(I)(5) – Another Health Care Services Fee Sheet. The one where I saw "Dr. Lise" who told me to stop taking Capergot (again). I refused to sign (10/9/07.

(I)(6) – Letter complaining to Mr. Rundle about lack of medical treatment.

(I)(7) Grievance Filed 12/19/06 re: sleep deprivation condition. Grievance denied.

(I)(8) – Grievance hearing 1/24/07 denied

(I)(9) – Grievance appealed 1/31/07. So far it has been completely ignored, for (10) months now.

(I)(10) – Letter of inadequate medical care sent to Dep Warden Pierce to seek his help. This was his reply –

(I)(11) – The actual letter sent to him by Plaintiff.

(I)(12) – Letter sent to Ms. Dep Warden Burris on 9/1/07 re: the same subject. She ignored my letter.

(I)(13) Affidavit of when Plaintiff was Fallen ill from the medication Capergot, signed by my neighbor D. Bass and notarized.

Claim #10 Exhibit Cont'd

(I) (14) Grievance Filed 10/10/06 but shot down (unappealable). Just an exhibit of what has been transpiring with the inadequate medical treatment / sick call services and rogue nursing staff.

Exh. (I)(1)

**FORM #585**

**MEDICAL GRIEVANCE**

FACILITY: Dcc                    DATE SUBMITTED: 10|10|07

INMATE'S NAME: Lou Price          SBI#: 454309

HOUSING UNIT: 23  A u4             CASE #: _____

///////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

SECTION #1

DATE & TIME OF MEDICAL INCIDENT: 10|9|07 A.M.

TYPE OF MEDICAL PROBLEM:

On (2) occasions over the past week I gave a list of KoP meds I've needed to nurses. I've had numerous problems getting them — particularly from Quani Neal whom I see has no problem promptly giving others their meds on time (like I/m D. Bass and I/m Winn in 5 and 2 cell). Dr Carruli prescribed for me Theraderm Lotion due to my Elavil badly drying me out (it comes 8 oz bottle); "As Needed". I shower and apply it 2xday. Quani told me she wasn't giving me more than (1) bottle a month. How can she be ~~allowed~~ permitted

GRIEVANT'S SIGNATURE: Lou Price, M.       DATE: 10|10|07

ACTION REQUESTED BY GRIEVANT:      (see page 3)

_____

_____

_____

DATE RECEIVED BY MEDICAL UNIT: _____

**NOTE: EMERGENCY MEDICAL CONDITIONS WILL TAKE PRIORITY. OTHERWISE, MEDICAL GRIEVANCES WILL BE ADDRESSED AT THE WEEKLY MEDICAL COMMITTEE MEETING.**

"to limit a doctor-prescribed treatment and deliberately deny dispensement of my meds on time? On 10/6/07 she responded to a serious sick-call slip I put in on September 26, 2007 because I was in my cell very sick from a medicine Dr. Desrosiers gave me on (started 9/20/07). I suffered for days from head/ stomach pain, nausea, etc. and it took Quani (12) days to see me saying "<u>I was checking to see if you were in there (cell) dehydrated because your sick call says you haven't been able to eat (or drink).</u>" Quani as well as other nurses have an across the board policy of not answering sick call slips as serious as mine, making me suffer because of being deliberately indifferent and contemptous. Finally, Dr. Desrosiers knew that Sherell Ott (NP) gave me the med <u>Cafergot</u> last year and I had a bad reaction from it but she (Desrosiers) prescribed it again and I was so sickened I seriously thought I'd die from it. I saw a new doctor on 10/9/07 named "Lisa" due to Quani's late referral from the 9/26/07 sick-call who said to stop taking the Cafergot. Hours later Quani

"arrives at my cell with a fresh card of (10) Cafergot pills. That's insane. She did the sick call so she was on best notice that giving me Cafergot is like giving me rat poison.

Last, I was charged $4.00 when I saw this "Dr. Lisa".

<u>Action Requested</u>: 1) An as needed med (like Theraderm) should be given as I need it. I need one 8oz bottle apprx. every (10) days. I'm 6'7" 234 lbs. Quani — a nurse — can't limit a doctors orders. 2). Quani is targeting me for past and current complaints I've lodged against her. Personal retaliation is obvious — she's answering my serious sick-calls late; she's giving me meds I became deathly ill from; she has to be stopped. 3) Someone needs to reprimand Dr. Desrosiers for giving me Cafergot after Dr. Ott (NP) discontinued it last year after my bad reaction. 4). I want the $4 charge on 10/9/07 to be an uncharged visit; 5). I want compensation because what other penalty is going to stop this sort of madness from happening again.

10/10/07    Lou G. Price, Sr. #454309


* 2 copies handwritten

Exh.(I)(2)    Sick Call Slip

Medical:

I got a migraine 3 days ago and I took the Cafergot as prescribed. Since then I've been unable to eat, weak and weary From the migraine.

DOB— 11-12-68                    Lou C. Price #454309

23— A44

9/26/07

cc - self

# MEDICATION ADMINISTRATION RECORD

Facility: DCC

Month: Nov 05

| DRUG – DOSE – MODE – INTERVAL – START – STOP | HR | 2 | 4 | 6 | 8 | 10 | 12 | 14 | 16 | 18 | 20 | 22 | 24 | 26 | 28 | 30 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Colace 2 tabs PO B ID START 11/4/05 Renewed 30d Per STOP 12/4/05 | A | | | | | | | | | | | | | | | |
| Hand wrist brace – Rt/Lt | 15 | | | | | | | | | | | | | | | |
| Reglan 10mg P.O. bid x10days START 11/3/05 STOP | A | | | | | | | | | | | | | | | |
| Vibramycin 50mg P.O. bid x30days START 11/2/05 STOP 11/2/05 | HS | | | | | | | | | | | | | | | |
| Motrin 800mg P.O. bid x30days START 11/4/05 STOP 12/4/05 | A | | | | | | | | | | | | | | | |
| Zantac 300mg P.O. bid x30days START 11/2/05 STOP 12/2/05 | HS | | | | | | | | | | | | | | | |
| Erythromycin sol START 11/16/05 bid x30days STOP to area | A | | | | | | | | | | | | | | | |
| Neo B #3 Oil S. | | | | | | | | | | | | | | | | |

INIT:

DIAGNOSIS:

ALLERGIES:

DOB/INMATE #: 454305

LOCATION: 21CL9

NAME: Rice Lou

DOB/INMATE #: 454305

D00159

Exh (I)(4)

## Delaware Department of Correction
## Health Care Services Fee Sheet

Inmate Name ___Price, Lou___          SBI # ___454 309___
(Last, First MI)

Facility ___DCC___          Date ___9/17/07___

| | | |
|---|---|---|
| ___ | **Chargeable Visit** | **$4.00** |
| ✓ | **Non Chargeable Visit** | **-0-** |
| ✓ | **Medication Handling Fee ($2.00 X _1_ )** | $_____ |

### Total Amount Charged To Inmate Account          $. 00

Health Care Staff Signature: ___KC___

---

## I CERTIFY BY MY SIGNATURE THAT I HAVE RECEIVED THE SERVICES DESCRIBED ABOVE.

Inmate Signature: _____  Date: ___9/17/07___

1) *Witness Signature: _____  Date: _____.

2) *Witness Signature: _____  Date: _____

---

The fee for services rendered will be deducted from your inmate account even if the amount deducted generates a negative balance. Any funds received by you will first be applied to any negative balance. Any negative balance remaining on your account when you are released will remain active for three (3) years after the date of release. Should you return to Delaware Department of Correction as an inmate within that three (3) year period, the negative balance will be applied to your inmate account on your new commitment.

Distribution:
Original: Facility Business Office          Posted/Entered by_____ Date_____
Copy:    Inmate Medical Record (yellow)
         Inmate (pink)

*Only needed if inmate refuses or is unable to sign.
**FORM #: 621**

3 part NCR

(C:Copay.96:Form.4)

Ex. (D)(5)

## Delaware Department of Correction
## Health Care Services Fee Sheet

Inmate Name ___Price Lee___    SBI # ___454309___

       (Last, First MI)

Facility ___DCC___    Date ___10/9/07___

| | | |
|---|---|---|
| ✓ | **Chargeable Visit** | **$4.00** |
| ___ | **Non Chargeable Visit** | **-0-** |
| ___ | **Medication Handling Fee ($2.00 X _____ )** | **$_____** |

### Total Amount Charged To Inmate Account    $4.00

**Health Care Staff Signature:** ___K C___

---

## I CERTIFY BY MY SIGNATURE THAT I HAVE RECEIVED THE SERVICES DESCRIBED ABOVE.

**Inmate Signature:** _Inmate Refused to Sign_ **Date:** ___10/9/07___

1) **\*Witness Signature:** _____ **Date:** _____

2) **\*Witness Signature:** _____ **Date:** _____

---

The fee for services rendered will be deducted from your inmate account even if the amount deducted generates a negative balance. Any funds received by you will first be applied to any negative balance. Any negative balance remaining on your account when you are released will remain active for three (3) years after the date of release. Should you return to Delaware Department of Correction as an inmate within that three (3) year period, the negative balance will be applied to your inmate account on your new commitment.

Distribution:

Original: Facility Business Office    Posted/Entered by_____ Date_____

Copy:    Inmate Medical Record (yellow)

       Inmate (pink)

\*Only needed if inmate refuses or is unable to sign.

**FORM #: 621**

3 part NCR

(C:Copay.96:Form.4)

Dear. Mr. Rundle CMS Med. Director _____ 11/18/06

8th
(I)(6)

Medical Grievance #75583 was sent back to me unprocessed and the IGC told me to write you regarding the refusal of your staff nurses to treat me and not answer any of the several sick calls I've submitted and made/kept copies of.

I'm in need of a right knee MRI (since X rays were normal). I'm still in pain from 10/4/06

Pain meds for migraines,

Carpal tunnel pains,

Cervical neck pain,

And treatment for a genital rash that I've been complaining about for several weeks now.

See (17) enclosed pages of complaints and reports and grievances IGC refused to process and file properly.

Thank You For Your Time

Jou G. Price, Sr.

454309

Bldg 23

CC: File

$\zeta_4 \Lambda (\mathcal{I})(\mathcal{I})$

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** PRICE, LOU G | **SBI#** : 00454309 | **Institution** : DCC | |
| **Grievance #** : 90093 | **Grievance Date** : 12/19/2006 | **Category** : Individual | |
| **Status** : Unresolved | **Resolution Status :** | **Resol. Date** : | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 12/19/2006 | **Incident Time :** | |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg 23, Upper, Tier A, Cell 4, Bottom | | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate claims: I am being left untreated to suffer from a sleep deprivation disorder I've had for several years. In May 06 I was briefly kept in the infirmary because I became  suicidal over this distressing condition. since then I've been on med after med. None worked and I began to get sick from them. Dr. Canuli tried to help but he told me that my condition is extremely difficult to treat in MHU/DCC and there was no more he could do. Now I'm just suffering badly from it.

**Remedy Requested** : To be housed in a facility where my health needs  can be addressed and properly diagnosed 2) that I be permitted to be active in any decisions made about my mental  health/sleep deprivation treatment plans.

### INDIVIDUALS INVOLVED

| Type | SBI# | Name |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| **Medical Grievance :** YES | **Date Received by Medical Unit :** 01/02/2007 |
| **Investigation Sent** : 01/02/2007 | **Investigation Sent To** : |
| **Grievance Amount :** | |

Page 1 of 4

`Exh. (E)(8)`

**DCC  Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

## GRIEVANCE INFORMATION - MGC

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** PRICE, LOU G | **SBI#** : 00454309 | **Institution** : DCC | |
| **Grievance #** : 90093 | **Grievance Date** : 12/19/2006 | **Category** : Individual | |
| **Status** : Unresolved | **Resolution Status:** | **Inmate Status :** | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 12/19/2006 | **Incident Time :** | |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg 23, Upper, Tier A, Cell 4, Bottom | | |

### MGC

**Date Received :** 01/18/2007          **Date of Recommendation:** 01/24/2007

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI# | Name | Vote |
|---|---|---|---|
| Staff | | Eller, Gail | Deny |
| Staff | | Gordon, Oshenka | Deny |
| Staff | | Branch, Adriene | Deny |
| Staff | | McCreanor, Michael | Abstain |

### VOTE COUNT

| Uphold : 0 | Deny : 3 | Abstain : 1 |
|---|---|---|

### TIE BREAKER

| Person Type | SBI # | Name | Vote |
|---|---|---|---|

### RECOMMENDATION

Hearing held 24 January 2007.
Deny: need to discuss sleep deprivation with MD & mental health. I do not have authority to state where inmate is housed.
Schedule to see mental health ASAP.
Appeal provided. Appeal due 31 January 2007.

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

$\delta\lambda (I)(9)$

## GRIEVANCE INFORMATION - Appeal

| OFFENDER GRIEVANCE INFORMATION | | | |
|---|---|---|---|
| **Offender Name :** PRICE, LOU G | **SBI#** : 00454309 | **Institution** : DCC | |
| **Grievance #** : 90093 | **Grievance Date** : 12/19/2006 | **Category** : Individual | |
| **Status** : Unresolved | **Resolution Status :** | **Inmate Status :** | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 12/19/2006 | **Incident Time :** | |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg 23, Upper, Tier A, Cell 4, Bottom | | |

| APPEAL REQUEST |
|---|

Appeal received 31 January 2007.

On 1/24/07 this issue went before a medical grievance hearing. It concerns my untreated sleep deprivation problem. I was told by Head of Nurses Gail that "there's nothing I can do about that because it's a psychological issue...I'll refer your to Dr. Canuli" So nothing was accomplished yet when processed as a mental health issue it seems like medical separated them selves from it, and it's still my health I'm concerned for. Pointing fingers is not going to get anything done. Regardless of one department or the other I'm still in trouble and I'm not being treated for the issue.

The purpose for a grievance is to find a resolution for a problem with a man's health and that wasn't able to happen. I stand on my original grievance and urge the IGC to find a way to resolve my problem.

| REMEDY REQUEST |
|---|

Exh (I)(9)

## Grievance Appeal Form

This must be completed and returned to the IGC within 3 days of receipt of the
Warden/Designee/MGC Decision. This form is to be returned via the Grievance Box.
This form is to be used Only in the event of a decision appeal. Please specify the reason for the appeal in the space below.

Grievant: Lou G. Price, Sr.      SBI#: 454309

Housing Unit: 23 Aug      Case#: 90093

Date: 1-24-07      Due Date: 1-31-07

On 1/24/07 this issue went before a medical grievance hearing. It concerns my untreated sleep deprivation problem. I was told by head of nurses (Gail) that "there's nothing I can do about that because it's a psychological issue ... I'll refer you to Dr. Canuli." So nothing was accomplished yet when processed as a Mental Health Issue it seems like medical separated themselves from it, and it's still my health I'm concerned for. Pointing fingers is not going to get anything done. Regardless of one department or the other I'm still in trouble and I'm not being treated for the issue.

The purpose for a grievance is to find a resolution for a problem with a man's health and that wasn't able to happen. I stand on my original grievance and urge the IGC to find a way to resolve my problem.

Lou H. Price, Sr.
INMATE SIGNATURE

If you need additional space, attach 8.5" X 11" size sheets of paper.





STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**OFFICE OF THE DEPUTY WARDEN**
DELAWARE CORRECTIONAL CENTER
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-6668

## MEMORANDUM

TO:       IM Lou Price SBI# 454309 MHU 23 AU4B

FROM:   Deputy Warden Pierce

DATE:    November 27, 2006

RE:       Medical

I received your letters dated October 10, and 26 2006, regarding issues with your current medical situation and have forwarded your concerns to Director of Nursing Eller for her investigation and action.

DP/dc
Attachment
cc:       Director of Nursing Eller
          File

Dear Mr. D. Pierce,

23
AU4B

(SW(X)(1))

Can you please address my complaint(s) regarding my right knee injury and the medical neglect I am suffering at the hands of CMS medical nurse ~~Rachel~~ Queni Neal, Becky Vliet, McKenzie, Chavala and Nurse Rachel who all refuse to see me concerning a bad right knee injury that happened on 10/4/06. What I am going through is unconstitutional under the 8th Amendment which I shall make a colorable claim under after I use my administrative remedies. This is cruel and unusual punishment, medical neglect and deliberate indifference to a prisoner w/ serious medical needs.

I was also taken ~~off~~ of my migraine meds, other pain meds for carpal tunnel wrist (permanent damage) and Nurse Neal has been retaliating against me in this cruel fashion.

This is an appeal to you for immediate action/intervention. Please schedule me for MRI and urgent medical help including pain mgmt.

Thank You, Sir.

Jon G. Price, Sr. #454309

DCC, Smyrna 19977

(Enclosures)

CC: File
original D. Pierce, DCC Dep Warden.

Placed in Bldg #23 Mailbox
@ 5:15 a.m. 10/26/06

RECEIVED
OCT 2 6 2006
DEPUTY WARDEN

Exh(E)(12)

Dear Deputy Warden Ms. Betty Burris,                  9/1/07
From: Lou G. Price, Sr. 454309    MHU 23   AUY

It is no secret that I have a
strained relationship with CMS Nurses and Doctors
because of the civil action I've Filed against
them. I'll never accept their gross pattern of
negligence and deliberate indifference.
        Therefore, I'm writing you this hand
written letter (of which I'm retaining a duplicate)
to call on you to take whatever action(s)
you deem necessary to stop these nurses/doctor
From denying me adequate treatment (i.e.
prescription meds - treatment). Namely Nurse Quani
Neal and Nurse Chavala are not delivering my
KoP meds in a timely Fashion. Specifically
I've asked For Theraderm Lotion
                Therapeudic Knee Sleeve (and more)

weeks ago (the Knee sleeve 2 months ago).
These items are doctor prescribed and not
being given to me (timely - when I run out).
These are just brief examples. Like I told
Dr. Canuli before I consider Further civil
action against Ms. Neal (etc.) I'll try to resolve
it through you. And just to put you on notice
I have sought a TRO/ regarding my capricious denial
of a doctor prescribed medical diet by Doc & CMS.
As you may know NOTICE is required For any TRO in
District Court.
                          Lou G. Price Sr. 9/1/07

'Exh (I)(13)

## Sworn Affidavit

10/18/07

1). On 9/17/07, your affiant was seen by Dr. Louise Desrosiers regarding his pain meds, headaches and stomach pains from meds.

2). Affiant Lou G. Price Sr. was given the medicine <u>Cafergot</u> by Dr. Desrosiers despite Price warning/cautioning her that he had been discontinued from <u>Cafergot</u> the latter end of 2005 due to a bad reaction from <u>Cafergot</u>. Dr. Desrosiers ordered Cafergot and pursuaded affiant to try it again.

3). On or about September 23, 2007 affiant Price was struck with an excruciating migraine (a chronic condition of his) and since Dr. Desrosiers took away all of his pain meds, he had no choice but to take the Cafergot for

pain relief.

4). Unfortunately, after taking the Cafergot as directed by Dr. Desrosiers, affiant Price became very ill (including not eating, nausea, weak, etc.) For several days (at least 4).

5). Price submitted a sick call slip on September 26, 2007 and it went unanswered for approximately (2) weeks (10/6/07) when Nurse Quani Neal called him to the office for a sick-call request visit. There, Quani Neal referred affiant to see a doctor.

6). October 9, 2007 Price was seen by a doctor he only knows as "Dr. Lisa". She told Price not to take any more Cafergot. But, as witnessed by Price's cellmate (Curtis Brown) that same day Nurse Neal brought affiant Price more of the Cafergot (a card with 10 pills in it).

Whereas your affiant and the undersigned witnesses swear to the facts herein to be true and correct. (In particular, they were witnessed to Price's bad reaction to the medicine and Price's being bed-ridden for several days).

Sworn To,

_Lou G. Price, Sr._  10/18/07
Lou G. Price, Sr.

Witnessed By: _His own statement attached; notarized_
Curtis Brown

Witnessed By: _Mr. Don F. Bass_ #187042
Donald Bass    10/18/07

Sworn To Before Me This ————
Of ———— 2007.

Notary Public

Exh (I)(14)

**FORM #584**

**GRIEVANCE FORM**

FACILITY: _D.C.C._   DATE: _10|10|06_

GRIEVANT'S NAME: _Lau G. Price, Sr_   SBI#: _454309_

CASE#: _____   TIME OF INCIDENT: _10/5/06, ongoing thru 10/10/06 to the present_

HOUSING UNIT: _23  AU4_

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

_See Attached Memorandum (4 Page Document)._

ACTION REQUESTED BY GRIEVANT: _See Attached Memorandum and Action Requested By Grievant_

GRIEVANT'S SIGNATURE: _Lou G Price, Sr._   DATE: _10/10/06_

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____(YES)    _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____    DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

RECEIVED

OCT 19 2006

Inmate Grievance Office

District Court DElaware; Dep. Warden D. Pierce/Burris;
Tom Carroll; A. Perdina; ACLU; CCLU/Butler Firm DC.;    October 10th, 2006
US Dept OF Justice; Director of CMS; IGC
Chairperson L. sMerson; Nurse sheal; S. Ott; Lt. Profaci;
Major Holman; X-Ray Dept; Dr. Rogers...

On October 4th or 5th I suffered an

injury serious enough to prompt Nurse Pactitioner Sherell
Ott to order X-rays done. I saw her immediately
after the injury being that she came to Building #23
and had me scheduled to Chronic care anyway. It is
now October 10th, 2006 — Tuesday. Since the injury my right
knee has filled with fluid, I'm unable to bend it, and
I'm in excruciating pain from being unable to walk/
apply normal pressure on it, or to it. Ms. Ott (on 10/4 or
10/5 ordered Ultram/narcotic meds to combat the pain).

— X-rays have not been performed as of
10/10/06, and I'm still suffering from pain.

— Everyday except 10/9/06 I directed numerous
complaints to Nurse D. Sheal about my pain, (and
meds). Specifically, she came to pass out prescribed
meds on 10/5          and literally got angry and
very loud with me in the presence of C.O. White.
On the 6th, 7th, 8th, 9th and today I've had
similar results as far as trying to attain medical
treatment from Nurse Sheal, but she has responded
in such a cold and contemptuous manner that
it's numbing. Specifically, I asked C.O. Gonzalez to ask
the doctor and Nurse Asst. Adrian if they could see
me (I saw them enter the Building this morning).
C.O. Gonzalez conveyed to me at 12:15 P.m., when

(1)

we came from noon meal, that Quani once again "got angry and loud" saying that "if he ain't dying or bleeding then he's not seeing anyone." The same C.O. was heard by Nurse Neal when he asked Sgt Massey "why would she call Price down to pick up meds when his leg is obviously hurt?" Nurse Neal angrily retorted "we don't cater to nobody."

(Note: She gave me KOP meds Inderal and Reglan at 8:25 p.m. — both of which were not for the pain I'm suffering nor did she even glance at my knee one time. She only called me to see me suffer.")

Ms. Ott did not see how huge my knee has swollen at the time she saw me on 10/4/06 since the injury was only moments old. But, Nurse Neal saw it and several C.O.'s told her I was seriously injured. Nurse Rachel also saw it a few times during medication drop off in the wee morning hours over the weekend when she worked and promised to give me an ace bandage Saturday night but she reneged and left me to suffer.

Nurse Neal and Nurse Rachel were deliberately indifferent to my serious injuries in the past as they have been right now. I have C.O.'s, Sgt's and Lieutenants for witnesses on how medical staff has neglected to treat my pain and injury (not to mention 48 men who are on the tier with me). Medical

(2)

nurses Quani S/eal and Rachel even went as far as refusing to alert C.O.'s that I should not have to take the walk to the messhall due to the worsening pain and swelling in my right knee. I keep complaining everyday to all C.O.'s who will listen but Nurse Quani and Rachel have failed to treat me and I've been met with contempt by both of them.

I would not be going this far if my injury was not serious, or if I wasn't in alot of pain. It sounded like something "cracked" in my knee and I've told medical staff this ad nauseam. I also spoke with Lt. Welcome and Lt. Barlow — they all know. But it's medical staff who have blatantly continued to ignore my complaints and continue to retaliate against me for the current civil suit I've filed with the District Court in front of Her Honorable Sue L. Robinson — Chief Judge, Delaware. And since I have been made to suffer miserably with pain instead of receiving prompt and effective medical treatment by Nurse S/eal I fully intend on filing another lawsuit against CMS — specifically Nurse S/eal and Nurse Rachel. By them taking no immediate — urgent medical action, failing to treat my serious medical need and all-out refusal to honor their contracts to provide medical care has violated my 8th Amendment Rights to the US Constitution because what they did was leave me to suffer (that's cruel and unusual punishment). Part of their reason for doing so is that their retaliating against me since I sued their colleagues for several reasons. Under the law

(3)

retaliation is illegal for any reason, and Nurse Neal needs to be stopped.

Action Requested: That I'm seen by a qualified professional immediately.

2). That X-rays are performed immediately.

3). That an MRI is performed immediately.

4). That Nurse Quani Neal's rogue and contempt-filled conduct is investigated and dealt with accordingly — immediately.

5). That I'm given crutches, ace bandages and knee braces immediately.

6). That I'm compensated for my pain and suffering since it's unnecessary and cruel and unusual.

7). That the practice of if a prisoner is in need of an X-ray that it is performed immediately because if an X-ray is ordered by the NP/or Doctor then it is seriously in need of urgent care.

8). That all CMS practices concerning emergency sick call be changed immediately, to stop prisoners from suffering unnecessarily.

CC: 16 copies made for the above.

Jou D. Price, M.
454309

* See 10/5/06 Grievance* (4)

## Instructions for Submitting a Regular Grievance

Inmates are required, per DOC Procedure 4.4 [Inmate Grievance Procedure] to attempt to resolve complaints prior to filing a regular grievance. Grievances are to be submitted within seven(7) days from the date of the occurance or incident or within seven days after the inmate became aware of the incident. The grievance is to be placed in the grievance box located in each housing unit.

Only one issue per grievance form will be addressed. If the grievance is submitted on a weekend or a holiday, it will be recieved during the next working day.

---

### Return of Unprocessed Grievance

Intake Action: This Grievance Form is being returned to the inmate under the provisions outlined in DOC Procedure 4.4 "Inmate Grievance Procedure" for the following reason(s):

_____ **Vulgar/Abusive or Threatening Language.** The language that is unacceptable has been highlighted. The grievance may be resubmitted omitting this language.

_____ **Non-Grievable.** This issue has been defined as non-grievable in accordance with DOC Policy 4.4. These procedures have their own appeal process that must be followed. _____Disciplinary Action _____Parole Decision _____Classification Action

_____ **Request.** Requests are not processed through the grievance procedure. Please correspond with the appropriate office to secure the information that is requested.

_____ **Duplicate Grievance(s).** This issue has been addressed previously in Grievance #_____.

___✓___ **Original Grievances must be submitted to the Inmate Grievance Chairperson.** Photocopies are not accepted.

_____ **Inquiry on behalf of other inmates.** Inmates cannot submit grievances for other inmates.

_____ **Expired filing period.** Grievance exceeds seven(7) days from date of occurrence.

Inmate Grievance Chairperson

10-19-06
Date

Form#: 584 (F&B)
(Reverse Revised July '99)

Lou G. Price, Jr. 434304
DCC Smyrna
1181 Paddock Rd
Smyrna De 19977





U.S. District Courthouse
Mr. Peter Dalleo, Clerk
844 41. King St / Lockbox 18
Wilmington, De.
19801

Legal Mail
#07-380-SLR