IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LOU GARDEN PRICE, SR. | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 07-380-SLR |
| TOM CARROLL, ELIZABETH BETTY BURRIS, DAVID PIERCE, DAVID K. HOLMAN, JOSEPH RICHARDSON, ALISA  PROFACI, DORENE FIELDS, C.O. BASSINGER, C.O. HARMON, QUANI NEAL, DR. LOUISE DESROSIERS, DAN CMS DIETICIAN, MICHAEL KNIGHT, CARL DANBERG, STAN TAYLOR, MR. KLEIN, CMS, INC., STACY SHANE, MIKE LITTLE, MARIA LYONS, TIMOTHY MARTIN, MIKE  MCCREANOR, LISA MERSON, DELAWARE CORRECTIONAL CENTER, and DELAWARE DEPARTMENT OF CORRECTION, | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 16th day of January, 2008, having screened the amended complaint pursuant to 28 U.S.C. § 1915 and § 1915A;

IT IS ORDERED that the retaliation claims in counts IV and X are dismissed without prejudice for failure to state a claim upon which relief may be granted; that counts I, II, the remaining claims of count IV, V, and VI, all conspiracy and remaining retaliation claims, and the claims against defendants Dan CMS Dietician, Carl Danberg, Stan Taylor, Mr. Klein, CMS, Inc., Stacy Shane, Mike Little, Maria Lyons, Timothy Martin, Mike McCreanor, Lisa Merson, Delaware Correctional Center, and Delaware

Department of Correction are dismissed with prejudice as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915 and § 1915A; and that plaintiff may proceed against defendants Tom Carroll, Elizabeth Betty Burris, David Pierce, David K. Holman, Joseph Richardson, Alisa Profaci, Dorene Fields, C.O. Bassinger, C.O. Harmon, Quani Neal, Dr. Louise Desrosiers, and Michael Knight,[1] for the reasons that follow:

1. **Background**. Plaintiff Lou Garden Price ("plaintiff"), an inmate at the Delaware Correctional Center ("DCC"), filed this civil rights action pursuant to 42 U.S.C. § 1983. (D.I. 2) He appears pro se and has been granted leave to proceed in forma pauperis. The original complaint alleged a medical needs claim with issues of deprivation of medication and a special medical diet against defendants Warden Tom Carroll ("Warden Carroll"), Deputy Warden Elizabeth Betty Burris ("Burris"), Deputy Warden David Pierce ("Pierce"), David K. Holman ("Holman"), Joseph Richardson ("RIchardson"), Alisa  Profaci ("Profaci"), Dorene Fields ("Fields"), C.O. Bassinger ("Bassinger"), C.O. 3 Unk. Kitchen,[2] Quani Neal "(Neal"), Dr. Louise Desrosiers ("Dr. Desrosiers"), Dan CMS Dietician ("dietician Dan"),[3] and Michael Knight ("Knight"). Plaintiff was recently given leave to file an amended complaint which adds new defendants and claims. Plaintiff seeks compensatory and punitive damages.

---

[1]The listed defendants have been served with the exception of C.O. Harmon, who was recently identified by plaintiff.

[2]Recently identified as C.O. Harmon.

[3]Dietician Dan has not been served. The USM-285 form was returned unexecuted in August 2007. (D.I. 9)

2. Count I of the amended complaint alleges a violation of Delaware bidding

laws and entry of an illegal medical contract with medical provider Correctional Medical

Services, Inc. ("CMS").  Count II alleges conspiracy to deny inmates the right to due

process by using an inadequate grievance system.  Counts III and X allege conspiracy

and deliberate indifference to plaintiff's medical needs.[4]  Count X also alleges

retaliation.  Counts IV and V allege conspiracy to impede plaintiff's access to the courts

and retaliation for filing lawsuits.  Counts VI, VII, VIII, and IX allege unlawful conditions

of confinement.

3. **Standard of Review**.  When a litigant proceeds in forma pauperis, 28 U.S.C.

§ 1915 provides for dismissal under certain circumstances.  When a prisoner seeks

redress from a government defendant in a civil action, 28 U.S.C. § 1915A provides for

screening of the complaint by the court.  Both 28 U.S.C. § 1915(e)(2)(B) and §

1915A(b)(1) provide that the court may dismiss a complaint, at any time, if the action is

frivolous, malicious, fails to state a claim upon which relief may be granted or seeks

monetary relief from a defendant immune from such relief.  An action is frivolous if it

"lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325

(1989).

4. In performing the court's screening function under § 1915(e)(2)(B), the court

applies the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Fullman v. Pennsylvania Dep't of Corr., No. 4:07CV-000079, 2007 WL 257617 (M.D.

---

[4]Count III is most similar to the allegations contained in plaintiff's original
complaint.

Pa. Jan. 25, 2007) (citing Weiss v. Cooley, 230 F.3d 1027, 1029 (7th Cir. 2000). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff.  Erickson v. Pardus, –U.S.–, 127 S.Ct. 2197, 2200 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002).  A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, –U.S.–, 127 S.Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint does not need detailed factual allegations, however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1965 (citations omitted).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, –U.S.–, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

5. **Discussion**.  Counts II, III, IV, V, and X contain allegations of conspiracy against a number of defendants pursuant to 42 U.S.C. § 1985(3).  Under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) that the conspiracy is motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the

conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  See Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

6.  In the case at bar, plaintiff does not allege a "national origin" animus by defendants.  Moreover, the Supreme Court has interpreted § 1985(3) and the second clause of 1985(2) similarly, finding that each contains language "requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws."  Kush v. Rutledge, 460 U.S. 719, 725 (1983).  It is a well settled constitutional interpretation that "intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Id. at 726. Plaintiff fails to state a cause of action for conspiracy under § 1985.  Moreover, he fails to allege any facts from which one could infer an agreement or understanding among defendants to violate his constitutional rights, or to discriminate against him under § 1985.  The court, therefore, will dismiss plaintiff's § 1985(3) conspiracy claims in counts II, III, IV, V and X, as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §  1915(e)(2)(B) and § 1915A(b)(1).

7.  **Medical Contract**.  Count I alleges that former Delaware Department of Correction ("DOC") Commissioner Stan Taylor ("Taylor") and current DOC Commissioner Carl Danberg ("Commissioner Danberg") acted deliberately, and in violation of Delaware bidding laws, by entering into an illegal medical contract with medical provider CMS.  Plaintiff alleges CMS has consistently demonstrated a reckless

-5-

disregard for the health of inmates in the DOC and refuses to administer adequate medical care.[5] Plaintiff alleges that the agreement Taylor and Danberg signed with the United States Department of Justice ("USDOJ")[6] unlawfully waived plaintiff's right to recover for pain and suffering and their actions constitute an attempt to obstruct justice. He contends he has a right to a copy of the USDOJ findings.

8. Plaintiff does not have standing to bring a claim for alleged violations of Delaware's bidding laws. The bidding laws of Delaware are designed to protect taxpayers from a waste of public funds. George & Lynch, Inc. v. Division of Parks and Recreation, Dept. of , 465 A.2d 345 (Del. 1983). Plaintiff is not a taxpayer, and he is not a party to the contract or someone who wished to bid on the contract. Therefore, he has no standing to raise the issue that defendants Taylor and Commissioner Danberg failed to follow the Delaware public bidding laws. See Edmonston v. Watson, No. Civ.A. 9716, 1988 WL 32372 (Del. Ch. Ct. Mar. 31, 1988); Richardson v. Blackburn, 41 Del. Ch. 54, 187 A.2d 823 (Del. Ch. Ct. 1963); Haddock v. Board of Pub. Educ. in

_____

[5] Plaintiff adds that inmates housed in the Medium-High Housing Unit ("MHU") and the Security Housing Unit ("SHU") are not afforded medical privacy because correction officers stand inside the examining room during medical visits. The allegations appear to be surplusage in an effort to support the illegal contract claim.

[6] The Civil Rights Division of the USDOJ conducted an investigation of five Delaware prison facilities pursuant to the Civil Rights of Institutionalized Persons Act, which authorizes the federal government to identify and root out systemic abuses. The investigation found substantial civil rights violations at four of the five facilities: Delores J. Baylor Women's Correctional Institution, Howard R. Young Correctional Institution, DCC, and Sussex Correctional Institution. The investigation resulted in the entry of a memorandum of agreement on December 29, 2006, between the USDOJ and the State of Delaware regarding the four institutions. Paragraph I.F. of the agreement provides that it may not be used as evidence of liability in any other legal proceeding.

Wilmington, 84 A.2d 157 (Del. Ch. Ct. 1951).

9. Plaintiff's claims that Taylor and Danberg attempted to obstruct justice by unlawfully waiving his right to recover for pain and suffering also fail. The agreement with the USDOJ provides that it may not be used as evidence of liability in any other legal proceeding. It does not preclude plaintiff from bringing his own action and proving his own case. Based upon the foregoing, the court will dismiss count I as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

10. **Grievance Procedure.** Count II alleges that defendants Taylor, Commissioner Danberg, Warden Carroll, Burris, Pierce, and CMS conspired to impede inmates' rights to due process in violation of 42 U.S.C. § 1985 by using a totally inadequate inmate grievance system. As previously discussed, the court will dismiss all conspiracy claims.

11. The filing of a prison grievance is a constitutionally protected activity. Robinson v. Taylor, No. 05-4492, 2006 WL 3203900, at *1 (3d Cir. Nov. 7, 2006). Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances. Booth v. King, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004). This is because inmates do not have a constitutionally protected right to a grievance procedure. Burnside v. Moser, No. 04-4713, 138 Fed. Appx. 414, 416 (3d Cir. 2005)(citations omitted)(failure of prison officials to process administrative grievance did not amount to a constitutional violation). Nor does the existence of a

-7-

grievance procedure confer prison inmates with any substantive constitutional rights. Hoover v. Watson, 886 F. Supp. 410, 418-419 (D. Del.), aff'd 74 F.3d 1226 (3d Cir. 1995). Similarly, the failure to investigate a grievance does not raise a constitutional issue. Hurley v. Blevins, No. Civ. A. 6:04CV368, 2005 WL 997317 (E.D. Tex. Mar. 28, 2005).

12. Plaintiff cannot maintain a constitutional claim based upon his perception that inmates' grievances are not properly processed, investigated, or that the grievance process is inadequate. Therefore, the court will dismiss count II as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

13. **Medical Needs.** Count III alleges that Fields (who is supervised by Profaci), and Bassinger and Harmon (in conspiracy with Neal, Knight, and Desrosiers) were deliberately indifferent to plaintiff's serious medical needs when they deprived him of his physician-prescribed medical diet. Plaintiff alleges he either complained or wrote to investigator Richardson, Warden Carroll, Pierce, Holman, Knight, and Burris regarding the matter, but only Holman responded with a reprimand because plaintiff had forwarded his "medication punch cards." Count III alleges that Profaci returned the "meds" but refused to take any action to reinstate the special diet. Plaintiff alleges that Fields and other correction officers failed to control individuals in the mess hall regarding plaintiff's special dietary needs and, as a result, he is being penalized. As discussed above, the court will dismiss the conspiracy claim. Plaintiff will be allowed to proceed with the remaining medical needs claim contained in count III against

-8-

defendants Carroll, Burris, Pierce, Holman, Richardson, Profaci, Fields, Bassinger, Harmon, Neal, Dr. Desrosiers, and Knight.

14. **Access to the Courts**. Count IV alleges that Stacy Shane ("Shane") conspired with the DCC administration and impeded plaintiff's access to the courts in violation of 42 U.S.C. § 1985 and also retaliated against plaintiff as a result of his filing a civil rights lawsuit. More particularly, plaintiff alleges that Shane confiscated evidence plaintiff had acquired for Price v. Taylor, Civ. No. 05-871-SLR (D. Del.), a civil case filed by plaintiff. Plaintiff alleges he followed prison rules to obtain copies of articles and sent the material to Shane, but he never received his copies and Shane never returned the articles. Plaintiff alleges the articles were important to his civil case. Plaintiff alleges that Shane ignored grievances submitted regarding the issue, but responded to other matters, leading plaintiff to conclude there was a conspiracy. Plaintiff alleges that McCreanor runs the Institutional Grievance Committee ("IGC") and Warden Carroll, Burris, and Pierce are all connected to the IGC process. Plaintiff further alleges that the foregoing were acts of retaliation.

15. As discussed above, the court will dismiss all claims of conspiracy. Also as discussed above, plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, investigated, or that the grievance process is inadequate. Accordingly, the court will dismiss the grievance claims contained in count IV.

16. "Many courts have found a cause of action for violation of the right of access . . . where it was alleged that prison officials confiscated and/or destroyed legal

-9-

materials." Zilich v. Lucht, 981 F.2d 694, 695 (3d Cir. 1992) (citations omitted). A violation of the First Amendment right of access to the courts is only established where a litigant shows that he was actually injured by the alleged denial of access. The actual injury requirement is a constitutional prerequisite to suit. Lewis v. Casey, 518 U.S. 343, 351 (1996); Christopher v. Harbury, 536 U .S. 403, 415 (2002) (explaining that the constitutional right of access is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"). An actual injury is shown only where a nonfrivolous, arguable claim is lost. Christopher, 536 U.S. at 415. Count IV of the amended complaint fails to allege an actual injury. Plaintiff merely alleges that the articles are important to his case. Therefore, the court will dismiss the access to the courts claim found in count IV for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

17. **Retaliation**. As mentioned, count IV alleges that defendants retaliated against him and that the acts mentioned in count IV demonstrate the alleged retaliation. Proof of a retaliation claim requires that plaintiff demonstrate (1) constitutionally protected conduct; (2) an adverse action by prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,'" and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citations omitted). Even liberally construing the complaint, plaintiff has failed to state a retaliation claim in count IV. Most notably, the amended complaint does not allege a causal link between the exercise of a constitutional right and the adverse action taken against plaintiff.

-10-

Therefore, the court will dismiss without prejudice the retaliation claim found in count IV

for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §

1915(e)(2)(B) and § 1915A(b)(1).

18. Count V alleges that Mike Little ("Little"), Maria Lyons ("Lyons"), and Timothy

Martin ("Martin") obstructed plaintiff's access to the courts by not providing law library

access or individuals trained in the law to assist him and meaningful time to obtain legal

assistance. He alleges that these defendants divulged confidential legal details to the

Delaware DOJ and that they are "working in cahoots" with the Delaware DOJ. Plaintiff,

who had been housed in general population at one point in time, alleges that he was

placed in MHU in retaliation for filing a habeas corpus petition seeking return to

Pennsylvania to serve a prison sentence there.[7]  He alleges that his placement in MHU

violated his right to access to the courts because he was not informed of the DCC

mailing system. He alleges that no reason was given for his placement in MHU.

Plaintiff alleges that while housed in MHU he was not allowed to meet with or discuss

how to file meaningful motions or court papers.

19. Count V further alleges that Lyons divulged confidential information to

defendant Mike Little who provided the information to a Delaware assistant attorney

general. The information plaintiff refers to is a law library log showing plaintiff's use. It

---

[7]Plaintiff was serving a prison term in Pennsylvania when he was transferred to
Delaware for his criminal trial on murder charges. Plaintiff remained in Delaware after
his conviction, was housed in general population, and filed a habeas corpus petition for
return to Pennsylvania. Plaintiff was returned to Pennsylvania and, after being paroled
in connection with the Pennsylvania sentence, was transferred to Delaware to serve his
sentence. Upon his return, plaintiff was housed in MHU.

is attached as an exhibit to the amended complaint. Plaintiff also alleges that defendants read his legal papers and mail and divulged confidential matters to the Delaware DOJ.

20. Persons convicted of serious crimes and confined to penal institutions retain the right of meaningful access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). This access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. This right "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." Thornburgh v. Abbott, 490 U.S. 401, 407 (1989) (quoting Turner v. Safley, 482 U.S. 78, 85 (1987). Thus, courts have been called upon to review the balance struck by prison officials between the penal institution's need to maintain security within its walls and the rights of prisoners. Howard v. Snyder, 389 F. Supp. 2d 589, 593 (D. Del. 2005). All that is required is that plaintiff at least have access to a prison paralegal or paging system by which to obtain legal materials. Abdul-Akbar v. Watson, 4 F.3d 195, 203 (3d Cir.1993) (holding that segregated prisoners who do not have access to an institution's main law library must have some means by which documents and materials can be identified by and furnished to them in a timely fashion). The allegations in the complaint do not indicate that plaintiff is being deprived of access to the law library. Rather, his access is limited. Therefore, the claim will be dismissed.

21. The remaining allegations in count V do not adequately allege constitutional

-12-

violations. The law library log refers to plaintiff's actions in the law library. Plaintiff alleges generally, and in a wholesale fashion, that defendants divulged confidential legal details to Delaware DOJ employees. Plaintiff is required to provide the grounds of his entitlement to relief. The foregoing allegations are nothing more than labels and conclusions. They, therefore, will be dismissed without prejudice.

22. Finally, plaintiff fails to state a claim that he was placed in MHU in retaliation for filing a habeas corpus petition. Inmates have "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976). Moreover, neither Delaware law nor DOC regulations create a liberty interest in a prisoner's classification within an institution. See 11 Del. Code Ann. § 6529(e). "'As long as the conditions or degree of confinement to which [a] prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'" Hewitt v. Helms, 459 U.S. 460, 468 (1983) (quoting Montanye v. Haymes, 427 U.S. 236, 242 (1976)). Accordingly, the court will dismiss the retaliatory housing claim.

23. **Conditions of Confinement**. Count VI alleges that Carroll, Burris, Pierce, Profaci, and other unnamed individuals violated the Eighth Amendment when he was exposed to unlawful conditions of confinement on April 28, 2007, after his cell filled with smoke and fumes as a result of an "apparent fire." Plaintiff alleges there was a "lapse" in fire safety. The amended complaint alleges that Fields ordered the prisoners to be

-13-

escorted to a small attached recreation area outside their cell-block. Plaintiff alleges that when the corrections officers on duty failed to identify the source of the fire, Fields ordered strip searches of inmates and inmates could see each other "get stripped naked." Plaintiff alleges the strip searches provided no source for the fire and the inmates were ordered to return to their cells "which still had the pungent fumes inside of them." Plaintiff alleges that after forty-five minutes the inmates were again evacuated and taken to the mess-hall, but he was so nauseous that he could not eat. Later, the inmates were taken to the gym and provided medical treatment. Plaintiff alleges that he submitted grievances regarding the matter but the grievances were "shot down", there are no steps for appeal and McCreanor did not allow the grievances to go through.

24. A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an inmate of minimal civilized measure of the necessities of life. See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991). When an Eighth Amendment claim is brought against a prison official it must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have been deliberately indifferent to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

25. In count VI, plaintiff complains that he was subjected to smoke for a short

-14-

period of time, apparently due to a fire. The duration of the alleged violation is a

particularly important factor to be considered in a conditions of confinement case. A

filthy, overcrowded cell and a diet of 'gruel' might be tolerable for a few days and

intolerably cruel for weeks or months," Hutto v. Finney, 437 U.S. 678, 686-87 (1978),

but de minimis deprivations generally will not rise to violations of the Eighth

Amendment. See Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (excessive force

claim); Roach v. Kligman, 412 F. Supp. 521, 527 (E.D. Pa. 1976) (confinement in "cold

and leaky" cell for short period of time does not violate Eighth Amendment); Morrison v.

Clark, No. 84-4688 (E.D. Pa. Feb. 27, 1985) (confinement in unclean, insect infested

cell for two days does not violate eighth amendment); Coopers v. Owens, No. 84-1608

(E.D. Pa. Feb. 7, 1985) (sleeping on bare floor of hallway for two days and short

confinement in cell with broken windows do not violate eighth amendment).

26. On one day, and for a limited time, plaintiff was subjected to smoke and

fumes. The allegations indicate that, due to a fire, prison officials evacuated plaintiff

and others from their cells, returned them to their cells, and then evacuated the inmates

again. After the final evacuation, inmates were offered medical treatment. Plaintiff's

allegations regarding exposure to smoke and fumes do not give rise to an Eighth

Amendment conditions of confinement claim. Moreover, as discussed above, plaintiff

cannot maintain a constitutional claim based upon his perception that his grievance

regarding the matter was not properly processed, investigated, or that the grievance

process is inadequate. Therefore, the court will dismiss count VI as frivolous and for

failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §

1915(e)(2)(B) and § 1915A(b)(1) as it lacks an arguable basis in law or in fact.

27. Count VII also raises a conditions of confinement claim. It alleges that on January 16, 2007, plaintiff alerted Carroll, Pierce, Burris, and Profaci of exposure to bad indoor air and poor ventilation. It alleges that plaintiff wrote to Profaci regarding the issue, yet nothing was done. It also alleges that McCreanor disregarded grievances plaintiff submitted regarding the prison condition. Similarly, Count IX alleges that plaintiff alerted Profaci to unsanitary mess-hall cups, described as having dark decay growing inside them, and he submitted a grievance on the matter on January 15, 2007, apparently heard by McCreanor. The court will allow plaintiff to proceed against Profaci in counts VII and IX.

28. **Respondeat Superior.** It appears that plaintiff seeks to hold Warden Carroll, Pierce, and Burris liable in count VII on the basis of their supervisory positions. As is well known, supervisory liability cannot be imposed under 1983 on a respondeat superior theory. See Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). In order for a supervisory public official to be held liable for a subordinate's constitutional tort, the official must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989)).

29. Count VII does not allege that Warden Carroll, Pierce, and Burris were the "driving force [behind]" the alleged violations. More so, it does not allege that these defendants were aware of plaintiff's allegations and remained "deliberately indifferent"

-16-

to his plight. Sample v. Diecks, 885 F.2d at 1118. Accordingly, the court will dismiss the claims in count VII against Warden Carroll, Pierce, and Burris as they have no arguable basis in law or in fact. The court will also dismiss the grievance claims against McCreanor in counts VII and IX, since plaintiff cannot maintain a constitutional claim based upon his perception that his grievance regarding the matter was not properly processed, investigated, or that the grievance process is inadequate.

30. Count VIII alleges that plaintiff filed a grievance on March 22, 2007, for unlawful conditions of confinement due to his toilet flooding and constant spillage of human waste and inadequate methods of cleaning the debris[8]. More particularly, he alleges that over the past seven months raw sewage has leaked into his cell approximately thirty times due to a leaking toilet or a stopped up toilet. He alleges that the Profaci will not allow inmates to use disinfectants to clean the spillage. Plaintiff will be allowed to proceed against Profaci on count VIII.

31. Count X alleges conspiracy, pursuant to 42 U.S.C. § 1985, by CMS and the DCC, as a result of retaliation and deprivation of medical treatment from a number of CMS personnel, particularly Neal. Count X further alleges that Dr. Desrosiers prescribed medication despite plaintiff's having been taken off the medication two years ago, due to a bad reaction. Plaintiff alleges he became ill from the medication but was not seen until two weeks after he submitted a sick call slip, when Neal referred plaintiff to a physician. Plaintiff alleges he made complaints to CMS and DOC superiors, to no

---

[8]Count VIII refers to Sgt. Carter, C.O. Swing, C.O. White and Sgt. Montgomery, but they are not named as defendants.

avail.

32.  As previously discussed, the court will dismiss all conspiracy claims.
Therefore, the claims in count X against CMS and the DOC will be dismissed.  The
court will also dismiss without prejudice the retaliation claims alleged in count X.  Count
X merely alleges labels and conclusions and fails to sufficiently allege a retaliation
claim.  Plaintiff will be allowed to proceed with the medical needs claim in count X
against Neal and Dr. Desrosiers.

33.  **Personal Involvement**.  Named as defendants are Mr. Klein ("Klein") and
Lisa Merson ("Merson"), and dietician Dan.  A civil rights complaint must state the
conduct, time, place, and persons responsible for the alleged civil rights violations.
Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Boykins v. Ambridge Area
Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980); Hall v. Pennsylvania State Police, 570 F.2d
86, 89 (3d Cir.1978)).  Additionally, when bringing a § 1983 claim,  a plaintiff must
allege that some person has deprived him of a federal right, and that the person who
caused the deprivation acted under color of state law.  West v. Atkins, 487 U.S. 42, 48
(1988).  Other than to describe their job positions, the amended complaint contains no
allegations against either Klein or Merson.  Therefore, the court will dismiss them as
defendants for failure to state a claim upon which relief may be granted pursuant to 28
U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

34.  **Eleventh Amendment Immunity**.  Finally, the court notes that the DOC and
the DCC are named as defendants.  The DOC is an agency of the State of Delaware,
and the DCC falls under its umbrella.  "Absent a state's consent, the Eleventh

-18-

Amendment bars a civil rights suit in federal court that names the state as a defendant."
Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981) (citing Alabama v. Pugh, 438
U.S. 781 (1978)). The Eleventh Amendment protects states and their agencies and
departments from suit in federal court regardless of the kind of relief sought. Pennhurst
State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Moreover, state
correctional institutions are arms of the state and not persons subject to liability under §
1983. See Green v. Howard R. Young Corr. Inst., 229 F.R.D. 99, 102 (D. Del. 2005).
The State of Delaware has not waived its sovereign immunity under the Eleventh
Amendment. See Ospina v. Department of Corr., 749 F. Supp. 572, 579 (D. Del. 1991).
Hence, the DOC and DCC are entitled to immunity under the Eleventh Amendment.
See e.g. Evans v. Ford, C.A. No. 03-868-KAJ, 2004 WL 2009362, at *4 (D. Del. Aug. 25,
2004) (dismissing claim against DOC, because DOC is state agency and DOC did not
waive Eleventh Amendment immunity). The court will dismiss plaintiff's claims against
the DOC and DCC as they are immune from suit and as frivolous pursuant to 28 U.S.C.§
1915A(b) and § 1915(e)(2)(B).

35. **Conclusion.** Based upon the foregoing analysis, plaintiff may proceed with
the medical needs claim in count III against defendants Tom Carroll, Elizabeth Betty
Burris, David Pierce, David K. Holman, Joseph Richardson, Alisa Profaci, Dorene Fields,
C.O. Bassinger, C.O. Harmon, Quani Neal, Dr. Louise Desrosiers, and Michael Knight;
the medical needs claim in count X against defendants Quani Neal and Dr. Louise
Desrosiers; and the conditions of confinement counts VII, VIII and IX against Alisa
Profaci. The retaliation claims in counts IV and X are dismissed without prejudice for

failure to state a claim upon which relief may be granted. Counts I, II, the remaining claims of count IV, V, and VI, all conspiracy and remaining retaliation, and the claims against defendants Dan CMS Dietician, Carl Danberg, Stan Taylor, Mr. Klein, CMS, Inc., Stacy Shane, Mike Little, Maria Lyons, Timothy Marti, Mike McCreanor, Lisa Merson, Delaware Correctional Center, and Delaware Department of Correction contained in the amended complaint are dismissed with prejudice as frivolous and for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915 and § 1915A.

IT IS FURTHER ORDERED that:

1. The clerk of the court shall cause a copy of this order to be mailed to plaintiff.

2. Pursuant to Fed. R. Civ. P. 4(c)(2) and (d)(2), plaintiff shall provide to the clerk of the court an **original** "U.S. Marshal-285" form for **newly identified defendant C.O. Harman. Plaintiff shall provide the court with a copy of the complaint (D.I. 2) and the amended complaint and its exhibits (D.I. 35) for service upon C.O. Harmon. Plaintiff is notified that the United States Marshal will not serve the complaint and amended complaint until the "U.S. Marshal 285" form has been received by the clerk of the court. Failure to provide the "U.S. Marshal 285" form for C.O. Harmon within 120 days of this order may result in the complaint being dismissed or defendant being dismissed pursuant to Federal Rule of Civil Procedure 4(m).**

3. The United States Marshal shall forthwith serve a copy of the complaint (D.I. 2), the amended complaint and its exhibits (D.I. 35), this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon the defendant so identified in the 285 form.

4. Within **thirty (30) days** from the date that the "Notice of Lawsuit" and "Return of Waiver" forms are sent, if an executed "Waiver of Service of Summons" form has not been received from Harmon, the United States Marshal shall personally serve said defendant pursuant to Fed. R. Civ. P. 4(c)(2) and said defendant shall be required to bear the cost related to such service, unless good cause is shown for failure to sign and return the waiver.

5. Pursuant to Fed. R. Civ. P. 4(d)(3), a defendant who, before being served with process timely returns a waiver as requested, is required to answer or otherwise respond to the complaint within **sixty (60) days** from the date upon which the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form are sent. If a defendant responds by way of a motion, said motion shall be accompanied by a brief or a memorandum of points and authorities and any supporting affidavits.

6. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

UNITED STATES DISTRICT JUDGE

-21-